UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 07-80435-CIV-HURLEY/HOPKINS

**MICHAEL S. POWELL,**

 **Plaintiff,**

vs.

**THE HOME DEPOT U.S.A., INC.,**

 **Defendant.**

              /

### ORDER CONSTRUING DISPUTED CLAIM TERMS, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon the parties' cross-motions for summary judgment [DE # 158, 159]. For the reasons given below, the court will grant each motion in part and deny each in part.

#### BACKGROUND

The factual background given below is adapted in part from the court's October 3, 2007 order granting defendants' motions to dismiss certain claims [DE # 32]. In resolving each motion, the court has viewed the record evidence in the light most favorable to the non-moving party. *See Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009).

Plaintiff Michael Powell is a principal of Boldstar Technical, LLC.[1] In July 2004, Home Depot approached Powell, with whom Home Depot had previously worked, to discuss a new potential project. Home Depot had decided that the radial arm saws used in its stores by its

---

[1] Boldstar was formerly a plaintiff in this action, but was dismissed with prejudice by court order dated May 28, 2008. *See* DE # 222.

employees to cut lumber for customers were unnecessarily dangerous, and asked plaintiffs to develop a safety device to make the saws safer. Powell agreed and developed a prototype of a device called "Safe Hands," a safety top apparatus designed to increase the safety of the particular radial arm saws used by Home Depot. Powell filed a patent application for Safe Hands on August 31, 2004, and placed the words "Patent Pending" on the device itself.

Home Depot asked Powell to provide a demonstration of Safe Hands to Home Depot executives. After the demonstration, Home Depot purchased Safe Hands units for eight of its stores, and promised to issue purchase orders for all of its nationwide stores if the product performed successfully in the initial eight locations. Several weeks later, Home Depot contacted Powell to purchase Safe Hands units to use in all of Home Depot's stores nationwide. Home Depot offered to pay $1,200 per unit. That price was rejected by Powell as below his unit cost of production. At that point in the negotiation, talks between Powell and Home Depot ceased. According to the complaint, Home Depot began to discuss with Industriaplex, Inc.[2] the possibility of copying the Safe Hands product. Powell alleges that Home Depot instructed Industriaplex to travel to one of its stores to copy one of the trial Safe Hands units and design a similar device. Industriaplex subsequently developed its own saw guard, and Home Depot purchased Industriaplex's device in bulk for use in its stores.

Powell's patent application for the Safe Hands device was subsequently granted as Patent No. 7,044,039 on May 16, 2006. On May 17, 2007, Powell filed suit in this court. The complaint alleged that Home Depot and Industriaplex infringed, and continue to infringe, the '039 patent; that

---

[2] Industriaplex was formerly a defendant in this action, but was dismissed by joint stipulation of the parties. *See* DE # 450.

Industriaplex tortiously interfered with a business relationship between Powell and Home Depot; that Home Depot and Industriaplex are liable for engaging in a civil conspiracy to deprive Powell of his intellectual property rights; and that Home Depot is liable for fraudulently inducing Powell to produce the eight Safe Hands units for the product's initial trial run. Powell voluntarily dismissed the civil conspiracy claims, and on October 3, 2007, the court dismissed the tortious interference and fraud claims. *See* DE # 32.

On April 28, 2008, Powell and Home Depot filed cross-motions for summary judgment [DE # 158, 159]. The court conducted a hearing regarding the construction of disputed claim terms on May 15, 2008, pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). On December 16, 2008, the court heard arguments on the parties' motions for summary judgment.

### JURISDICTION

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the complaint asserts a claim under 35 U.S.C. § 271.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in the Southern District of Florida.

### DISCUSSION

*A.   Standard of Review on Motion for Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting

this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

The standard for summary judgment is the same in the patent context as in any other. Summary judgment may be granted only if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused evice is encompassed by the claims. *See Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1054-55 (Fed. Cir.

2001).

### B.	Motions for Summary Judgment

#### 1.	Patent Infringement

Plaintiffs assert that the Industriaplex device infringes the '039 patent. Determination of patent infringement requires a two-step analysis: First, the court must construe the scope of disputed terms in the claims; second, the court must compare the allegedly infringing device to the construed claims. *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004). If the accused device does not literally infringe the patent, it may nevertheless be found to infringe under the doctrine of equivalents, which holds that "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1324 (Fed. Cir. 2008) (internal quotations omitted) (citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997)).

##### a.	Disputed Claim Terms and Governing Principles

- "a table having a top"
- "dust collection structure for collecting sawdust"

Claim construction requires that the claims be viewed "in the context of those sources available to the public that show what a person of skill in the art would have understood" the disputed language to mean. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). Federal Circuit case law teaches that these sources should be classified into categories, each having different weight. First, the court must look to the words of the claims themselves, which are generally given their ordinary and customary meaning. *Vitronics Corp. v. Conceptronic, Inc.*, 90

5

F.3d 1576, 1582 (Fed. Cir. 1996). The court must then review the patent specification to determine whether claim terms are used in a way inconsistent with their ordinary and customary meaning. If the patentee, acting as his own lexicographer, has clearly set forth an explicit definition of the term different from its ordinary meaning, the ordinary meaning must be rejected, and the supplied definition controls. *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204 (Fed. Cir. 2002). Next, the court may consider the prosecution history, which forms part of the "intrinsic evidence" that directly reflects how the patentee himself has characterized the invention. *MBO Laboratories, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007). Least important is "extrinsic evidence" – testimony, dictionaries, learned treatises, or other material not part of the public record associated with the patent. Such evidence may be helpful but is less significant than the intrinsic record in claim construction; and extrinsic evidence cannot alter any claim meaning discernible from intrinsic evidence. *C. R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004).

      b.      Construction and Comparison

Powell argues that the Industriaplex device infringes each of the six claims of the '039 patent. Home Depot first responds that the Industriaplex device does not infringe any of the claims of the '039 patent because it does not include "a table having a top." The phrase is used in the preambles to claims 1 and 4 of the patent, and the bodies of claims 1 and 4 include the phrase "table top." Claims 2, 3, 5 and 6 are claims that expressly refer to and incorporate claims 1 and 4, but with further additions. Home Depot thus claims that because the Industriaplex device has no table top, the device does not infringe the '039 patent.

The claims of the '039 patent are in so-called *Jepson* form, which refers to a patent claim that

describes an improvement or addition to a previously-known device or design. "*Jepson* form allows a patentee to use the preamble to recite elements or steps of the claimed invention which are conventional or known." *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1029 (Fed. Cir. 2002) (internal quotations omitted). When a patentee has chosen to employ the *Jepson* form, the choice suggests that the patentee intends to use the preamble to define the elements of the claimed invention. Thus, the preamble is a limitation in a *Jepson* type-claim. *Id.*; *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1426 (Fed. Cir. 1997).

The preamble to claims 1 and 4 describe the claimed invention as intended for use "in combination with a radial arm saw assembly comprising a table having a top . . . ." '039 patent 7:8-9, 8:1-2. The body of claim 1 goes on to describe the safety device as comprising in part "a work surface mounted to the table top." *Id.* 7:17. The body of claim 4 similarly describes the invention as comprising in part "a planar top work surface mounted on the table top." *Id.* 8:9. The Industriaplex device requires that the radial arm saw's table top be removed prior to installation. Defs.' Statement of Facts ¶ 36-38. Powell responds that "top" in this instance simply means a physical location – i.e. the uppermost edge of the table – and not a physical structure or object. Thus, according to Powell, the Industriaplex device contains this limitation because, like Powell's Safe Hands device, it is attached to the top of the table, notwithstanding that the table top is removed during installation.

Powell's argument must be rejected for several reasons. First, the phrase "table having a top," found in both preambles, strongly implies that the referenced "top" is a physical object or structure, not merely a particular point in space. Every object – every table, for example – has a "top" in the sense that, given the object's orientation and a fixed frame of reference, one point on

the object is the uppermost or the highest. If this is what is meant by "top," then the words "having a top" are superfluous as used in the phrase "table having a top." This would violate the Federal Circuit's rule that a claim construction which renders some words meaningless is disfavored. *See Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1362 (Fed. Cir. 2007); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006).

Second, the use of the word "top" in the claims suggests that it is a reference to a tangible object, rather than a location. For example, claim 1 refers to "a work surface mounted to the table top," and claim 4 refers to "a planar top work surface mounted on the table top . . ." '039 patent 7:17, 8:9. The word "mount" is defined as to "place, fix, or fasten on or in the proper support, backing, etc. for the required purpose" – the "support" or "backing" in this case being the table top. *See* Webster's New Universal Unabridged Dictionary (2d ed. 1983). Thus an object can be "mounted" only on another physical object, and not on a point in space. Similarly, both claims 1 and 4 describe a "cutting box defining an interior bounded by a top in spaced relation with said work surface, opposing side walls, and front and rear walls." '039 patent 7:22-24, 8:16-18. If the "top" were merely a point in space, and not a physical object, it could not define an interior, as described in the claims.

Third, the claims themselves use different language when intending to refer to the top of the table as a location. Claims 1 and 4 both describe the cutting box as "disposed on top of the work surface." '039 patent 7;21, 8:15. Notably, these limitations were not phrased as the cutting box being "disposed on the work surface top." This suggests that the patentee (Powell) used different language when he meant to refer to "top" as a location, as opposed to "top" as a physical structure.

For these reasons, the court concludes that the Industriaplex device does include, and is not

8

meant to be used in combination with, a table "top" as that word is used in the patent. This alone is fatal to Powell's literal infringement claim, because "[l]iteral infringement requires that each and every claim limitation be present in the accused product." *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1378 (Fed. Cir. 2006). Nevertheless, the court proceeds to examine the remaining arguments regarding literal infringement.

Home Depot further argues that the Industriaplex device does not include a "dust collection structure for collecting sawdust," a limitation found in each claim of the '039 patent. Home Depot argues that this limitation is a "means-plus-function" limitation within the meaning of 35 U.S.C. § 112 ¶ 6, which provides that a claim limitation "may be expressed as a means or step for performing a specified function with the recital of structure, material, or acts in support thereof." The significance of classifying this limitation as a means-plus-function limitation is that it would restrict the scope of the limitation to structures that collect sawdust by the particular means described in the patent, rather than through simply any "dust collection structure." "Literal infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006).

However, claims 1 and 4 do not use the term "means." When a claim element does not use the term "means," there is a rebuttable presumption that the element is not a "means-plus-function" limitation. *See TIP Systems, LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008). The presumption "is a strong one that is not readily overcome." *See Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004). The presumption is rebutted only

9

if the claim recites sufficiently definite structure to make the function understood by one reasonably skilled in the art. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1023 (Fed. Cir. 2006); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002).

Here, it appears that the patent recites sufficient structure corresponding to the dust-collection function to rebut the presumption. The patent specification describes the dust-collection structure as containing two ports through which sawdust exits the cutting box, and a dust-collection tray. *See* '039 patent 7:40-56. The ports and tray are also depicted in Figure 4 of the '039 patent. Based on these detailed descriptions, the court concludes that the patent recites sufficiently definite structure corresponding to the dust-collection function referenced in the claim that the limitation is properly considered a "means-plus-function" limitation within the meaning of 35 U.S.C. § 112 ¶ 6.

Home Depot argues, and the court agrees, that the Industriaplex device does not literally infringe the patent because it contains only a single dust-collection port and no tray. Thus, the structure in the accused device that performs the dust-collection function is not identical to that in the patented device. Nor is the structure of the accused device's dust-collection system "equivalent" to that of the patented device, which in this context means that it "performs the identical function in substantially the same way, with substantially the same result." *Applied Medical Resources Corp.*, 448 F.3d at 1333. While the Safe Hands device permits sawdust to pass from the cutting box either through a port in the side of the cutting box or downward through a port in the bottom of the collection tray, the Industriaplex device forces all sawdust to exit the cutting box through a single port in the rear wall. Moreover, the Industriaplex device has no dust-collection tray at all. The accused device therefore does not perform the dust-collection function in "substantially the same way" as does the Safe Hands device.

For these reasons, the court finds there is no genuine issue of material fact regarding literal infringement, and will grant summary judgment in favor of defendants as to that issue. However, the Industriaplex device may nevertheless infringe under the doctrine of equivalents. Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent, and a claim element is equivalently present in an accused device if only insubstantial differences distinguish the missing claim element from the corresponding aspects of the accused device. *See Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1309 (Fed. Cir. 2002) (internal quotations omitted). The determination of whether any differences between a missing claim element and a corresponding feature of an accused device are insubstantial has been described as "intensely factual." *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1359 (Fed. Cir. 2002).

The record evidence regarding the extent of any differences between missing elements of the '039 patent's claims in the Industriaplex device and the device's corresponding features is conflicting and inconclusive. The court thus determines that there is a genuine issue of material fact as to whether missing claim elements in the Industriaplex device are insubstantial and will deny summary judgment on the issue of equivalents infringement.

    2.    *Defenses to Infringement*

In response to Powell's allegations of infringement, Home Depot argues that '039 patent is invalid and/or unenforceable because of inequitable conduct and obviousness.[3] Because an existing patent is presumed valid, defenses of patent invalidity (and the defense of unenforceability due to

---

[3] Home Depot originally asserted defenses and counterclaims based on anticipation and joint inventorship, but these have since been withdrawn. *See* DE # 172, 313.

inequitable conduct) must be proven by clear and convincing evidence. *See* 35 U.S.C. § 282; *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002).

        a.      Inequitable conduct

Home Depot charges that the '039 patent is unenforceable because the patentee, Powell, made a false statement in his petition to make special (essentially a request that the Patent and Trademark Office expedite consideration of his application). Powell filed a sworn declaration in conection with the petition in which he claimed that Boldstar had "obligated itself to manufacture the invention . . . in quantity immediately upon the allowance of claims or issuance of a patent . . . ." (Such an obligation was then required before the PTO would grant a petition to make special.) Home Depot argues that Powell knew there was no such obligation when he submitted that sworn statement.

To establish inequitable conduct, a party must show by clear and convincing evidence that the patentee made a material misrepresentation with the intent to deceive the PTO. *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). The Federal Circuit has squarely held that a false statement in a petition to make special is material if it succeeds in prompting expedited consideration of the application. *General Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1411 (Fed. Cir. 1994). In this case, the petition to make special was granted, and therefore did successfully prompt expedited consideration of Powell's application. Thus, the statement appears to be material.

The statement is also false, because there is no evidence to show that a contractual arrangement was reached between Home Depot and Boldstar/Powell. As the court said in its order dismissing plaintiffs' tortious interference claim against Industriaplex – for the purposes of which

12

the court accepted all plaintiffs' allegations as true – the last contact between Boldstar/Powell and Home Depot was Powell's rejection of Home Depot's offer to purchase the Safe Hands device at $1,200 per unit. That this was the end of the negotiations is confirmed by Powell's own deposition, in which he testified that he was not "given the opportunity to negotiate" with Home Depot and was "shut out completely" once Home Depot opened negotiations with Industriaplex. Powell Dep. at 175, 209. Thus, the evidence is clear that Powell was not obligated to manufacture the invention as Powell had stated in his affidavit attached to the petition to make special.

However, the court finds that there is a genuine issue of material fact as to whether Powell made the statement with the intent to deceive the PTO. Intent to deceive is often inferred from the surrounding circumstances once a material misrepresentation has been established, as it has here. *See Glaxo, Inc. v. Novopharm, Ltd.*, 52 F.3d 1043, 1048 (Fed. Cir. 1995); *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182, 1189 (Fed. Cir. 1993). However, although a reasonable finder of fact could infer that intent from the circumstances in this case, defendants have not adduced so much evidence of that intent that any reasonable juror would be *required* to find that it had been established by clear and convincing evidence. Because a genuine issue of material fact exists regarding Powell's intent, summary judgment on the issue is precluded.

b.   Obviousness

"A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Home Depot argues that the '039 patent is invalid on this ground. Obviousness is a question of law based on underlying findings of fact. *See Graham v. John Deere*

13

*Co. of Kansas*, 383 U.S. 1, 17 (1996); *In re DBC*, 545 F.3d 1373, 1377 (Fed. Cir. 2008). The primary factors to be considered are the scope and content of the prior art; the differences between the prior art and the claims at issue; and the level of ordinary skill in the pertinent art. *Id.* at 17-18; *see also KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 407 (2007) (noting that the *Graham* factors "continue to define the inquiry that controls"). Secondary considerations such as "commercial success, long felt but unsolved needs, [and] failure of others" may also be relevant as indicia of nonobviousness. *See Commonwealth Scientific and Indus. Research Organisation v. Buffalo Technology (USA), Inc.*, 542 F.3d 1363, 1377 (Fed. Cir. 2008).

After review of the prior art, Powell's expert, Dr. Pershes, concluded that the Safe Hands device would not have been obvious to a person having ordinary skill in the art. Home Depot responds with the declaration of Michael L. Gilliland, who gave the opposite opinion. Conflicting expert reports do not amount to clear and convincing evidence that the '039 patent is obvious. *See Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993) (defining "clear and convincing evidence" as "evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is highly probable") (internal quotations omitted). Nor has Home Depot produced sufficient secondary indicia of obviousness to establish by clear and convincing evidence that the '039 patent should be declared invalid. Summary judgment will therefore be granted in favor of Powell on the issue of (non)obviousness.

## CONCLUSION

For the above reasons, the court will: (1) grant summary judgment for Powell on the issues of anticipation and obviousness; (2) grant summary judgment for the defendants on the issue of literal infringement; and (3) deny summary judgment on the issues of equivalents infringement and

Order Construing Disputed Claim Terms and Granting in Part and Denying in Part Cross-Motions for Summary Judgment
Powell v. The Home Depot U.S.A., Inc.
Case No. 07-80435-CIV-HURLEY/HOPKINS

inequitable conduct.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiff's motion for summary judgment [DE # 158] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Summary judgment in favor of Powell is granted on the defenses of anticipation and obviousness.

    b. Plaintiff's motion is otherwise denied.

2. Defendant's motion for summary judgment [DE # 159] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Summary judgment in favor of Home Depot is granted on the issue of literal infringement.

    b. Defendant's motion is otherwise denied.

**DONE** and **SIGNED** in Chambers in West Palm Beach, Florida, this 30th day of May, 2009.

_____
Daniel T. K. Hurley
U.S. District Judge

*Copies provided to counsel of record*