UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.07-80435-Civ-HURLEY/HOPKINS

MICHAEL S. POWELL,

                Plaintiff,

vs.

THE HOME DEPOT U.S.A., INC.,

                Defendant.

_____/

## REPORT AND RECOMMENDATION AS TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DE 303)

**THIS CAUSE** has come before this Court upon an Order Referring Plaintiff's Motion for Preliminary Injunction to the undersigned United States Magistrate Judge for a Report and Recommendation. (DE 309). For the reasons that follow, having carefully considered this motion, the responses and replies thereto, the court file and applicable law, and the evidence and argument presented during the hearings on the motion, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Preliminary Injunction. (DE 303).

### Background and Findings of Fact

Plaintiff Michael Powell is a principal of Boldstar Technical, LLC. In July 2004, Home Depot approached Powell, with whom Home Depot had previously worked, to discuss a new potential project. Home Depot had decided that the radial arm saws used in its stores by its employees to cut lumber for customers were unnecessarily dangerous, and asked plaintiffs to develop a safety device to make the saws safer. Powell agreed and developed a prototype of a device called "Safe Hands," a safety top apparatus designed to increase the safety of the

particular radial arm saws used by Home Depot.  Powell filed a patent application for Safe Hands

on August 31, 2004, and placed the words "Patent Pending" on the device itself.  Home Depot

asked Powell to provide a demonstration of Safe Hands to Home Depot executives. After the

demonstration, Home Depot purchased Safe Hands units for eight of its stores, and promised to

issue purchase orders for all of its nationwide stores if the product performed successfully in the

initial eight locations. Several weeks later, Home Depot contacted Powell to purchase Safe

Hands units to use in all of Home Depot's stores nationwide.  Home Depot offered to pay $1,200

per unit.  That price was rejected by Powell as below his unit cost of production.  At that point in

the negotiation, talks between Powell and Home Depot ceased.  Home Depot began to discuss

with Industriaplex, Inc. the possibility of copying the Safe Hands product.  Home Depot

instructed Industriaplex to travel to one of its stores to copy one of the trial Safe Hands units and

design a similar device.  Industriaplex subsequently developed its own saw guard, and Home

Depot purchased Industriaplex's device in bulk for use in its stores.  Powell's patent application

for the Safe Hands device was subsequently granted as Patent No. 7,044,039 on May 16, 2006.

On May 17, 2007, Powell filed suit in this court.  The Plaintiff alleges that Home Depot

infringed, and continues to infringe, the '039 patent.

**Discussion**

**A.  Standard of Preliminary Injunction**

To obtain a preliminary injunction under 35 U.S.C. §283, the moving party must establish

its right thereto in light of four factors: (1) likelihood of success on the merits, (2) irreparable

harm absent a preliminary injunction, (3) the balance of hardships between the parties, and (4)

the public interest. *Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 847 (Fed.

2

Cir. 2008).  Although "these factors, taken individually, are not dispositive," *Hybritech, Inc. v. Abbott Lab.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988), the moving party is not entitled to a preliminary injunction unless it establishes both the likelihood of success on the merits and irreparable harm absent a preliminary injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

## B.  Likelihood of Success on the Merits

To establish likelihood of success on the merits, Plaintiff must show that in light of the presumptions and burdens that will inhere at trial on the merits,  (1) it will likely prove infringement and (2) its infringement claim will likely withstand Defendant's challenges to the validity and enforceability of the patent. *Ranbaxy Pharm., Inc. v. Apotex, Inc.*, 350 F.3d 1235, 1239 (Fed. Cir. 2003).  This Court will discuss challenges to validity and enforceability of the '039 patent before discussing the infringement issue.

### i.  Validity

An issued patent is presumed valid at every stage of the litigation. 35 U.S.C. §282; *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).  However, this presumption "does not relieve a patentee who moves for a preliminary injunction from carrying the normal burden of demonstrating [likelihood of success,] even when the issue concerns the patent's validity." *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1351 (Fed. Cir. 2000) (quoting *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992)).  Since *New England Braiding* the Federal Circuit developed a "substantial question" inquiry, which requires less than clear and convincing showing of invalidity, to analyze the likelihood of success on challenges to patent validity during preliminary injunctions. *See, e.g.*, *Entegris, Inc. v. Pall*

3

*Corp.*, 490 F.3d 1340, 1351 (Fed. Cir. 2007) (citing *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997)) (stating that the preliminary injunction should not issue if alleged infringer raises a "substantial question" regarding validity, enforceability or infringement of the patent); *Amazon.com*, 239 F.3d at 1350 (stating that the showing of a substantial question as to invalidity requires less proof than the clear and convincing showing necessary to establish invalidity at trial); *New England Braiding*, 970 F.2d at 883.[1]  In light of *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), recently the Federal Circuit clarified that the "substantial question" regarding "vulnerab[ility]" approach is a "different and incorrect criterion" that "conflicts with precedent of the Supreme Court and all of the regional circuits" *Abbott Lab. v. Sandoz, Inc.*, 544 F.3d 1341, 1369 (Fed. Cir. 2008); *see also Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1380 (Fed. Cir. 2009) ("[T]here is no room for making the substantial question test a substitute or replacement for the established test for injunctions."). The Federal Circuit explained that the phrase "substantial question" refers to the substantive conclusion reached after considering evidence on both sides of the validity issue, and that patentee's rebuttal of the challenger's invalidity evidence is an important part of the court's overall evaluation of the evidence. *See Titan Tire*, 566 F.3d at 1378-79.  Likelihood of success on the merits of validity issue remains the ultimate test. *Id.* at 1380 (stating that the "substantial question" inquiry "may be a useful way of initially evaluating the evidence" but likelihood of success on the merits remains the "ultimate question").

### a. Obviousness

Defendant claimed that the '039 patent was invalid because it was obvious under 35

---

[1]Plaintiff incorrectly argued that Defendant must prove invalidity by "clear and convincing evidence" at the preliminary injunction stage. [D.E. 303, at 7; D.E. 343, at 13].

U.S.C. §103(a). [D.E. 322, at 23]. Because summary judgment was granted in favor of Plaintiff

on the issue of obviousness, Plaintiff obtained actual success in proving that the defense of

obviousness lacks substantial merits. [D.E. 467, at 14]. Therefore, Plaintiff should prevail on the

likelihood of success in withstanding the obviousness defense to the validity of the '039 patent.

*See Amazon.com*, 239 F.3d at 1359 (stating that a patent's success in withstanding previous

validity challenges in other proceedings may support a clear case of validity at the preliminary

injunction stage).

### b.  Inadequate Disclosure

Defendant claimed that the '039 patent was invalid because it failed to satisfy the written

description requirement under 35 U.S.C. §112 ¶1. Defendant specifically claimed that the '039

patent failed to describe "*any* claimed invention in which the claimed 'rip fence' limitation . . .

can possibly be incorporated." [D.E. 322, at 24]. To satisfy the written description requirement,

description of the specification must convey with reasonable clarity to those skilled in the art

that, as of the filing date sought, the inventor was in possession of the invention. *Revolution*

*Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1366 (Fed. Cir. 2009) (quoting *Vas-Cath,*

*Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991)). Drawings alone may provide the

required written description if they describe what is claimed and convey to those of skill in the

art that the patentee actually invented what is claimed. *Id.* Because both the "detailed description

of the invention" section and figures 2, 3 and 5 of the '039 patent describe the rip fence relative

to other components of the system such as the planar work surface ("vertically projecting

therefrom"), push handles ("mechanically biased toward"), wood workpiece ("between push

handles [and] rip fence"), [D.E. 158, Ex. B], Plaintiff has at least a likelihood of success in

satisfying the written description requirement regarding the rip fence element.

### 1. Enablement Requirement

Defendant next claimed that the '039 patent was invalid because it failed to satisfy the enablement requirement under 35 U.S.C. §112 ¶1 for not describing how to mount the work surface of the safety top ("Work Surface") to the table top of the radial arm saw. [D.E. 322, at 24-27]. To satisfy the enablement requirement, a patent specification must teach those skilled in the pertinent art to make and use the full scope of the claimed invention without undue experimentation. *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1360 (Fed. Cir. 2007). On the other hand, a patent "need not teach, and preferably omits, what is well known in the art." *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987); *see also Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1336 (Fed. Cir. 2009). Therefore, the question of undue experimentation is "a matter of degree," a conclusion reached by "weighing many factual considerations." *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253 (Fed. Cir. 2004); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). The focus is "undue" rather than "experimentation." *See Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999) ("[A] patent specification complies with the statute even if a 'reasonable' amount of routine experimentation is required in order to practice a claimed invention, but [it] must not be 'undue.'"). The Federal Circuit set forth eight factors ("*Wands* factors") in determining whether a disclosure would require undue experimentation:

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those

in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of

the claims.

*Wands*, 858 F.2d at 737. Not all the *Wands* factors need be reviewed because they are

"illustrative, not mandatory." *Enzo*, 188 F.3d at 1371.  A patent's specification must be enabling

when it is filed. *Chiron*, 363 F.3d at 1254.

Unlike chemical or biological technology, the art of mounting the Work Surface to the

radial arm saw assembly's table top ("Mounting Method") is a predictable technology.  Slight

variation in the Mounting Method likely yields a predictable result because it employs

mechanical technology and follows mechanical laws. *See Spectra-Physics*, 827 F.2d at 1533

(noting the distinction between mechanical arts and chemical arts in terms of predictability); *In*

*re Fisher*, 427 F.2d 833, 8839 (Fed. Cir. 1970) (suggesting that a predictable art is one that

"once imagined, [variation of a which] can be made without difficulty and their performance

characteristics predicted by resort to known scientific laws).  In this case, the difference between

mounting the Work Surface directly to the table top and mounting the Work Surface to the table

top after cutting out sections of the table top to accommodate the hardware underneath the Work

Surface is predictable, i.e., no speculation outside of known scientific laws.  Therefore, the

Mounting Method is a predictable art.  Generally courts demand less disclosure to enable claims

of a predictable art than those of an unpredictable one. *Compare Spectra-Physics*, 827 F.2d at

1533 (stating that a broad claim can be enabled by disclosure of a single embodiment of a

predictable art even though it reads on another embodiment which is inadequately disclosed) *with*

*PPG Indus. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564 (Fed. Cir. 1996) (stating that a broad

claim cannot be enabled by disclosure of one or a few embodiment of an unpredictable art and

full scope of the claim must be enabled).

While the amount of direction or guidance regarding the Mounting Method presented in the '039 patent is indisputably little, the breadth of the claim regarding the Mounting Method is narrow and there are a number of working samples. The '039 patent language indicates that the Mounting Method requires "minimal if any modification" and provides no further details. [D.E. 158, Ex. B, 10]. Plaintiff and Defendant disputed whether Figure 2 provides sufficient depiction of the Mounting Method by picturing the Work Surface directly attached on the table top, [D.E. 322, 26; D.E. 343, 18], as Defendant claimed that direct mounting is not workable in practice because there is a slidable engaging structure of push handles, dust collecting tray, outlet port, and spring loaded biasing mechanism under the Work Surface. [D.E. 322, 26; see also D.E. 158, Ex. B, Fig. 4]. However, compared to unpredictable arts such as biological and chemical technologies, the Mounting Method is a narrow - if not a very narrow- claim, because it encompasses a "minimal if any modification" to a radial arm saw. *C.f. Enzo*, 188 F.3d at 1372 (upholding the district court's finding that claims of antisense, a biological technology, are extremely broad as encompassing an infinite number of cell types). The Mounting Method involves attaching the Work Surface to the table top without disturbing the units underneath the Work Surface, not all general mounting methods. Moreover, contrary to Defendant's claim, there are a number of working samples, including a Safe Hands prototype and eight Safe Hands production models, in which the Mounting Method was realized through cutting out sections of the table top to accommodate the necessary hardware underneath the Work Surface. [D.E. 158, Ex. A, 250:2-25]. Defendant did not dispute the existence of the prototype and production models, but argued that they nevertheless failed to constitute working samples because the

8

"modification was so substantial, that once modified, the [radial arm saw] no longer had a table having a top" because the smaller boards after the cutting "are not properly considered to be a [table top]." [D.E. 322, 26-27].  However, Defendant failed to establish why a table top with several sections cut out cannot be considered a table top, because Plaintiff merely "cut out sections" of the table top rather than removed the table top completely, and the modified top remains a "physical structure." [*See* D.E. 158, Ex. A, 250:2-25; D.E. 467, 7-8].  Nowhere does the '039 patent require an intact table top for Mounting Method, and the '039 patent noted possible modification. [D.E. 158, Ex. B].

The quantity of necessary experimentation to apply the Mounting Method is not unduly high considering the nature of the invention, state of the prior art, and skill of those in the art. The nature of Plaintiff's invention is that of an improvement to "adapt" existing radial arm saws. [*See* D.E. 158, Ex. B, 10].  Regarding prior art and skill of those in the art, while Plaintiff might correctly point out that prior-art radial arm saws all have work surfaces mounted to table tops, [D.E. 343, 18], the Work Surface in the '039 patent is admittedly different from prior-art work surfaces because the Work Surface has structures underneath it. [D.E. 158, Ex. B].  Defendant's expert testimony purported that "significant experimentation would be necessary" to determine the appropriate Mounting Method, including exploring: structures to raise the Work Surface, mounting point locations, possible strengthening of the supporting table, best installation method, and American National Standard's requirement of acceptable range of the height of Work Surface and stability. [D.E. 159, Ex. H, 29-30].  However, the focus of the inquiry is "undue" rather than "experimentation" and "a 'reasonable' amount of routine experimentation" is acceptable. *Enzo*, 188 F.3d at 1371.  Experimenting with the strengthening, height within

9

acceptable range and stability of the supporting table to be mounted with a structure without interfering with the assembly underneath the structure, which requires normal mechanical knowledge, should be reasonably routine, because there is finite room for imagining a Mounting Method. "Open-ended claims [may be supported] if there is an inherent, albeit not precisely known, upper limit [that one of skill in the art can approach]" *See General Elec. Co. v. SonoSite, Inc.*, ___ F. Supp. 2d ___, 2009 WL 1504906, at *21 (W.D. Wis. May 26, 2009) (quoting *Scripps Clinic Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1572 (Fed. Cir. 1991)) (ruling that a specification of making an ultrasound system weighing below ten pounds without specifying the lower limit is enabling). Moreover, those skilled in the art expect the requirement of American National Standard in adapting a radial arm saw, *whenever* they need to mount *any* double-sided mechanical structure on a table top. In other words, even though Plaintiff had described one form of Mounting Method in the '039 patent, such as section-cutting on the table top, artisans still would have had to consider the safety and stability concerns in practicing the patent because the size, shape and texture of table tops of radial arm saws vary. Other concerns, such as the structure to raise the Work Surface, position of mounting point, best way of mounting, are all related to the stability and safety concern. *See* [D.E. 159, Ex. H, 29-30]. The specification "[need not] describe how to make and use every possible variant of the claimed invention, for the artisan's knowledge of the prior art and routine experimentation can often fill gaps . . . and perhaps even extrapolate beyond the disclosed embodiments, depending on the predictability of the art." *Chiron*, 363 F.3d at 1253 (internal quotation omitted).

Therefore, considering the *Wands* factors, Plaintiff has a likelihood of success in withstanding Defendant's challenge of the '039 patent for lack of enablement.

## 2.  Best Mode Requirement

Defendant also claimed that the '039 patent was nevertheless invalid because it failed to satisfy the "best mode" requirement under 35 U.S.C. §112 ¶1 for not disclosing the best mode of Mounting Method – cutting out sections on the table top for the mounting. [D.E. 322, at 27-28]. The "best mode" analysis is comprised of two steps: (1) whether at the time of the patent filing the inventor possessed a best mode for practicing the invention, and (2) whether the disclosure was adequate to enable one of ordinary skill in the art to practice the best mode of the invention. *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 518 F.3d 1353, 1364 (Fed. Cir. 2008).  In addition to the disclosure of preferred embodiment of the claimed invention, the "best mode" requirement also demands disclosure of "aspects of making or using the claimed invention [when] the undisclosed matter materially affect[s] the property of the claimed invention." *Id.*

Plaintiff quoted *High Concrete Structures, Inc. v. New Enter. Stone & Lime Co.*, 377 F.3d 1379, 1383 (Fed. Cir. 2004) and argued that the "best mode" requirement is "not violated by unintentional omission of information that would be readily known to persons in the field of the invention." [D.E. 343, 20].  However, under prevailing Federal Circuit precedent, "the best mode requirement is 'separate and distinct' from enablement requirement" and requires "actual disclosure *regardless* of whether [the best mode] would be within the knowledge of one of ordinary skill in the art." *Bayer AG & Bayer Corp. v. Schein Pharm., Inc.*, 301 F.3d 1306, 1314 (Fed. Cir. 2002) (followed by *Pfizer*, 518 F.3d at 1364) (emphasis added); *see also Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351, n.3 (Fed. Cir. 2006) (citing *George E. Warren Corp. v. United States*, 341 F.3d 1348, 1351-52 (Fed. Cir. 2003)) ("[O]nly the court *en banc* may overrule precedent.").  After a careful study of prior "best mode" rulings, the *Bayer* court

11

concluded that the "adequate disclosure" step is limited to the best mode of (1) carrying out the claimed invention and (2) a subject matter that materially affects the property of the claimed invention. *See id.* at 1319.

Regarding the first step of inventor's subjective knowledge of the best mode at the time of filing the '039 patent, Defendant asserted that the inventor had the required knowledge because the inventor testified that the cutting process was the "simplest" method, citing D.E. 158, Ex. A, 250:2-25. [D.E. 322, 28].  However, that was not supported by the record because the inventor simply did not say so. *See* D.E. 158, Ex. A, 250:2-25.  Moreover, the "simplest" method is not necessarily the "best mode," considering the several factors Defendant had raised in experimenting with the Mounting Method. *See* [D.E. 159, Ex. H, 28-30].  Therefore, Plaintiff likely could withstand Defendant's challenge on this first step.

Assuming that the inventor did possess the best mode at the time of the filing (note that Plaintiff did not appear to dispute this point), [D.E. 343, 20], the process of cutting out sections of the table top nevertheless is neither the claimed invention nor materially affecting the property of the '039 patent.  As discussed in the enablement analysis above, the cutting process as one Mounting Method is not the claimed invention that needs to be disclosed.  Moreover, the cutting process does not materially affect the '039 patent because a change in the Mounting Method does not necessarily change the result of the invention – improved safety and dust collection. *See, e.g.*, *Eli Lilly & Co. v. Barr Lab., Inc.*, 251 F.3d 955, 965 (Fed. Cir. 2001) (holding that disclosure of best mode of synthesizing starting material not required because "the reasons for using [the inventor's] synthesizing method were not linked to the intrinsic quality of [the claimed invention]").

Therefore, the Plaintiff has a likelihood of success in withstanding Defendant's challenge of the '039 patent for lack of disclosure of the best mode.

### ii.  Unenforceability – Inequitable Conduct

Defendant claimed that the '039 patent is unenforceable for inequitable conduct because the patentee intentionally made false representation in his petition to make special. [D.E. 322, 28].  To establish inequitable conduct, Defendant must show that patentee made a material misrepresentation with the intent to deceive the Patent and Trademark Office ("PTO"). *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007).  A false statement in a petition to make special is material if it succeeds in prompting expedited consideration of the application. *See, e.g.*, *Scanner Tech. Corp. v. Icos Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1375 (Fed. Cir. 2008) (rejecting the argument that the false statement must be material only to patentability). After Defendant proves material misrepresentation and intent to deceive, a court must still balance the equities in light of all the circumstances and determine if there was inequitable conduct. *See, e.g.*, *Rothman v. Target Corp.*, 556 F.3d 1310, 1323 (Fed. Cir. 2009).  In the summary judgment proceeding, the Court ruled that patentee's statement was material and false but found a genuine issue of material fact as to whether the patentee made the statement with intent to deceive PTO. *See* [D.E. 467, 12-13].

To show intent to deceive, Defendant must show that the misrepresentation "viewed in light of all the evidence, including evidence of good faith, must indicate sufficient culpability." *Aventis Pharma S.A. v. Amphastar Pharm., Inc.*, 525 F.3d 1334, 1344 (Fed. Cir. 2008).  "Given that direct evidence is often unavailable, intent is generally inferred from surrounding facts and circumstances." *Id.*  Only after Defendant makes the required showing must Plaintiff then rebut

the intent to deceive with good faith explanation. *See Star Sci., Inc. v. R.J. Reynolds Tobacco*

*Co.*, 537 F.3d 1357, 1368 (Fed. Cir. 2008).

In the summary judgment proceeding, the Court concluded that a reasonable finder of fact

could, but would not be required to, infer intent to deceive from the circumstances of the case.

[D.E. 467, 13]. In this preliminary injunction proceeding, likelihood of success is the standard.

*See Titan Tire*, 566 F.3d at 1380.

Defendant made a clear showing to infer intent to deceive for purpose of preliminary

injunction. Indisputably, inventor knew there was no contractual obligation when submitting the

petition to make special because there was neither a binding contract nor any irrevocable offer or

firm offer - there was at most an offer. *See* [D.E. 159, Ex. I, 208] ("We never entered into the

negotiations to finalize that, but we were obligated by offering this solution to their problem.");

*see also id.* at 195 (stating that one of the reason for expediting patent application was "there was

a *potential* purchase order to do this") (emphasis added). Inventor's declaration of his "belief"of

an obligation, without more, was self-serving, because any inventor charged with inequitable

conduct may simply assert such lack of intent. *See Paragon Podiatry Lab., Inc. v. KLM Lab.,*

*Inc.*, 984 F.2d 1182, 1191 (Fed. Cir. 1993). The speculative nature of a "purchase order"

contradicts inventor's so-called "obligation." Moreover, the deposition of the inventor may help

reveal the true intent:

> Q.    Do you recognize the document that begins on page 000038 and ends on
>        page 000039?"
> A.    Yes.
> Q.    And is that your signature dated October 20, 2004 on page 000039?
> A.    Yes, it is.
> Q.    Before signing that document, did you read the entire two page document?
> A.    Yes, I did.

> Q.    What was your understanding of the use that was going to be made of that document titled "Declaration of Michael S. Powell in Support of Petition to Make Special"?
>
> A.    It was going to expedite the patent application because there was an infringer in case and there was a potential purchase order to do this.  There was an infringer that was out there, and it was going to make it special with the intention that the patent would issue before the market was flooded with an inferior product.

[D.E. 159, Ex. I, 195].  The inventor's response indicates that the existence of "an infringer" was the main reason for the petition to make special while the "potential purchase order" was mentioned transiently.  The "most reasonable inference" to be drawn is that the inventor intended to deceive PTO by concealing its true purpose for the petition to make special. *See, e.g.*, *Star Sci.*, 537 F.3d at 1366 (requiring the inference to be "the single most reasonable inference").  Further, on a February 28, 2005 letter to PTO, the inventor and his representing attorney inquired about the status of the petition to make special. [D.E. 203, Ex. B].  At that time, even according to Plaintiff's standard of "obligation," the inventor knew he had no obligation to manufacture because the inventor knew Defendant had granted a contract to another manufacturer earlier.  Intent to deceive is likely the most reasonable inference.

Plaintiff failed to rebut with an explanation of good faith.  Simply put, at least a likelihood of an intent to deceive can be inferred from knowingly making false statements.  Plaintiff tried to explain that the inventor's references to "an infringer" during the deposition in explaining the reason for petition to make special were "in error" because he was referring to another unrelated petition to make special, which was filed around the similar time and was indeed based on infringement. *See* [D.E. 203, 3].  The argument is not credible and insufficient to establish any good faith, because during the deposition the inventor clearly indicated that he

15

"recognize[d]," "sign[ed]," and "read" the petition right before referring to the "infringer" as a

reason. *See* [D.E. 159, Ex. I, 195].  In fact, the inventor mentioned "potential purchase order,"

indicating that the inventor understood that he was asked about the petition to make special in

this case. *See id.*

   In concluding that Defendant has a likelihood of success in proving intent to deceive,

however, this Court still have to balance equities to determine the likelihood of success on

inequitable conduct, *i.e.*, whether the conduct was egregious enough to warrant holding the entire

patent unenforceable. *See, e.g., Rothman*, 556 F.3d at 1323.  A court generally is cautious in

rendering a patent unenforceable due to inequitable conduct because the penalty is severe - the

loss of the entire patent. *Id.*  On one hand, as discussed above, the likelihood of intent to deceive

PTO with material misrepresentation is high.  On the other hand, it is harsh to render the entire

'039 patent unenforceable because of misrepresentation in seeking expediting the patent

application rather than misrepresentation regarding the patentability itself.  Still, denying

inequitable conduct defense simply because the misrepresentation was made relating to petition

to make special would render the inequitable conduct defense useless and encourage

misrepresentation in petitions to make special.  Considering the specific facts of this case, the

equity is better served by denying Defendant's likelihood of success in inequitable conduct

defense, because (1) Plaintiff did not appear to get the benefit of expedited service even though

the petition was granted - in other words, the chance was slim that other patentees looking for the

same expedited service were unduly prejudiced, and (2) the issue regarding the petition to make

special, while a serious one, is nevertheless remote in light of the other issues of this

infringement case, particularly when the patentability was not affected.

Therefore, Plaintiff has a likelihood of success in withstanding Defendant's claim of inequitable conduct regarding the petition to make special.

### iii.  Contract Bar

Defendant claimed that Plaintiff's claim was nevertheless barred by a "recently discovered" contract between Defendant and Plaintiff's company (a dismissed party), because the contract allegedly granted Defendant "an ownership interest in the '039 patent." [D.E.322, 29]. Under the contract entered into by Defendant and Plaintiff's company, Defendant has "all right and title in and to" the "suggestions or ideas for new products, services, processes, and/or improvements thereto" that Defendant may have provided to Plaintiff. *Id.*

This Court need not dig into the waiver analysis under the liberal pleading rules to conclude that Defendant does not have a likelihood of success in showing such contract bar. First, Defendant failed to show that why the contract was binding on Plaintiff, a nonparty, because Plaintiff signed the contract only in his corporate capacity. *See, e.g.*, *Wasserman v. Triad Securities Corp.*, 2006 WL 1644029, at *2 (M.D. Fla. June 12, 2006).  Second, Defendant failed to show that the "suggestions or ideas for new products, services, processes, and/or improvements thereto" include the '039 patent, particularly when Defendant admitted that "those suggestions, improvements, and ideas *led to* the '039 patent." [D.E. 322, 29] (emphasis added). Therefore, Plaintiff has a likelihood of success in withstanding Defendant's claim of contract bar.

### iv.  Infringement

A patent infringement analysis requires claim construction and comparison of claims to the accused device. *See, e.g.*, *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).  The Court has construed several claims and granted summary judgment in favor of

Defendant on the issue of literal infringement, and left open the issue of infringement under the doctrine of equivalents. [D.E. 467, 11].  The primary test for doctrine of equivalents is the "triple identity test": equivalency is shown when the accused device performs substantially the same function, in substantially the same way, to achieve substantially the same result. *See, e.g.*, *Abbott Lab. v. Sandoz, Inc.*, 566 F.3d 1282, 1296 (Fed. Cir. 2009).  An alternative test is whether the differences between the claimed elements and those of the accused device are insubstantial. *Id.* at 1297.  The Supreme Court noted that "the triple identity test may be suitable for analyzing mechanical devices," but cautioned that the doctrine of equivalents analysis should proceed on an element-by-element basis. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) (stating that "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole").  Moreover, as Defendant pointed out, the doctrine of equivalents analysis does not allow "broad play as to effectively eliminate that element in its entirety." *Id.*  A finding of infringement under the doctrine of equivalents requires the equivalents of each claim limitation to be present in the accused device. *See, e.g.*, *AquaTex Indus. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007).

There are four elements in dispute in terms of infringement: (1) "table top," (2) "dust collection structure," (3) "cutting box," and (4) "push handle in slidable engagement with Work Surface." *See* [D.E. 322, 11-22; D.E. 343, 21-24].

### a.  Table Top

The Court construed the "table top" to mean a physical structure rather than a location and thus the accused device does not have a "table top" because the "table top" is removed before mounting the work surface. *See* [D.E. 467 7-8].

As a preliminary matter, Defendant argued that the doctrine of equivalents analysis should not apply to the "table top" under prosecution history estoppel, because the element was the result of Plaintiff's narrowing amendment during the prosecution of the '039 patent. [D.E. 322, 13].   Prosecution history estoppel prohibits invoking doctrine of equivalents analysis if the claimed element was narrowed during the prosecution history and such amendment was made to satisfy any requirement under the Patent Act (including but not limited to reasons relating to the patentability). *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-35 (2002).   The Supreme Court reasoned as follows:

> The doctrine of equivalents is premised on language's inability to capture the essence of innovation, but a prior application describing the precise element at issue undercuts that premise.   In that instance the prosecution history has established that the inventor turned his attention to the subject matter in question, knew the words for both the broader and narrower claim, and affirmatively chose the latter.

*Id.* at 734-35.   Prosecution history estoppel is not a "complete bar" (or *per se* bar) of doctrine of equivalents because the narrowed claim may still be imperfect and not all equivalents are foreseeable at the time of amendment. *See id.* at 737-38.   Therefore, the Supreme Court held that a narrowing amendment in the prosecution history creates a presumption that the doctrine of equivalents is prohibited and, to overcome that presumption, patentee bears the burden to show that the amendment does not surrender the particular equivalent in question.[2] *Id.* at 740.

The prosecution history indicates that originally the claims did not include "a work surface mounted to the table top" and contained a  "table having a *top work surface*" and "a

---

[2]The Supreme Court listed several situations where the presumption of prosecution history estoppel can be rebutted: the equivalent may have been unforeseeable at the time of the application; the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question; or some other reason suggesting that patentee could not reasonably be expected to have described the insubstantial substitute in question. *Festo*, 535 U.S. at 740-41.

planar top work surface mounted on the *table*" *See* [D.E. 159, Ex. D, 16-18] (emphasis added).

Then the claims were modified to a "table having a *top*" and "a planar top work surface mounted

on the *table top*," and adding "a work surface mounted to the *top of said table*." *See id.* at 36-38

(emphasis added).  Later "a work surface mounted to the *top of said table*" was amended to

become "a work surface mounted to the *table top*." *See id.* at 58-59 (emphasis added).  The

prosecution history indicates that the "table top" resulted from narrowing amendment because (1)

"table top" was not existent in the claims until it was added and (2) "table top" as a physical

structure is a narrower concept than the concept of location such as "top of table" or "top of"

other surface.  There is thus a presumption that prosecution history prohibits invoking the

doctrine of equivalents.

 Plaintiff failed to present sufficient showing to rebut the presumption of prosecution

history estoppel.  Plaintiff neither explained the reason for the amendment nor presented any

evidence as to why the amendment cannot be reasonably viewed as surrendering a particular

equivalent. *See* [D.E. 304, D.E. 343].  Because Plaintiff failed to satisfy the burden to rebut the

presumption, Plaintiff does not have a likelihood of success in proving infringement regarding

"table top" under the doctrine of equivalents.

 Because infringement under the doctrine of equivalents also require comparison of each

claim limitation, *see, e.g.*, *AquaTex*, 479 F.3d at 1326, Plaintiff's failure on the "table top" issue

denies Plaintiff a likelihood of success in proving infringement of the '039 patent under the

doctrine of equivalents.

**B.  Irreparable Harm**

Because Plaintiff failed to prove likelihood of success on the merits, this Court need not

discuss the irreparable harm, balance of hardships and public interest. *Amazon.com*, 239 F.3d at 1350 (stating that the moving party is not entitled to a preliminary injunction unless it establishes both the likelihood of success on the merits and irreparable harm absent a preliminary injunction).  Nevertheless, the Court will proceed to examine the irreparable harm prong.

### i.  Viability of Presumption of Irreparable Harm Post-*eBay*

Until recently, in the context of preliminary injunctions, the Federal Circuit has upheld a presumption of irreparable harm absent injunctive relief after patentees could demonstrate a likelihood of success on the merits. *See, e.g.*, *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005).  In *eBay*, the Supreme Court rejected the Federal Circuit's general rule that a permanent injunction should automatically be granted after finding infringement and validity of a patent. 547 U.S. at 393-99.  The *eBay* Court held that the general equitable principles (i.e., four factors including irreparable harm) governing granting permanent injunctions apply "with equal force" to patent cases. *Id.* at 391.  The Federal Circuit has not yet clearly ruled whether in the context of preliminary injunctions the presumption of irreparable harm after finding infringement and validity of a patent survives *eBay*. *See Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1381, 1383 n.9 (Fed. Cir. 2006) (declining to address defendant's argument that a presumption of irreparable harm would be in direct contravention of *eBay*'s holding because patentee's establishment of irreparable harm obviated any need to apply the presumption); *PHG Tech., L.L.C. v. St. John Co., Inc.*, 469 F.3d 1361, 1364, 1369 (Fed. Cir. 2006) (noting that the district court had applied the presumption of irreparable harm and denied preliminary injunction for lack of likelihood of success on the merits without ruling on the validity of the presumption); *Abbot Lab. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1333-34, 1347

(Fed. Cir. 2006) (noting that the district court had applied the presumption of irreparable harm and denied preliminary injunction because a lack of likelihood of success on the merits made the patentee "no longer entitled to a presumption of irreparable harm").  Some district courts concluded that the presumption did not survive. *See, e.g., Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1306 (D. Utah 2008); *Torpso Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 881 (D. Minn. 2007); *Canon, Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 254 (S.D.N.Y. 2006); *z4 Tech., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 440 (E.D. Tex. 2006).  Some other district courts concluded otherwise. *See, e.g., Pass & Seymour, Inc. v. Hubbel, Inc.*, 532 F. Supp. 2d 418, 432 (N.D.N.Y. 2008); *Christiana Indus. v. Empire Elec., Inc.*, 443 F. Supp. 2d 870. 884 (E.D. Mich. 2006).

　　　For two reasons this Court concludes that the presumption of irreparable harm in the context of preliminary injunctions should survive *eBay*.

　　　First, the presumption of irreparable harm in preliminary injunctions is not inconsistent with *eBay* because the presumption does not constitute the "automatic" approach in granting injunctive relief in patent cases.  What concerned the *eBay* Court was the categorical approach in *granting or denying injunctive relief* without properly considering the equities. *See eBay*, 547 U.S. at 393-94 ("Just as the District Court erred in its *categorical denial of injunctive relief*, the Court of Appeals erred in its *categorical grant of such relief*.") (emphasis added).  More specifically, the eBay Court was directing the requirement of "consisten[cy] with traditional principles of equity" to the Federal Circuit's practice of granting permanent injunctions  "once infringement and validity have been adjudged." *See id.*  The presumption of irreparable harm, however, does not mean and is not equal to automatically granting injunctive relief after finding

22

infringement and validity of patent, because the presumption only shifts the burden to the infringer for rebuttal. *See, e.g.*, *Pfizer*, 429 F.3d at 1381 (noting that when the presumption attaches the burden is on the likely infringer to prove lack of irreparable harm).  Moreover, the presumption does not ignore the other two necessary steps in the preliminary injunction analysis: balance of hardships and public interest.  Because the likely infringer may or may not successfully rebut the presumption of irreparable harm, and because the balance of hardships and public interest may or may not outweigh the irreparable harm, the presumption itself does not force any court to automatically grant or deny a preliminary injunction.  Therefore, the presumption is not inconsistent with *eBay*.

Second, *eBay*'s observation that traditional principles of equity should be applied with "equal force" does not mean every aspect of a preliminary injunction analysis in a patent case should be exactly the same with any non-patent cases.  Although courts including the Federal Circuit read *eBay*'s "equal force" application to mean that a patent case does not require "unique treatment," *see, e.g.*, *Abbott Lab.*, 544 F.3d at 1365, the interpretation is overly broad and abstract, with its scope not clearly defined.  Seven out of the nine Justices on the *eBay* case in their concurrent opinions implied their slightly different concerns behind the "equal force" application, and none of the concerns justify that patent case should not be treated differently in all aspects. *See eBay*, 547 U.S. at 395-97 (Roberts, C.J., concurring and Kennedy, J., concurring). Three Justices recognized that the "difficulty of protecting a right to *exclude* through monetary damages" explained at least partially the "[un]surprising" long tradition of equity practice of granting injunctive relief upon finding infringement in the majority of patent cases. *See id.* at 395 (Roberts, C.J., concurring) (emphasis in original).  Because "a page of history is worth a volume

23

of logic," the three Justices did not intend to disturb the unique feature of patent cases but only to limit the deviation from the four-factor test. *See id.* (noting the difference between exercising equitable discretion under the four-factor test and "writing on an entirely clean slate").  Four other justices instead were concerned about instances where "the nature of the patent being enforced and the economic function of the patent holder present considerations quite unlike earlier cases." *Id.* at 396 (Kennedy, J., concurring).  More specifically, categorically granting preliminary injunctions after finding patent infringement and validity does not always conform with equity when some patents are used "not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees." *See id.*  Therefore, the four Justices required employing the four-factor test to prevent an injunction from being "employed as a bargaining tool to charge exorbitant fees . . . . [or] simply for undue leverage in negotiations." *See id.* Therefore, the majority of the *eBay* Court did not appear to disturb the patent right to exclude and the traditional injunctive relief practice except that the four-factor test must be employed.

In any event, as noted above, *Ebay* has not specifically overturned Federal Circuit precedent in the context of preliminary injunctions.   However, since the Plaintiff does not have a likelihood of success in proving infringement, the presumption may not apply. *See Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1334 (Fed.Cir.2006) (noting, in discussing *eBay*, that movant was "no longer entitled to presumption of irreparable harm" because it failed to demonstrate likelihood of success on the merits).

### ii.  Rebuttal of Presumption of Irreparable Harm

### a.  Adequacy of Monetary Damage

To establish irreparable harm, the injury cannot be compensable by monetary damages.

*See, e.g.*, *Tiber Lab., LLC v. Hawthorn Pharm., Inc.*, 527 F. Supp. 2d 1373, 1381 (N.D. Ga. 2007).  Plaintiff's damage claim included loss of market share, market position, business relationships and "exclusive position in the marketplace," and quoted *C.B. Fleet Co. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078 (S.D. Fla. 2008) to argue that "loss of market share is sufficient to establish irreparable harm." [D.E. 343, 4].  However, Plaintiff's *Fleet* quote was out of context because in *Fleet*, the patentee was actively marketing its patented products and had an actual market share. *See Fleet*, 510 F. Supp. 2d at 1082.  In the current case, Plaintiff did not actively market its patented products,  *See also Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990) (rejecting irreparable harm based on "potential lost sales" because that position requires a finding of irreparable harm to every patentee).  Plaintiff also asserted loss of business reputation, *see* [D.E. 343, 4], but since Plaintiff was not marketing the products and the accused device did not bear Plaintiff's trade names or other reputation-related labels, there is minimal, if any, loss of reputation.  "Although a patentee's failure to practice an invention does not necessarily defeat the patentee's claim of irreparable harm, the lack of commercial activity by the patentee is a significant factor in the calculus." *High Tech Med. Instr. v. New Image Indus.*, 49 F. 3d 1551, 1556-57 (Fed. Cir. 1995).

Plaintiff correctly pointed out that the right to exclude, "no matter how large or small that market," is an "essential element of the patent right." *Polymer Tech., Inc. v. Andrew P. Bridwell, H.A. Spec. Co.*, 103 F.3d 970, 975-76 (Fed. Cir. 1996).  Moreover, although a finding that future infringement is no longer likely may be sufficient to rebut the presumption of irreparable harm, *see id.* at 975, merely stopping infringing is insufficient. *See W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988).  However, when Plaintiff can point to no specific

interest that needs protection through interim equitable relief, the "availability of damages is particularly significant." *High Tech Med. Instr.*, 49 F.3d at 1557. The presumption of irreparable harm does not mean any patent holder can directly claim irreparable harm, in light of *eBay*'s rejection of categorical treatment of injunctive relief in patent cases. *See eBay*, 547 U.S. at 393-94.

Regardless of whether the presumption applies, the lack of commercial activity by the patentee, and the financial resources of the Defendant, strongly support the conclusion that monetary damages will suffice and no irreparable harm is present. *High Tech Med. Instr. v. New Image Indus.*, 49 F. 3d at 1556-57.

### b.  Reasonableness of Plaintiff's Delay in Seeking Injunctive Relief

A patentee's unexplained substantial delay in requesting injunctive relief weighs against a finding of irreparable harm because the delay suggests a lack of apparent urgency to change the status quo. *See, e.g.*, *High Tech Med. Instr.*, 49 F.3d at 1557 (noting the delay can be excused by "good explanation"); *46 FNutrition 21 v. United States*, 930 F.2d 867, 872 (Fed. Cir. 1991) (finding a patentee's "substantial period" of delay negates a finding of irreparable harm).

With knowledge of potential infringement, Plaintiff waited for twelve months to file the current lawsuit after being issued the '039 patent. [D.E. 322, 8]. Then fourteen months after initiating the lawsuit, Plaintiff sought a preliminary injunction. *Id.* at 9. The time span in delay, while alone not dispositive, weighs against a finding of irreparable harm. *See, e.g.*, *High Tech Med. Instr.*, 49 F.3d at 1557 (concluding that seventeen months of delay in initiating the lawsuit after being issued re-examination certificate of the patent militates against irreparable harm); *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987)

(concluding that fifteen months of delay in seeking preliminary injunction militates against a finding of irreparable harm); *Tiber Lab.*, 527 F. Supp. 2d at 1382 (concluding that thirteen months delay in filing suit after issuance of patent militates against a finding of irreparable harm).

Plaintiff did not provide a "good explanation" for the delay.  The essence of Plaintiff's explanation of the delay was that Plaintiff needed time for due diligence to rebut Defendant's numerous affirmative defenses to prove likelihood of success and Defendant failed to present sufficient evidence to support their defense. *See* [D.E. 343, 6-10].  In essence, Plaintiff was shifting the blame of delay to Defendant's "concealment of relevant facts." *See id.* at 10. However, the cases Plaintiff cited did not directly support Plaintiff's position because Plaintiff was not ignorant of facts necessary to "file" either this suit or a preliminary injunction. *See id.* (citing *Disabled Rights Union v. Shalala*, 40 F.3d 1018, 1021 (9th Cir. 1994) ("Excusable ignorance on the part of Plaintiff of the facts on which his claim depends excuses his delay in suing to enforce the claim, particularly when . . . the defendant has actively concealed the facts from him.")).  First, Plaintiff had no good explanation for waiting twelve months to file this suit with both an issued patent and knowledge of likely infringing activity in his possession.  Second, Plaintiff did not explain why he was unable to file a preliminary junction earlier when Defendant did not produce any evidence supporting its defenses.  Third, at the preliminary injunction stage evidence is nearly always incomplete and hence the "likelihood of success" standard exists.

Considering the length of Plaintiff's delay and the lack of "good explanation" of the delay, this Court should find such delay unreasonable.

Because monetary damage is adequate to compensate Plaintiff's loss and Plaintiff failed

27

to reasonably explain the lengthy delay in filing a preliminary injunction, Defendant satisfied its burden to rebut the presumption of irreparable harm.

**Conclusion**

The Plaintiff is not entitled to a preliminary injunction because he has not established  the likelihood of success on the merits and irreparable harm. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

**RECOMMENDATION TO THE DISTRICT COURT**

In light of the foregoing, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Preliminary Injunction.  (DE 303).

**NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, United States District Court Judge for the Southern District of Florida, within ten (10) days of being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983).  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE** this 29 day of October, 2009, at West Palm Beach in the Southern District of

Florida.

_James M. Hopkins_

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Hon. Daniel T. K. Hurley, Senior United States District Court Judge for the Southern
District of Florida
Counsel of record