UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 07-80435-Civ-Hurley/Hopkins

MICHAEL S. POWELL,

          Plaintiffs,

vs.

THE HOME DEPOT, U.S.A., INC.,

          Defendant.

_____/

## REPORT AND RECOMMENDATION AS TO PLAINTIFF'S VERIFIED MOTION TO TAX COSTS AND AMENDED BILL OF COSTS (DEs 708, 713)

**THIS CAUSE** has come before this Court upon an Order referring Plaintiff's Verified Motion to Tax Costs to the undersigned for a Report and Recommendation. (DEs 708, 737). This Court has before it Plaintiff's Verified Motion to Tax Costs, Plaintiff's Amended Bill of Costs and Amended Itemization of Costs, Defendant's Response in Opposition, and Plaintiff's Reply. (DEs 708, 713, 733, 760). The matter is now ripe for review. For the reasons that follow, this Court **RECOMMENDS** that the District Court **GRANT IN PART** Plaintiff's Verified Motion and Amended Bill of Costs. (DEs 708, 713).

## BACKGROUND

After a jury trial which concluded in February of 2010, Plaintiff prevailed in his patent infringement action against Defendant Home Depot. (DE 685). On March 8, 2010, the District Court entered final judgment in favor of Plaintiff in the amount of fifteen million dollars ($15,000,000.00). (DE 688). Subsequently, the District Court awarded enhanced damages in the amount of three million dollars ($3,000,000.00), as well as prejudgment interest and attorney's

fees.  (DEs 768, 774).  Defendant filed a notice of appeal on June 11, 2010.  (DE 775).  Upon

motion by Defendant and the posting of a supersedeas bond, the District Court entered an order

staying execution of judgment on June 18, 2010.  (DE 778).

Plaintiff filed its Verified Motion to Tax Costs, Amended Bill of Costs, and Amended

Itemization of Costs on March 26 and April 1, 2010.  (DEs 708, 713).

## DISCUSSION

Plaintiff seeks a total award of costs in the amount of two hundred ninety-nine thousand,

two hundred sixty-three dollars and twelve cents ($299,263.12).  (DE 708, pg. 10; DE 713, pg.

2).  According to Plaintiff's Amended Bill of Costs and Amended Itemization of Costs, Plaintiff

seeks such costs under three (3) bases: (1) 28 U.S.C. § 1920; (2) 35 U.S.C. § 285; and, (3) the

Court's inherent authority.  (DE 708, pgs. 1, 2; DE 713, pg. 1).  Plaintiff also asks that in the

event the Court determines that any of Plaintiff's costs are not recoverable under sections 1920 or

285, that the Court "exercise its inherent authority and invoke the full reach of Section 285 to tax

the otherwise unrecoverable costs," because all costs requested were purportedly reasonable and

necessary to the litigation.  (DE 708, pg. 2).

In response, Defendant contends that (1) numerous costs are not recoverable under

section 1920; and, (2) Plaintiff's request for expenses under section 285 must be denied because

(a) the section does not permit shifting of expert fees; and, (b) Plaintiff has failed to show that the

case is exceptional and that the costs were reasonable and necessary expenses related to the

litigation.  Finally, Defendant contends that Plaintiff is not entitled to recover any of its expert

fees under the court's inherent authority because Plaintiff has failed to show fraud or abuse of the

judicial process.  (DE 733, pgs. 1-2).

2

## I.  Plaintiff's Request for Costs Under 28 U.S.C. § 1920

Plaintiff seeks an award of ninety thousand, eight hundred fifty-two dollars and fifty cents ($90,852.50) in costs pursuant to section 1920.  (DE 708, pgs. 1, 2 and exhs. A, B; DE 713, pg. 1).  The costs sought fall into five (5) categories: (1) fees of the clerk; (2) summons and service; (3) printed or electronically recorded transcripts; (4) witness fees; and, (5) fees for exemplification and costs for making copies.  (DE 708, exh. A; DE 713, exhs. A, B).

Under the Federal Rules, prevailing parties are entitled to recover costs as a matter of course unless otherwise directed by the court or statute.  *See* Fed. R. Civ. P. 54(d)(1) (2009). Rule 54(d) creates a presumption in favor of awarding costs to the prevailing party.  *See Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991) (noting that the language of Rule 54(d) "creates a presumption in favor of awarding costs to the prevailing party which [the opponent] must overcome.")  However, such presumption is not without limits, and courts may only tax costs as authorized by statute.  *See EEOC v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000), *reh'g and reh'g en banc denied*, 233 F.3d 580 (11th Cir. 2000) (*citing Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)); *Arcadian Fertilizer, L.P. v. MPW Industrial Services, Inc.*, 249 F.3d 1293, 1296-1297 (11th Cir. 2001).

"Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)."  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-442 (1987).  This section provides in part,

> **§ 1920. Taxation of costs**
>
> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for

use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials
where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and
salaries, fees, expenses, and costs of special interpretation services under section
1828 of this title.
                                        ****

28 U.S.C. § 1920 (2009).

Where a party challenges the costs requested, the burden lies with the challenging party.

*See EEOC*, 213 F.3d at 621 (finding that challenging party did not demonstrate that any portion

of the depositions were not "related to an issue which was present in the case at the time the

deposition was taken.")  *See also Ferguson v. Bombardier Srvcs. Corp.*, No. 8:03-cv-539-T-

31DAB, 2007 WL 601921, *3 (M.D. Fla. Feb. 21, 2007) (*consolidated case*) (observing that the

burden lies with the losing party, unless knowledge of the requested cost is within the exclusive

knowledge of the requesting party) (*citing Desisto College, Inc. v. Howey-in-the-Hills*, 718 F.

Supp. 906, 910 n. 1 (M.D. Fla. 1989), *aff'd sub nom. Desisto College, Inc. v. Line*, 914 F.2d 267

(11th Cir. 1990), *not followed on other grounds by EEOC*, 213 F.3d 600).

### 1.  Fees of the Clerk

Plaintiff seeks to recover three hundred and fifty dollars for its filing fee.  (DE 708, pg.

3).  Defendant does not object to this request.  (DE 733, pgs. 1-21).

The docket shows that Plaintiff paid the filing fee on May 17, 2007, when he filed the

original complaint.  (DE 1).  Because filing fees may be taxed pursuant to section 1920(1), this

Court **RECOMMENDS** that the District Court award Plaintiff the three hundred and fifty-

dollars requested.  (DEs 708, 713).  *See EEOC*, 213 F.3d at 621 (finding that the district court did

not abuse its discretion by awarding costs where the request was unchallenged).

### 2.  Summons and Service Fees

Plaintiff seeks to recover five thousand, seven hundred twenty-nine dollars ($5,729.00)

for service of the complaint and subpoenas for deposition and trial.  (DE 708, pg. 3).  Plaintiff

states that its costs for service were exacerbated by Defendant's litigation tactics.  (DE 708, pg.

3).  For example, Plaintiff notes that Defendant's submission of a purportedly misleading

affidavit by Allen Eden ("Eden") of the Original Saw Company caused Plaintiff to have to serve

Eden with two (2) deposition subpoenas and a trial subpoena to address inconsistencies in Eden's

sworn testimony.  (DE 708, pg. 3).

In response, Defendant contends that (1) five hundred seven dollars ($507.00) in costs

associated with Norman Brown ("Brown") are not recoverable because Plaintiff ultimately

decided not to depose Brown, and because the rush and Federal Express fees associated with

Brown were not necessary; (2) Plaintiff is not entitled to recover any costs associated with

expedited service, priority fees, or Federal Express because Plaintiff has failed to explain the

need for expedited service; (3) Plaintiff is not entitled to recover the costs relating to service on

witnesses outside the 100-mile limit designated in Rule 45(d)(3)(A); and, (4) the invoices

submitted by Plaintiff for service effected by private process servers are insufficient because the

invoices do not reflect whether the amounts charged were reasonable.  (DE 733, pgs. 2-4).

### Norman Brown

Considering Defendant's contention as to Brown first, Defendant notes that at least one

court has declined to award costs for service where the party seeking costs cancelled the

depositions and never rescheduled them.  *See Mull v. Trinity Yacht Sales & Chartering, LLC,*

5

No. 07-21358-Civ, 2009 WL 4594965, *1 (S.D. Fla. Dec. 1, 2009) (denying costs for service of

subpoenas on individuals where the depositions were cancelled and never rescheduled).  Plaintiff

has not responded to Defendant's argument.  (DE 760).  In light of Plaintiff's failure to rebut

Defendant's contention, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's

request for costs associated with service of the deposition subpoena on Brown, totaling five

hundred seven dollars ($507.00).  (DEs 708; DE 713, exh. B, Powell Cost number 0004[1]).

#### Expedited Service, Priority Fees, and Federal Express

Next, with regard to Plaintiff's request for costs associated with expedited service,

priority fees, and Federal Express, courts have held that where expedited costs are incurred

merely for the convenience of counsel, such costs are not taxable.  *See Davis v. Sailormen, Inc.*,

No. 6:05-cv-1497-Orl-22JGG, 2007 WL 1752465, *4 (M.D. Fla. June 15, 2007) (denying motion

to tax costs of expedited deposition transcripts because the record did not support a finding that

the expedited transcripts were needed due to circumstances beyond control of the party) (*citing*

*Nat'l Bancard Corp. v. VISA, U.S.A., Inc.*, 112 F.R.D. 62, 64 (S.D. Fla. 1986)).

Nevertheless, this Court concludes that Plaintiff should be awarded costs for expedited

service, priority fees, and Federal Express.  As noted by Plaintiff, Defendant repeatedly refused

to provide current contact information for Ed Heck ("Heck") and Scott Long ("Long"), thereby

requiring Plaintiff to serve such individuals on an emergency basis once their addresses were

finally obtained.  (DE 760, pg. 6).  Plaintiff also notes that because his counsel was in the State of

Georgia when their addresses were finally obtained, the costs for expedited service were required

---

[1] The "Powell Cost" number is stamped at the bottom right corner of the page.

so that counsel could take their depositions while he was still in Georgia.  (DE 760, pg. 6).[2]

Finally, Plaintiff notes that he was required to order expedited service on the entities of Compact

Power and Original Saw Company after repeated cancellations and good faith efforts to

coordinate dates with counsel for Home Depot and Industriaplex failed, leaving Plaintiff with

only a small window of time for service.  (DE 760, pg. 7).

     In light of Plaintiff's explanations regarding the costs of expedited service, it does not

appear that such charges were incurred merely for the convenience of counsel.  Rather it appears

that such costs were beyond the control of Plaintiff and are reasonable.  As such, this Court

**RECOMMENDS** that the District Court award Plaintiff the costs for expedited service, priority

fees, and Federal Express.  *See Davis*, 2007 WL 1752465 at*4 (denying motion to tax costs of

expedited deposition transcripts because the record did not support a finding that the expedited

transcripts were needed due to circumstances beyond control of the party) (*citation omitted*).

### Private Process Servers

     Turning now to Defendant's objection to the invoices submitted by Plaintiff's private

process servers and the reasonableness of the amounts charged, the Eleventh Circuit has held that

private process server fees may be taxed under sections 1920(1) and 1921, so long as the taxable

costs of the private process server are limited to the statutory fees authorized by section 1921.[3]

*See EEOC*, 213 F.3d at  624.  As noted in section 1921(b), "the "Attorney General shall from

---

[2]  Plaintiff notes that counsel would have had to make a return trip to Georgia at a later date if the
depositions could not be taken at the time he was there.  (DE 760, pg. 6).

[3]  *See* 28 U.S.C. § 1920(1) (providing that "fees of the clerk and marshal" may be taxed); 28 U.S.C. §
1921(a)(1)(B), (G), (H) (providing that the court may tax as costs fees of the marshal for serving subpoenas for
witnesses, and that the court may tax as costs necessary travel, including mileage, and overtime expenses incurred by
deputy marshals in the course of serving civil process).

time to time prescribe by regulation the fees to be taxed and collected under subsection

[1921](a).  Such fee shall, to the extent practicable, reflect the actual and reasonable cost of the

service provided."  28 U.S.C. § 1921(b) (2009).  According to 28 C.F.R. § 0.114(a)(3) (2009),

the United States Marshals Service is permitted to be compensated at the rate of fifty-five dollars

($55.00) per hour, plus travel costs and out-of-pocket expenses.  *See Padjuran v. Aventura*

*Limousine & Transp. Srvc., Inc.*, No. 08-20128-Civ, 2009 WL 4633526, *20 n. 11 (S.D. Fla.

Dec. 2, 2009) (noting that the rate under 28 C.F.R. § 0.114 increased to $55 per hour on

December 18, 2008); *Mull*, 2009 WL 4594965 at *2 (awarding costs for service of process at a

rate of $45 per hour for service effected in September and October of 2008, and $55 per hour for

service effected in 2009).  *See also Davis*, 2007 WL 1752465 at *2 (awarding costs for service of

subpoenas based on Marshals' rates) (*citing* 28 C.F.R. § 0.114(a)(3)); *Hargrove v. Thorpe*, No.

2:05-cv-617-FtM-99SPC, 2007 WL 2774208, *2 (M.D. Fla. Sept. 13, 2007) (*same*); *George v.*

*GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1299 (M.D. Fla. 2000) (*same*).

Application of the foregoing leads this Court to conclude that Plaintiff should be awarded

the costs incurred by private process servers.  Not only did Plaintiff have to serve multiple

subpoenas on Eden to resolve inconsistencies in his sworn testimony, but Plaintiff notes that its

itemized listing submitted in connection with its Bill of Costs shows that Plaintiff was charged

forty dollar ($40.00) advance witness fees to Ed Heck, Scott Long, Chad Phillips, and Chris

Canoles, and costs for repeated attempts at service on Long.  (DE 708, pg. 3; DE 760, pg. 6 and

exh. B, Powell Costs numbered 0005, 0007, 0012, 0016, 0020, 0021).[4]  Moreover, this Court's

---

[4] Plaintiff's invoice dated 5/12/2008 shows that Long had been avoiding service and was uncooperative.
(DE 760, pg. 6; DE 713, exh. B, Powell Cost number 0007).

review of Plaintiff's invoices, (DE 713, exh. B, Powell Costs numbered 0002-0022), supports a conclusion that all fees incurred by Plaintiff for its process services were reasonable.  Therefore, this Court **RECOMMENDS** that the District Court award Plaintiff the costs incurred by private process servers.  *See Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1334 (S.D. Fla. 2009) (awarding total requested costs for service, in excess of that allowed by statute, where the plaintiff had previously refused to participate in the case, thereby requiring process server to make repeated attempts at service).

### Service Outside the 100-mile Limit of Rule 45

Finally, with regard to Defendant's objection to Plaintiff's request for costs relating to service on witnesses outside the 100-mile limit designated in Rule 45(d)(3)(A), Plaintiff states that even though such subpoenas were ultimately quashed, the subpoenas had been served based on representations from most of the witnesses that they would appear for trial if served with a subpoena.  (DE 760, pg. 7).  Plaintiff further notes that he attempted to minimize the quantity of videotaped depositions that would be presented at trial, as well as corresponding expenses, and that he exhausted his options to secure the attendance of the individuals.  (DE 760, pg. 7).

For several reasons, this Court concludes that Plaintiff should be awarded costs relating to subpoenas served beyond the 100-mile limit of Rule 45.  First, because Defendant has provided this Court with no authority indicating that Plaintiff's request for such costs should be denied merely because the subpoenas were served in violation of Rule 45, (DE 733, pg. 3), it cannot be said that Defendant has met its burden of challenging Plaintiff's request.  *See EEOC*, 213 F.3d at 621 (noting that the burden lies with the challenging party); *Ferguson*, 2007 WL 601921 at *3 (observing that the burden lies with the losing party, unless knowledge of the requested cost is

within the exclusive knowledge of the requesting party). Moreover, notwithstanding the fact that the subpoenas may have been eligible for quashing under Rule 45, in light of Plaintiff's statements indicating that the subpoenas were served based on the agreements of the witnesses, and that such subpoenas were served in an effort to reduce the costs of trial, it appears that the costs were reasonably incurred. Therefore, this Court **RECOMMENDS** that the District Court award Plaintiff costs for subpoenas served outside the 100-mile limit of Rule 45.

In light of the above, this Court **RECOMMENDS** that the District Court award Plaintiff costs for service of summons and subpoenas in the amount of five thousand, two hundred twenty-two dollars ($5,222.00).[5] (DEs 708, 713).

**3. Deposition, Hearing, and Trial Transcripts**

Plaintiff next seeks an award of fifty-six thousand, one hundred seventeen dollars and eighty-nine cents ($56,117.89) for costs relating to deposition, hearing, and trial transcripts. (DE 713, pg. 1). However, Defendant contends that Plaintiff is not entitled to recover costs for the following: (a) transcripts which were recorded by both video and stenographic means; (b) videotaped depositions which were not used at trial; (c) the deposition of Mark Robinson ("Robinson"); (d) court reporter attendance fees for depositions which were not transcribed; (e) costs for scanning, disk copies, mini-scripts, and "CD Deposition Litigation Packages;" (f) hearing transcripts; (g) expedited daily trial transcripts; and, (h) video synchronization. (DE 733, pgs. 4-8). Plaintiff maintains that all depositions and transcripts were necessarily obtained for use in the case and are therefore compensable. (DE 708, pg. 4).

---

[5] Although Plaintiff requested a total of five thousand, seven hundred twenty-nine dollars ($5,729.00) for the costs of service and summons, this Court has recommended that the District Court decline to award Plaintiff five hundred seven dollars ($507.00) for the costs of service of Brown's deposition subpoena. *See* pg. 6, *infra*.

Costs for deposition transcripts are generally taxable so long as the transcripts were "necessarily obtained for use in the case." *See EEOC*, 213 F.3d at 620-621 (noting that costs of deposition transcripts may be taxed where the transcripts were, either wholly or partially, "necessarily obtained for use in the case.") (*citing* § 1920(2); *Newman v. A.E. Stanley Mfg. Co.*, 648 F.2d 330, 337 (5th Cir. Unit B June 1981)).  The question of whether deposition costs are taxable turns on the factual question of whether the deposition was wholly or partially "necessarily obtained for use in the case." *Id*. at 621.  The burden lies with the challenging party to show that the depositions were not related to an issue in the case at the time the deposition was taken. *See Id*.  District courts have wide latitude in determining whether a deposition was "necessarily obtained" for use in the case. *See Ferguson*, 2007 WL 601921, *3 (*citing Newman*, 648 F.2d at 337).

### Transcripts Recorded by Both Video and Stenographic Means

Plaintiff seeks an award of eleven thousand, one hundred seventy-five dollars ($11,175.00) in costs for the videotaping of depositions.  (DE 733, pg. 4).  Defendant first argues that Plaintiff is not entitled to recover costs for videotaping of depositions because Plaintiff has not explained why videotaping was necessary in addition to recording by stenographic means. (DE 733, pg. 4).  Defendant also contends that Plaintiff may not be awarded the costs for additional DVDs of videotaped depositions.  (DE 733, pg. 5).

The Eleventh Circuit has held that " . . . when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the

deposition in the manner noticed." *Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460, 465 (11th

Cir. 1996) (*as quoted in Suppa v. Costa Crociere, S.p.A.*, No. 07-60526-Civ, 2008 WL 4629078,

*2 (S.D. Fla. Oct. 17, 2008)).  However, for such costs to be taxable, the prevailing party must

explain why it was necessary to obtain both regular transcripts and videotaped copies.  *See*

*Morrison*, 97 F.3d at 465 (noting that the prevailing party failed to explain why it was necessary

to obtain video copies for use in the case).  *See also Ferguson*, 2007 WL 601921 at *3; *Perfect*

*Web Techs., Inc. v. Infousa, Inc.*, No. 07-80286-Civ, 2009 WL 2407689, *9 (S.D. Fla. Aug. 4,

2009) (declining to award costs for videotaped depositions because the movant failed to explain

why both stenographically transcribed and videotaped copies of the deposition were necessary)

(*citations omitted*); *Utopia Provider Systems, Inc. v. Pro-Med Clinical Systems*, L.L.C., No. 07-

60654-Civ, 2009 WL 1210998, *3 (S.D. Fla. May 1, 2009) (*same*).

    Defendant takes no issue with the content of Plaintiff's notices of deposition.  (DE 733,

pgs. 4-5).  Rather, Defendant contends that Plaintiff has failed to explain the need for depositions

to be copied by video and stenographically.  (DE 733, pg. 4).  In response, Plaintiff argues that

videotaping was necessitated by the "the nature of this litigation," and because videotaped

testimony was needed for presentation to the jury.  (DE 760, pg. 7).  According to Plaintiff,

because the trial lasted over three (3) weeks and presented complex issues of patent infringement,

it would have been impractical to read numerous depositions into the record.  (DE 760, pg. 7).

Plaintiff also notes that because numerous witnesses resided outside the subpoena jurisdiction of

the court and refused, unexpectedly, to attend trial, and even sought to quash their subpoenas, the

use of videotaped deposition testimony became a necessity.  (DE 760, pgs. 4, 7-8).

    This Court concludes that Plaintiff has shown that videotaped copies of the depositions

were necessarily obtained for use in the case, as required by section 1920(2).  In light of the fact

that the trial lasted over three weeks, presented complex issues of fact, and involved several

witnesses whose subpoenas had been quashed by the District Court, (DEs 564, 576, 621, 626),

this Court concludes that presenting videotaped testimony allowed Plaintiff to present his case in

its entirety and promoted judicial efficiency.  Therefore, this Court **RECOMMENDS** that the

District Court award Plaintiff costs for videotaped depositions, which amounts to eleven

thousand, one hundred seventy-five dollars ($11,175.00).  (DEs 708, 713).

See *Commercial Credit Equip. Corp. v. Stamps*, 920 F.2d 1361, 1368 (7th Cir. 1990)

("[v]ideotaped depositions are a necessary and time effective method of preserving witnesses'

time and allocating precious court and judicial time in this age of advanced court technology and

over-crowded court calendars. We must not seem reluctant to adopt any and all time-saving

methods that serve to improve our system of justice.") (*as quoted by Morrison*, 97 F.3d at 465);

*Horizon Hobby, Inc. v. Ripmax Ltd.*, No. 07-CV-2133,  2009 WL 3381163, *4 (C.D. Ill. Oct. 15,

2009) (awarding costs for videotaped depositions, notwithstanding the fact that not all

videotaped depositions were actually used at trial, because the witnesses were from the United

Kingdom and could not be compelled to testify at trial) (*citations omitted*); *Platte River Ins. Co.*

*v. Baptist Health*, No. 4:07cv0036 SWW, 2009 WL 2044610, *2 (E.D. Ark. July 10, 2009)

(denying motion for costs of videotaped depositions where the plaintiff did not claim that the

witnesses were unavailable for trial, and failed to show any other need for the videotapes in

addition to the stenographic transcripts); *EEOC v. Boot*, No. 07-CV-95-LRR, 2009 WL 520564,

*6 (N.D. Iowa. Feb. 9, 2010) (denying motion for costs of both videotapes and stenographic

transcripts of depositions because movant failed to show that any class members would have

13

been unable to travel to, or testify at, trial).

### Additional DVD copies of Videotaped Depositions

Defendant next contends that Plaintiff should not be permitted to recover the costs for additional DVD copies of the videotaped depositions. (DE 733, pg. 5). In response, Plaintiff notes that it does not seek costs for multiple DVD copies. (DE 760, pg. 8, n. 6). Rather, Plaintiff states that while each deposition required more than one (1) DVD for purposes of reproduction, he only seeks costs for a single DVD copy. (DE 760, pg. 8, n. 6).

In light of Plaintiff's explanation, this Court finds Defendant's objection unpersuasive. Therefore, this Court **RECOMMENDS** that the District Court award Plaintiff the costs requested for DVD copies of the depositions. (DEs 708, 713).

See *Whittier v. City of Sunrise*, No. 07-60476-CIV, 2008 WL 5765868, *8 (S.D. Fla. Dec. 3, 2008) (awarding costs for 1 DVD copy of deposition pursuant to section 1920(4)).

### Videotaped Depositions Which were Not Used at Trial

This Court concludes that Defendant's objection as to costs incurred for depositions which were not used at trial lacks merit. As noted by Plaintiff, even where depositions were not used at trial, the depositions related to claims or defenses that were, at some point, at issue in the litigation. (DE 708, pg. 4). Accordingly, this Court concludes that Defendant has failed to meet its burden of showing that the depositions were not related to an issue in the case at the time they were taken, as required by *EEOC*, 213 F.3d at 621. This Court therefore **RECOMMENDS** that the District Court award Plaintiff costs for any depositions that were not used at trial.

See *George v. Florida Dept. of Corr.*, No. 07-80029-Civ, 2008 WL 2571348, *5 (S.D. Fla. May 23, 2008) ("obtaining deposition transcripts for use during discovery may be taxable as

14

long as it is necessary to the issues in the case when the deposition was taken." ) (*citations omitted*); *Horizon Hobby, Inc.*, 2009 WL 3381163 at *4 (awarding costs for videotaped depositions, notwithstanding the fact that not all videotaped depositions were actually used at trial, because the witnesses were from the United Kingdom and could not be compelled to testify at trial) (*citations omitted*).

### Robinson's Deposition

Defendant next argues that Plaintiff is not entitled to an award of costs for the deposition of Robinson because Robinson served as a damages expert for Defendant Industriaplex. (DE 733). Defendant contends that because Plaintiff and Industriaplex reached a settlement agreement prior to the trial with Home Depot, and because Robinson's deposition was not used at trial, Plaintiff should not be able to tax the costs of deposing Industriaplex's expert against Home Depot. (DE 733, pg. 6). While not making any argument specifically related to Robinson, Plaintiff contends that because Defendant has not shown that the deposition was not necessary at the time it was taken, Plaintiff's costs should not be reduced. (DE 760, pg. 8).

Because Defendant has not provided any authority in support of its contention, this Court finds such argument unpersuasive. Moreover, because Defendant has failed to show that the Robinson's deposition was not related to an issue in the case at the time it was taken, as required by *EEOC*, 213 F.3d at 621, this Court **RECOMMENDS** that the District Court award Plaintiff costs related to Robinson's deposition. (DEs 708, 713). *See Horizon Hobby, Inc.*, 2009 WL 3381163 at *4 (awarding costs for videotaped depositions, notwithstanding the fact that not all videotaped depositions were actually used at trial); *Acumed LLC v. Stryker Corp.*, No. 04-CV-0513-BR, 2006 WL 3410152, *5 (D. Ore. Sept. 12, 2006) (rejecting contention that costs should

be denied for depositions not used at trial; awarding costs for videotaped depositions because there was no evidence that the depositions were not necessary at the time they were taken).

### Court Reporter Attendance Fees Where Depositions not Transcribed

Defendant next contends that Plaintiff should be precluded from recovering one thousand ninety dollars ($1,090.00) for court reporter attendance fees where the depositions were not transcribed.  (DE 733, pg. 6).  In support of its contention, Defendant cites *Zunde v. Int'l Paper Co.*, No. 3:98CV439-J-20B, 2000 WL 1763843, *10 (M.D. Fla. July 20, 2000), where the court declined to award costs for depositions which were not transcribed until after the trial, because the court reasoned that the depositions were not necessarily obtained for use in the case.  In response, Plaintiff generally asserts that Defendant has failed to show that the depositions were not necessary at the time they were taken.  (DE 760, pg. 8).

Deposition transcripts need not be used at trial in order to be compensable.  *See George*, 2008 WL 2571348 at *5 ("[i]t is not necessary to use a deposition at trial to be taxable . . .") (*quoting EEOC*, 213 F.3d at 621)).  Costs for depositions are taxable where a party relies on such depositions in pleadings, or where depositions are taken during discovery, and the deposition relates to an issue in the case at the time it was taken.  *See George*, 2008 WL 2571348 at *5 (*citing  EEOC*, 213 F.3d at 621; *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1474 (10th Cir. 1997)).  "[D]eposition costs are taxable even if a prevailing party's use of a deposition is minimal or not critical to that party's ultimate success . . ."  *George*, 2008 WL 2571348 at *5 (*citing EEOC*, 213 F.3d at 621) (*as cited in Ferguson*, 2007 WL 601921 at * 3).  Courts may also tax attendance fees of the court reporter or per diem costs in connection with the depositions. *See George*, 2008 WL 2571348 at *5 ("Attendance fees of the court reporter or per diem,

16

processing and handling, and delivery fees are part of the court reporter's fee and are taxable.")

As the non-prevailing party, Defendant bears the burden of showing "that specific deposition costs or a court reporter's fee was not necessary for use in the case or that the deposition was not related to an issue present in the case at the time of the deposition." *George*, 2008 WL 2571348 at *5 (*citing EEOC*, 213 F.3d at 621; *Helms v. Wal-Mart Stores, Inc.*, 808 F.Supp. 1568, 1571 (N.D. Ga. 1992) ("since both parties should be aware of the reasons to take a deposition, [ ] the non-prevailing party should explain why the court should not grant that cost."); *Desisto College, Inc.*, 718 F.Supp. at 910 n. 1)).

Defendant has not met such burden.  The mere fact that a deposition was not transcribed does not lead to the conclusion that the deposition was not necessarily obtained for use in the case, or that the court reporter's attendance was not required.  Because Defendant has failed to meet its burden of showing that the depositions were not related to an issue in the case at the time they were taken, this Court **RECOMMENDS** that the District Court award Plaintiff the costs sought for such depositions, including court reporter attendance fees.  (DEs 708, 713).

### <u>Costs for Scanning, Disk Copies, Mini-Scripts, and CD Litigation Packages</u>

Defendant objects to Plaintiff's request for two thousand, six hundred ninety-five dollars ($2,695.00) related to scanning, disk copies, mini-scripts, and "CD Deposition Litigation Packages."  (DE 733, pg. 6).  Plaintiff has not responded to Defendant's objection.  (DE 760).

In this Court's experience, it is customary for stenographer's invoices to include additional expenses for services such as condensed transcripts, electronic transcripts, and shipping and exhibits.  Where such extra services are only for the convenience of counsel, they are not reimbursable.  *See Goodwall Const. Co. v. Beers Const. Co.*, 824 F. Supp. 1044, 1066

17

(N.D. Ga. 1992) (deposition costs incurred merely for convenience to counsel are not necessary or recoverable), *aff'd*, 991 F.2d 751 (Fed. Cir. 1993); *Johnson v. Commc'ns Supply Corp.*, No. 05-60510-CIV, 2006 WL 3709620, *2 (S.D. Fla. Dec. 14, 2006) (declining to award costs for mini-transcripts and disk copies of transcripts because they were incurred for the convenience of counsel.  Most courts have found that the costs for ASCII and mini scripts are not taxable as costs.  *See Feinschreiber v. United States*, No. 01-3628-CIV-HUCK, 2002 WL 31084156, *2 (S.D. Fla. Aug. 12, 2002) (*citing Price v. United Techs. Corp.*, Case No. 99-8152, 2001 WL 36085163 (S.D. Fla. Nov. 16, 2000); *Scallet v. Rosenblum*, 176 F.R.D. 522, 527 (W.D. Va.1997)); *Amer. Guarantee & Liability Ins. Co. v. U.S. Fidelity & Guar. Co.*, No. 4:06CV655RWS, 2010 WL 1935998, *4, *6 (E.D. Mo. May 10, 2010) (denying request for costs for mini, E-transcript, and rough ASCII because such costs were for the convenience of the attorneys and were not "necessarily obtained for use in the case" under section 1920; further denying request for costs of "litigation support CD-Rom" because such costs were incurred merely con convenience of counsel).

Based on the foregoing authority, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's requests for costs relating to scanning, disk copies, mini-scripts, and "CD Deposition Litigation Packages," which amount to two thousand, six hundred ninety-five dollars ($2,695.00).  (DEs 708, 713).

**Hearing Transcripts**

Defendant objects to Plaintiff's request for eight hundred forty dollars and eighty-four cents ($840.84) for transcripts of a portion of a calendar call, the preliminary injunction hearing conducted by this Court, and another unspecified hearing.  (DE 733, pg. 6).  According to

18

Defendant, because none of the transcripts were used or relied upon by Plaintiff in supplemental briefing in the case, Plaintiff has failed to show that the transcripts were necessarily obtained for use in the case, and not for the convenience of counsel. (DE 733, pgs. 6, 7). Plaintiff maintains that all hearing transcripts were needed for briefing issues in the case. (DE 708, pg. 4).

Under section 1920(2), costs for transcripts may be awarded regardless of whether the transcripts were for pre-trial hearings, post-trial hearings, or the trial itself. *See Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 781-82 (Fed. Cir. 1983) (affirming award of costs for transcripts of pre-trial and post-trial hearings because there was no basis for overturning the court's conclusion that the transcripts were necessarily obtained for use in the case). In light of Plaintiff's contention that the transcripts were needed for briefing in the case, this Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's request for the cost of such transcripts. (DEs 708, 713).

*See Responsible Me, Inc. v. Evenflo Co., Inc.*, No. 06-61736-CIV, 2009 WL 528247, *7 (S.D. Fla. March 2, 2009) (awarding costs for Markman hearing transcript because opposing party failed to show that the transcripts were not necessary) (*citing Chore-Time Equipment, Inc.*, 713 F.2d at 781-82).

### Expedited Daily Trial Transcripts

Defendant next argues that Plaintiff should not be permitted to recover fifteen thousand dollars ($15,000.00) in costs for expedited daily trial transcripts because Plaintiff has not shown that they were obtained for anything other than the mere convenience of counsel. (DE 733, pg. 7) (*citing Pickett v. Tyson Fresh Meats, Inc.*, Civ. 96-A-1103-N, 2004 WL 3712721 (M.D. Ala. Aug. 3, 2004). In response, Plaintiff argues that the daily transcripts were not obtained merely

for the convenience of counsel, and that the expedited transcripts were an "indispensable necessity" based on the length of the trial and the complexity of the issues.  (DE 708, pg. 4; DE 760, pg. 9).  Plaintiff also notes that his team of lawyers was not large enough to have a designated note taker, and that the trial transcripts were needed to adequately preserve trial testimony and colloquies with the court.  (DE 760, pg. 9).

The Eleventh Circuit has stated although the costs of a daily transcript should not be awarded "as a matter of course," the costs of daily transcript costs may nevertheless be awarded, in the court's discretion, if the court deems the daily transcript "necessary."  *See Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (affirming award of costs for expedited daily transcript where the court found that the transcripts were necessary in light of the case's length and complexity), *cert. denied*, 537 U.S. 1190 (2003).  *See also Sensormatic Elecs. Corp. v. The Tag Co., US*, No. 06-81105-CIV, 2009 WL 3208649, *4 (S.D. Fla. Oct. 2, 2009) (*citing Maris Distrib. Co.*, 302 F.3d at 1225) (*other citations omitted*); *Charter Medical Corp. v. Cardin*, 127 F.R.D. 111, 113 (D. Md. 1989) (awarding costs for daily transcripts where case presented complex issues, transcripts were necessary to prepare for cross examination of technical expert at trial, and the court viewed portions of the transcript in reaching its decision); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 361, 367 (D. Mass. 1993) (awarding costs of daily trial transcripts of copyright infringement trial because such costs were reasonably necessary in light of the fact that the trial lasted more than nine (9) weeks, involved complex and technical issues, and depended on witness credibility).

For several reasons, this Court concludes that Plaintiff should be awarded costs for the daily trial transcripts because they were necessary.  First, as noted by Plaintiff, the instant case is

unlike *Pickett*, 2004 WL 3712721, relied on by Defendant, because here, Plaintiff was represented by only one partner and one associate, as well as one other attorney who was retained only to consult on issue of patent law.  (DE 760, pg. 9).  As such, unlike *Pickett*, Plaintiff's counsel was not able to designate one individual as the team note taker.  Second, the instant patent infringement case was extremely complex.  The three (3) week trial presented numerous claims regarding Plaintiff's patent, Defendant's device, and the conduct of various individuals. (DE 760, pg. 5).  The trial also consisted of numerous witnesses, both fact and expert, and involved numerous exhibits.  (DEs 625, 630, 640, 641, 642, 645, 650, 684).  Moreover, this Court notes that Plaintiff cited portions of the trial transcript in his five (5) Motions for Judgment as a Matter of Law and his Motion to Treble Damages, all of which were filed either before the jury rendered its verdict, or less than thirty (30) days after trial concluded.  (DE 671, pgs. 2-12; DE 672, pgs. 2-6; DE 673, pgs. 3-5; DE 674, pgs. 3-4; DE 699, pg. 4; DE 701, pgs. 4-8, 24-26, 28-30; DE 703 and exh. A).  Finally, the fact that Defendant cited lengthy portions of the trial transcripts in its Motion for Judgment as a Matter of Law, which was filed mid-trial, as well as its Renewed Motion for Judgment as a Matter of Law and Motion for New Trial, contradicts Defendant's contention that the daily transcripts were not necessary.  (DE 675, pgs. 5, 11-15; DE 718, pgs. 4-5, 10, 13-25; DE 719, pgs. 3-19).

Therefore, this Court **RECOMMENDS** that the District Court award Plaintiff fifteen thousand dollars ($15,000.00) in costs for the daily trial transcripts.  (DEs 708, 713).

*See Maris Distrib. Co.*, 302 F.3d at 1225 (affirming award of costs for expedited daily transcript where the court found that the transcripts were necessary in light of the case's length and complexity); *Sensormatic Elecs. Corp.*, 2009 WL 3208649 at *4 (awarding costs in the

amount of $22,447.74 for daily trial transcripts because (1) the copyright infringement trial lasted nearly four weeks, and involved complex issues and expert testimony; (2) the transcripts were used to prepare for direct and cross examination, mid-trial motions, proposed findings of fact and conclusions of law; and, (3) the district court referred to the transcripts for mid-trial rulings).

### Video Synchronization

Defendant objects to Plaintiff's request for two thousand, one hundred seventy-five dollars ($2,175.00) for video synchronization costs, claiming that Plaintiff has failed to show that the costs were reasonably necessary to his case.  (DE 733, pgs. 7-8).  In response, Plaintiff cites to *Hynix Semiconductor, Inc. v. Rambus, Inc.*, No. C-00-20905 RMW, 2010 WL 890063 (N.D. Cal. Mar. 8, 2010) in support of its request.  (DE 760, pg. 9).  Plaintiff's reliance appears to be misplaced.

In *Hynix Semiconductor, Inc.*, 2010 WL 890063 at *12-13 (*citations omitted*), the court awarded the defendant costs for video synchronization in light of "the time saving efficiencies."  However, *Hynix* seems distinguishable from the case at bar.  Although in *Hynix*, the movant noted, in support of its request, that (1) the witnesses whose video depositions were played were non-English speakers, such that the appearance of the text on the screen during video playback assisted the jury in understanding the testimony; and, (2) the sound quality of the video was not good, 2010 WL 890063 at *12, here, Plaintiff makes no such arguments.  Rather, the only assertions made by Plaintiff relate to the necessity of presenting videotaped deposition testimony because of the fact that several witnesses successfully quashed their subpoenas or refused to honor them.  (DE 760, pgs. 4, 7-8).

Three courts have recently denied requests for the costs of video synchronization.  *See*

22

*Lear Siegler Srvcs. v. Ensil Int'l Corp.*, Civil Action No. SA-05-CV-679-XR, 2010 WL 2595185 at *2 (W.D. Tex. June 23, 2010) (denying request for costs of video synchronization because such costs were incurred for mere convenience of counsel); *St. Francis Med. Ctr. v. C.R. Bard, Inc.*, No. 1:07cv0031TCM, 2010 WL 1980328, *1 (E.D. Mo. May 18, 2010) (denying request for costs of video synchronization, finding that there was no authority for an award of such costs); *Amer. Guarantee & Liability Ins. Co.*, 2010 WL 1935998 at *4, *5, *7 (denying request for costs of video synchronization because such costs were incurred merely for convenience of counsel).

Although this Court was unable to find any cases from the Eleventh Circuit addressing a request for the costs of video synchronization, and notwithstanding the fact that such costs incurred herein may not have been incurred based on mere convenience, given the Eleventh Circuit's strict adherence to the language of section 1920, it appears likely that the Court would find that an award of such costs is not permitted by the section. *See EEOC*, 213 F.3d at 620 (noting that courts may only tax costs as authorized by statute) (*citing Crawford Fitting Co.*, 482 U.S. at 445); *Arcadian Fertilizer*, *L.P.*, 249 F.3d at 1296-1297 (*same*). Therefore, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's request for the costs of video synchronization, in an amount of two thousand, one hundred seventy-five dollars ($2,175.00). (DE 760, pg. 9).

In conclusion, with regard to Plaintiff's request for costs associated with deposition, hearing, and trial transcripts, this Court **RECOMMENDS** that the District Court award Plaintiff the costs associated with (a) videotaping of depositions ($11,175,00); (b) DVD copies of depositions ($850.00); (c) depositions which were videotaped by not used at trial ($4,775.00); (d) Robinson's deposition ($2,729.90); (e) court reporter attendance fees for depositions not

transcribed ($1,090.00); (f) hearing transcripts ($840.84); and, (f) expedited daily transcripts ($15,000.00).  (DEs 708, 713, 760).  However, this Court also **RECOMMENDS** that the District Court **DENY** Plaintiff's request for an award of costs associated with (a) scanning, disk copies, and mini scripts for depositions ($2,695.00); and, (b) video synchronization ($2,175.00). Therefore, this Court **RECOMMENDS** that the District Court award Plaintiff costs for deposition, hearing, and trial transcripts in the amount of fifty-one thousand, one hundred seventeen dollars and eighty-nine cents ($51,117.89).  (DE 708, 713, 760).

### 4. Witness Fees

Plaintiff next seeks to recover two thousand, three hundred ninety-six dollars and thirty-two cents ($2,396.32) in witness fees for Norm Brown ("Brown"), Tommy Ball ("Ball"), and Sam Walters ("Walters"), all of whom traveled from out of town locations to attend trial.  (DE 708, pg. 5; DE 713, pg. 1).  Plaintiff asserts that under section 1920(3), such costs may be taxed whether the witness actually testified or not, since their compensation was paid by Plaintiff to ensure that they remained ready and available to testify.  (DE 708, pg. 5) (*citations omitted*).

However, Defendant argues that (1) Plaintiff's request for two hundred fifty-six dollars ($256.00) to reimburse Brown's costs of mileage must be denied because Plaintiff's supporting documentation is inadequate; and, (2) Plaintiff's request for one thousand, six hundred nine dollars and sixty cents ($1,609.60) cents for the transportation of Ball and Walters from Atlanta to West Palm Beach must be denied because the amount appears excessive.  (DE 733, pg. 8).

A review of Plaintiff's receipt for Brown's mileage reimbursement, (DE 713, exh. B, Powell Cost number 0076), shows that the receipt lacks any detailed information as to the date of travel, distance traveled, or reason for travel.  As a result, it is difficult for this Court to assess the

24

reasonableness of Plaintiff's request.  Moreover, because Plaintiff has failed to address

Defendant's objection for the costs of Brown's mileage in his Reply, (DE 760, pg. 9), this Court

is unable to conclude that Plaintiff has met his burden with regard to the request for Brown's

mileage costs.  *See Ferguson*, 2007 WL 601921 at *3 (observing that the burden lies with the

losing party, unless knowledge of the requested cost is within the exclusive knowledge of the

requesting party).  Therefore, this Court **RECOMMENDS** that the District Court **DENY**

Plaintiff's request for an award of costs for Brown's mileage.  (DEs 708, 713).

Turning now to the costs for the travel of Ball and Walters, Plaintiff states that Air Tran

airfare cost six hundred forty-two dollars and eighty cents ($642.80) each.  (DE 760, pg. 9).

Plaintiff notes that the airfare was high because Plaintiff had to book their flights at the last

minute because Plaintiff was unable to predict with certainty the dates on which they would

testify.  (DE 760, pg. 9).  Plaintiff further notes that he incurred a hotel rate of one hundred

thirty-two dollars and sixty-eight cents ($132.68) for both Ball and Walters.  (DE 760, pg. 9).

Finally, Plaintiff notes that he was charged a one hundred fifty dollar ($150.00) flight change fee

because Walters was not able to finish his testimony and catch his original flight home.  (DE 760,

pg. 9).

In light of Plaintiff's explanation, and after a review of Plaintiff's receipts, (DE 713, exh.

B, Powell Costs numbered 0077-0081), this Court concludes that the amount requested for the

travel of Ball and Walters appears to be reasonable.  As such, this Court **RECOMMENDS** that

the District Court award Plaintiff costs for their travel.

In conclusion, as to Plaintiff's request for costs for witness fees, this Court

**RECOMMENDS** that the District Court award Plaintiff total costs in the amount of two

thousand, one hundred forty dollars and thirty two cents ($2,140.32), which represents the total

amount of witness fees sought by Plaintiff, minus the amount requested for Brown's mileage.

### 5.  Fees for Exemplification and Cost of Making Copies

Plaintiff's last request under section 1920 is for exemplification and copies, in the amount

of twenty-six thousand, two hundred fifty-nine dollars and twenty-nine cents ($26,259.29).  (DE

713, pg. 2).  In response, Defendant argues that Plaintiff's request for copy-service charges

should be reduced to one thousand, ninety four dollars and seventy-two cents ($1,094.72).  (DE

733, pg. 11) (*citing* DE 713, exh. B, Powell Costs numbered 0089, 0090, 0094, 0109, 0113, and

0117).  Defendant also contends that Plaintiff is not entitled to reimbursement for electronic,

non-paper copying costs, or for exemplification of trial exhibits and trial exemplars.  (DE 733,

pgs. 8-13).  Defendant raises several specific objections, which will be addressed below.  (DE

733, pgs. 8-13).

In reply, Plaintiff states, *inter alia*, that he scrupulously excluded in-house and general

copying expenses, and that he only seeks costs for reimbursable expenses.  (DE 760, pg. 10).

Plaintiff notes that he outsourced large copying jobs to facilitate discovery responses, or for

preparation of trial exhibits or other use at trial, all of which is recoverable.  (DE 760, pg. 10).

Finally, Plaintiff argues that Defendant's objections are "hypertechnical" and that Plaintiff does

not have the burden of specifically describing the use of each and every copy made.  (DE 760, pg.

12) (*citation omitted*).

Section 1920(4) currently permits taxation of "[f]ees for exemplification and the costs of

making copies of any materials where the copies are necessarily obtained for use in the case."

Similar to deposition costs, "[i]n evaluating copying costs, the court should consider whether the

prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *Id*. at 623. "Photocopies attributable to discovery, copies of pleadings, correspondence, documents tendered to the opposing party, copies of exhibits, and documents prepared for the Court's consideration are all recoverable." *Florida Keys Citizen Coalition, Inc. v. U.S. Army Corp. of Eng'rs*, 386 F. Supp. 2d 1266, 1270 (S.D. Fla. 2005) (*citing Desisto College, Inc.*, 718 F. Supp. at 913). However, in the Eleventh Circuit, the costs of physical exhibits such as models and charts may not be taxed as costs because there is no statutory authorization for such costs. *See Arcadian*, 249 F.3d at 1297 (noting that such costs may not be taxed even if prior authorization from court had been obtained) (*citing EEOC*, 213 F.3d at 623; *Johns-Mansville Corp. v. Cement Asbestos Prods. Co.*, 428 F.2d 1381 (5th Cir. 1970)). Likewise, copies obtained only for the convenience of counsel are not recoverable. *See Desisto College, Inc.*, 718 F. Supp. at 913 (*citing Allen v. Freeman*, 122 F.R.D. 589, 591 (S.D. Fla. 1988)).

The party moving for an award of copy costs has the burden of showing that the copies were necessarily obtained for use in the case. *See Zunde*, 2000 WL 1763843 at *6 (*citing Desisto College, Inc.*, 718 F. Supp. at 910, n.1). *See also Helms v. Wal-Mart Stores, Inc.*, 808 F. Supp. 1568, 1570 (N.D. Ga. 1992) (noting that the party seeking to recover copy costs "must come forward with evidence showing the nature of the documents copied, including how they were used or intended to be used in the case.") (*citing Corsair Asset Management, Inc. v. Moskovitz*, 142 F.R.D. 347, 353 (N.D. Ga. 1992). Where the movant has failed to itemize copies necessarily obtained for use in the case and those that were made for their own convenience, an award of costs may be denied. *See Desisto College, Inc*., 718 F. Supp. at 914 (declining to award costs for copies because the defendants failed to itemize copies necessarily obtained for use in the case

and those obtained for the convenience of counsel).

### Bates Labeling, Notebooks, GBC Bindings, and Custom Tabs

Turning now to Defendant's specific objections, Defendant first argues that no award of costs should be made for Bates labeling, the creation of notebooks, GBC bindings, and custom tabs, because such services were obtained for the convenience of counsel.  (DE 733, pgs. 8-9, n. 3 and 4) (*citing* DE 713, exh. B, Powell Costs numbered 0082, 0084, 0087, 0091, 0093, 0096, 0097, 0099, 0104, 0110, 0114, 0115, 0116, 0122, 0123, 0126, 0128, and 0129).

This Court agrees with Defendant that deductions for Bates labeling, notebooks, bindings, and tabs must be made because such costs are not permitted by section 1920, and appear to have been incurred for the convenience of counsel.  After reviewing Plaintiff's Amended Bill of Costs and Amended Itemization of Costs, (DE 713, exh. B, Powell Costs numbered 0082, 0084, 0087, 0091, 0093, 0096, 0097, 0099, 0104, 0110, 0114, 0115, 0116, 0122, 0123, 0126, 0128, and 0129), this Court **RECOMMENDS** that a total of three thousand, sixty five dollars and forty-seven cents ($3,065.47) should be deducted from Plaintiff's request.

*See Durden v. Citicorp Trust Bank, FSB*, No. 3:07-cv-974-J-34JRK, 2010 WL 2105921, *4 (M.D. Fla. April 26, 2010) (denying request for costs of binders, labeling, and bates numbering because such costs were incurred for convenience of counsel, and were not necessary) (*collecting cases*); *Van Voorhis v. Hillsborough Bd. of County Comm'rs*, No. 8:06-cv-1171-T-TBM, 2008 WL 2790244, *5 (M.D. Fla. July 18, 2008) (declining to award costs for binders and dividers from Staples because such costs were not compensable under section 1920); *J-Way Leasing, Ltd. v. American Bridge Co.*, No. 1:07 CV 3031, 2010 WL 816439, *4 (N.D. Ohio Mar. 4, 2010) (declining to award costs for Bates labeling because Bates

labeling is analogous to marking exhibits, which is not recoverable); *Baxter Int'l., Inc. v. McGaw, Inc.*, No. 95 C 2723, 1998 WL 102668, *3 (N.D. Ill. Mar. 3, 1998) (denying award of costs for Bates labeling based on lack of statutory authorization).

### Copy of Michael Gilliland Testimony

Defendant next argues that Plaintiff should be precluded from recovering one hundred three dollars and fifty cents ($103.50) for copying the deposition transcripts of Michael Gilliland in another case from a court file in Pennsylvania because such copying was merely for the convenience of counsel.  (DE 733, pg. 8-9, n. 2) (*citing* DE 713, exh. B, Powell Cost number 0101).

Plaintiff has not explained why it was necessary to copy the deposition of Gilliland.  (DE 760, pgs. 9-10).  Plaintiff's invoice detailing the cost of the copies is likewise silent.  (DE 713, exh. B, Powell Cost number 0101).  As a result, this Court is unable to conclude that Plaintiff has met his burden of showing that the copies were necessarily obtained for use in the case.  This Court therefore **RECOMMENDS** that the District Court **DENY** Plaintiff's request for such costs, and deduct one hundred three dollars and fifty cents ($103.50) from Plaintiff's request. (DEs 708, 713).

*See Zunde*, 2000 WL 1763843 at *6 (*citing Desisto College, Inc.*, 718 F. Supp at 910, n.1); *Helms*, 808 F. Supp at 1570 (noting that the party seeking to recover copy costs "must come forward with evidence showing the nature of the documents copied, including how they were used or intended to be used in the case.")

### Sufficiency of Plaintiff's Invoices

Defendant next contends that six thousand, five hundred ninety-five dollars ($6,595.00)

29

should be deducted from Plaintiff's request because Plaintiff's receipts lack information showing the nature of the documents copied and how they were used or intended to be used in the case. (DE 733, pgs. 9-10) (*citing* DE 713, exh. B, Powell Costs numbered 0118-0131).

After reviewing the Plaintiff's invoices numbered Powell Cost numbers 0118-0131, this Court notes that the only description for the services appearing on many invoices is either "blowback," "blowback/color," or "DVD."  (DE 713, exh. B, Powell Costs numbered 0118, 0119, 0120, 0121, 0125, 0127, 0130).  However, in his Reply, Plaintiff states that the term "blowback" indicates that the copy service printed copies from images that were contained on a CD, and further notes that documents were copied for document exchange during discovery, or for use at trial.  (DE 708, pg. 6; DE 760, pg. 10).

While it is true that Plaintiff has not specifically explained the need for, or use of, each particular copy, such specific explanations are not required.  *See Dillon v. Axxsys Int'l, Inc.*, No. 8:98-cv-2237-T-23TGW, 2006 WL 3841809, *7 (M.D. Fla. Dec. 19, 2006) (noting that although the burden of establishing entitlement to costs for copies lies with the prevailing party, which requires "evidence showing the nature of the documents copied and how they were used," the prevailing party need not make "an accounting for each photocopy because that would make it impossible economically to recover those expenses.") (*citing Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991)).  *See also Fogleman v. Aramco*, 920 F.2d 278, 286 (5th Cir. 1991) ("While we certainly do not expect a prevailing party to identify every xerox copy made for use in the course of legal proceedings, we do require some demonstration that reproduction costs necessarily result from that litigation."); *Gordon v. Castle Oldmobile and Honda, Inc.*, 157 F.R.D. 438, 441 (N.D. Ill. 1994) (noting that " . . . the prevailing

30

party need not describe the use of each copy so specifically that it becomes impossible economically to recover copy costs.") (*citing Northbrook Excess & Surplus Ins. Co.*, 924 F.2d at 643).

Having presided over the parties' numerous discovery motions, and recalling that a large volume of documents was exchanged between the parties, this Court accepts Plaintiff's explanation as to the need for the copies herein.  Therefore, this Court **RECOMMENDS** that the District Court find that Defendant's objection with regard to the sufficiency of Plaintiff's receipts lacks merit.

*See Durden*, 2010 WL 2105921 at *3 (finding that statement by counsel in responsive pleading sufficiently explained the need for the copies) (*quoting Northbrook Excess & Surplus Ins. Co.*, 924 F.2d at 643); *Mink v. Barth Elec. Co., Inc.*, No. 1:08-cv-561-SEB-JMS, 2010 WL 1948227, *1 (S.D. Ind. May 13, 2010) (finding that invoices and declaration of counsel were sufficient to establish that copies were made for purposes of the litigation) (*citing Northbrook Excess & Surplus Ins. Co.*, 924 F.2d at 643).

### Second Copies and Color Copies

Defendant next contends that second copies, and copies produced in color at a higher rate, may not be taxed against Defendant because they were obtained for the convenience of counsel, and because Plaintiff failed to explain the need for such copies or the higher rate.  (DE 733, pgs. 10-11) (*citing* DE 713, exh. B, Powell Cost number 0085).

After reviewing the invoices submitted by Plaintiff for exemplification and copies, this Court notes that many invoices charge for what appears to be duplicate and/or color copies.  (DE 713, exh. B, Powell Costs numbered 0084, 0085, 0086, 0093, 0095, 0099, 0102, 0104, 0105,

0110, 0116, 0119, 0120, 0121, 0122, 0123, 0126, 0127, 0128, 0129).  Plaintiff has failed to explain why second copies, or color copies were needed.  (DEs 708, 713, 760).  In addition, this Court notes that the rate charged for such color copies, one dollar ($1.00) per page, is not within the reasonable range of rates for the Southern District of Florida.  *See George*, 2008 WL 2571348 at*4 (noting that rates from $.10 to $.14 have been deemed reasonable, but that rates from $.15 to $.19 cents per page have been found unnecessarily high without factual support for the increased rate).  In light of Plaintiff's failure to show that second and color copies were necessary, this Court **RECOMMENDS** that the District Court decline to award Plaintiff such costs, which amount to three thousand, six hundred ninety-three dollars and eighty-seven cents ($3,693.87). (DEs 708, 713).

 *See Desisto College, Inc.*, 718 F. Supp at 913-914 (noting that copies obtained for the convenience of counsel are not recoverable, and that extra copies of filed papers, correspondence, and copies of cases are considered to be obtained only for the convenience of counsel; further denying request for costs of copies because counsel failed to itemize copies which were necessarily obtained for use in the case); *Zunde*, 2000 WL 1763843 at*6 (noting that the prevailing party has the burden of showing that the copies were necessarily obtained for use in the case); *Responsible Me, Inc.*, 2009 WL 528247 at *9 (declining to award costs for copies where prevailing party failed to provide evidence as to the nature of the documents copies and how they were used or intended to be used in the case) (*citations omitted*); *West v. Perry*, No. 2:07CV200, 2009 WL 2225579, *2 (E.D. Tex. July 23, 2009) (noting that charges for multiple copies are not recoverable).

 **Electronic Copying Costs**

Defendant also objects to Plaintiff's request for electronic, non-paper copying costs, including costs described as "scan," "OCR," "file folder capture," "image capture," and "electronic stamp." (DE 733, pgs. 11-12) (*citing* DE 713, Powell Costs numbered 0087, 0091, 0097, 0105, 0106, 0107, 0114, 0115, 0116). According to Defendant, electronic, non-paper copying is not taxable under section 1920. (DE 733, pg. 11) (*citing Jablonski v. St. Paul Fire and Marine Ins.* Co., No. 2:07-cv-00386, 2010 WL 1417063, *12 (M.D. Fla. April 7, 2010).

The case cited by Defendant, *Jablonski*, 2010 WL 1417063 at *12, relies on the Eleventh Circuit decision of *Arcadian Fertilizer, L.P.*, 249 F.3d 1293, for the proposition that only paper copies are taxable under section 1920. In so holding, the Eleventh Circuit concluded that "[u]ntil Congress sees fit to amend the language of § 1920 to include the innovative technologies currently used in the production of demonstrative exhibits, computer animations and videotape exhibits are not taxable because there is no statutory authority."

Section 1920 has since been amended to allow for taxation as costs "[f]ees for exemplification and the costs *of making copies of any materials where the copies are* necessarily obtained for use in the case." 28 U.S.C. § 1920(4) (2009) (*emphasis added*). *See Durden*, 2010 WL 2105921 at *1, n.7 (noting that in 2008, Congress amended section 1920(4) by striking the phrase "copies of papers," and inserting the phrase "the costs of making copies of any materials where the copies are . . .")

Nevertheless, several courts have declined to award costs for various forms of electronic copying. *See J-Way Leasing, Ltd.*, 2010 WL 816439 at *3-*4 (denying request for document imaging and converting documents into electronic form, where such conversions were done to reduce the time and costs associated with reviewing documents, because the court found that

such acts were similar to marking exhibits or bates labeling, which is not taxable in the Sixth

Circuit) (*citation omitted*); *Rundus v. City of Dallas*, No. 3-06-CV-1823-BD, 2009 WL 3614519,

*4 (N.D. Tex. Nov. 2, 2009) (denying request for CDs, DVDs, "electronic Bates labeling" or

"coding" as part of copying charges) (*citation omitted*); *Twee Jonge Gezellen (PTY) Ltd. v.*

*Owens-Illinois*, No. 3:04CV7349, 2008 WL 905996, *8 (N.D. Ohio Mar. 31, 2008) (noting that

"[c]osts associated with electronic scanning, computerized litigation support, rough disks and

bates labeling are not usually allowable as taxable costs" because such costs were incurred based

on convenience or preferred method of proceeding with the case).

     This Court concludes that Plaintiff should not be awarded costs associated with electronic

copying.  After reviewing the invoices cited by Defendant, this Court notes that such invoices

contain descriptions such as "scan," "OCR," "file folder capture," "image capture," "color

scanned into Email," "scanned documents," "color scanning," "electronic stamp," and "scan

color."  (DE 713, Powell Costs numbered 0087, 0091, 0097, 0105, 0106, 0107, 0114, 0115,

0116).  While it may be that section 1920(4) has been amended to permit taxation of electronic

copies, the fact remains that the language of the amended section still requires that the copies

necessarily be obtained for use in the case.  *See* 28 U.S.C. § 1920(4) (" . . . [f]ees for

exemplification and the costs of making copies of any materials where the copies are necessarily

obtained for use in the case.")  Plaintiff has failed to meet its burden of showing that any of the

electronic copies were necessarily obtained for use in the case, rather than the mere convenience

of counsel.  (DE 760, pgs. 9-10).  Therefore, this Court **RECOMMENDS** that the District Court

**DENY** Plaintiff's request for such costs, which amount to two thousand, five hundred seventy

five dollars and sixty-eight cents ($2,575.68).  (DE 713, exh. B, Powell Costs numbered 0087,

34

0091, 0097, 0105, 0106, 0107, 0114, 0115, 0116).

See *Desisto College, Inc.*, 718 F. Supp. at 913-914 (denying request for costs of copies because counsel failed to itemize copies which were necessarily obtained for use in the case); *Zunde*, 2000 WL 1763843 at*6 (noting that the prevailing party has the burden of showing that the copies were necessarily obtained for use in the case); *Twee Jonge Gezellen (PTY) Ltd.*, 2008 WL 905996 at *8 (denying costs for scanning and computerized litigation support because the costs were incurred for the mere convenience of counsel).

### Trial Exemplars and Trial Replica Exhibits

Defendant also objects to Plaintiff's request for costs relating to trial replica exhibits and other trial exemplars.  (DE 733, pg. 12-13) (*citing* DE 713, exh. B, Powell Costs numbered 103, 108, 112, 113, 131).  Specifically, Defendant contends that Plaintiff is not entitled to recover the costs of making and shipping of three saw guard replicas, and the costs of trial exemplars prepared by Bold Systems and Legal-eze, including a "Multimedia/PowerPoint presentation" and color exhibits mounted on foam.  (DE 733, pgs. 12-13).

A review of the invoices cited by Defendant shows that Plaintiff seeks to recover: (1) one thousand dollars ($1,000.00) it paid to Bold Systems for one (1) "CNC Machined Parts-Bold Star Safe Hands unit"; (2) three thousand five hundred dollars ($3,500.00) paid to Bold Systems for "CNC Machined Parts" for one (1) Bold Star version of the Safe Hands unit, and one (1) Industriaplex version of the Safe Hands unit; (3) one thousand seven hundred dollars ($1,700.00) paid to Bold Systems for "building trial exemplars;" (4) one hundred eighty seven dollars and three cents ($187.03) paid to Bold Systems for shipping a saw guard replica; and, (5) four thousand dollars ($4,000.00) paid to Legal-eze for a "MultiMedia PowerPoint presentation" and

35

the mounting of glossy laminate color exhibits on foam.  (DE 713, exh. B, Powell Costs numbered 0103, 0108, 0111, 0112, and 0131).

With regard to the costs of building the saw replicas, such costs are not taxable in the Eleventh Circuit.  *See Arcadian Fertilizer, L.P.*, 249 F.3d at 1296-1297 ( ". . . in this circuit, physical exhibits like models and charts simply may not be taxed as costs because there is no statutory authorization.") (*citation omitted*).  As a result, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's request for the machined parts and building of the replicas of the Safe Hands Unit.  (DE 708; DE 713, exh. B, Powell Costs numbered 0103, 0110, 0112).

With regard to the shipping of the Safe Hands replicas, because the costs of building the replicas is not taxable, it follows that the costs of shipping such replicas should not be taxable.  Nevertheless, even if this Court did conclude that Plaintiff should be entitled to an award of costs for the replicas, the shipping charges would not be recoverable.  *See Acumed LLC*, 2006 WL 3410152 at *6 (denying request for costs of shipping demonstrative exhibits because shipping charges are not permitted under section 1920) (*citation omitted*).  Therefore, this Court **RECOMMENDS** that the District Court deny Plaintiff's request for such costs.  (DE 708; DE 713, exh. B, Powell Cost number 0108).

With regard to Plaintiff's request for exhibits mounted on foam, while the costs of oversize documents and photographs are taxable as costs, the costs of mounting photographs and exhibits do not appear to be taxable.  *See Arcadian Fertilizer, L.P.*, 249 F.3d at 1297 (finding that costs for the oversize documents and the color photographs are taxable under § 1920(4), but finding that physical exhibits like charts and models are not taxable because there is no statutory authorization); *Curry v. Montgomery*, No. 07-22899-CIV, 2010 WL 883798,*6 (S.D. Fla. Mar. 9,

2010) (denying request for costs of enlarging and mounting photographs used as exhibits in trial because the prevailing party failed to show that mounting and oversizing was necessary within the meaning of section 1920(4)).  As a result, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's request for the costs of mounting exhibits on foam.  (DE 713, exh. B, Powell Cost number 0131).

Finally, with regard to Plaintiff's request for the costs of the "MultiMedia/PowerPoint presentation," such costs are not taxable.  *See Arcadian Fertilizer, L.P.,* 249 F.3d at 1297 (denying request for costs of computer animation because there is no statutory authority for such costs).  As such, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's request for the costs of the PowerPoint presentation.  (DE 713, exh. B, Powell Cost number 0131).

In conclusion, with regard to Plaintiff's request for costs of exemplification and copies, this Court notes that Plaintiff requested a total amount of twenty-six thousand, two hundred fifty-nine dollars and twenty-nine cents ($26,259.29).  (DE 713, pg. 2).  Deducting a total of nineteen thousand, eight hundred twenty-five dollars and fifty-five cents ($19, 825.55) for costs associated with Bates labeling and notebooks, the Gilliland deposition, color copies and second copies, electronic copying, and trial exemplars and replica exhibits, this Court **RECOMMENDS** that the District Court award Plaintiff a total of six thousand, four hundred thirty-three dollars and seventy-four cents ($6,433.74) in costs for exemplification and copies.  (DEs 708, 713).

## II.  Plaintiff's Request for Costs Under 25 U.S.C. § 285

Plaintiff next cites 35 U.S.C. § 285 in support of its request for an award of one hundred

thousand, one hundred sixty-six dollars and ninety-three cents ($100,166.93[6]) for expenses

necessarily incurred by Plaintiff during the litigation.  (DE 708, pgs. 1-2).  Plaintiff also seeks

expert witness fees in the amount of one hundred eight thousand, two hundred forty-three dollars

and sixty-nine cents ($108,243.69), lodging expenses in the amount of eleven thousand, three

hundred ninety-six dollars and fifty-one cents ($11,396.51), travel expenses in the amount of ten

thousand, three hundred one dollars and seven cents ($10,301.07), and Legal-Eze expenses in the

amount of seventy-eight thousand, four hundred sixty-nine dollars and thirty-five cents

($78,469.35).  (DE 708, pgs. 6-10; DE 713, pg. 2).  Plaintiff also argues that any costs which are

not taxable under section 1920 may be awarded under section 285 if the court finds that the

instant case is "exceptional."  (DE 708, pg. 6).

In response, Defendant contends that the instant case is not exceptional under section

285.  (DE 733, pg. 13).  In the alternative, Defendant argues that even if the case is determined to

be exceptional, (1) section 285 does not permit an award of expert fees; (2) Plaintiff's request for

travel and lodging expenses must be reduced by one thousand, nine hundred thirty-five dollars

and ninety-six cents ($1,935.96) because Plaintiff has failed to show that certain trips were

reasonable and necessary and related to the litigation; (3) Plaintiff is not permitted to recover the

costs paid to Legal-eze.  (DE 733, pgs. 13-16).

The section relied on by Plaintiff provides that "[t]he court in exceptional cases may

award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285 (2009).  "The purpose

of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing

---

[6] Plaintiff's Verified Motion contains no argument specifically addressing the amount of $100,166.93.  (DE 708, pgs. 1-2, 6-10).

party for its monetary outlays in the prosecution or defense of the suit." *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (*citation omitted*).  Where a party seeks an award under section 285, the movant bears the burden of showing, by clear and convincing evidence, that the case is exceptional and that the court should exercise its discretion to award attorney's fees and expenses.  *See Halliburton Co. v. Schlumberger Tech. Corp.*, 722 F. Supp. 1433, 1434 (S.D. Tex. 1989) (*citing Reactive Materials & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed. Cir. 1985)).

"[O]nly a limited universe of circumstances warrant a finding of exceptionality in a patent case: 'inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'" *Wedgetail, Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009) (*collecting cases*).  A finding of exceptionality must be based on a showing of clear and convincing evidence.  *See Wedgetail, Ltd.*, 576 F.3d at 1304.  *See also Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1387 (Fed. Cir. 2008) (noting that a finding of exceptionality may be based on a showing of clear and convincing evidence of "vexatious or unjustified litigation" or a "frivolous suit"), *cert. denied*, *Mylan Laboratories, Inc. v. Takeda Chemical Industries, Ltd.*, 130 S.Ct. 106 (2009); *cert. denied*, *Alphapharm Pty., Ltd. v. Takeda Chemical Industries, Ltd.*, 130 S.Ct. 106 (2009).

Although Defendant contends that the instant case is not exceptional because its infringement was not willful, the fact remains that the jury concluded that Plaintiff had shown by clear and convincing evidence that Defendant's infringement was willful.  (DE 685, pg. 5; DE 732, pgs. 2-4).  Moreover, notwithstanding Defendant's contention that the instant case is not exceptional because Defendant did not engage in any improper litigation tactics, the District

Court determined that the instant case is exceptional based on Defendant's litigation misconduct and vexatious and bad faith litigation.  (DE 732, pgs. 5-18; DE 768, pg. 22).  Having presided over the parties' numerous discovery disputes, this Court agrees that Defendant engaged in vexatious and bad faith litigation during the discovery phase of the case.  (DE 768, pg. 17) (noting that Defendant produced more than six thousand (6,000) pages of nonresponsive documents in response to Plaintiff's discovery request seeking information regarding injuries suffered by Home Depot employees when using radial arm saws).  In light of the foregoing, this Court **RECOMMENDS** that the District Court once again find that the instant case is exceptional for purposes of section 285.

### Expert Fees

Plaintiff seeks an award of costs for fees paid to his experts, Robert Pershes, J.D. ("Pershes"), and Jesse David, Ph.D. ("David").  (DE 708, pg. 1; DE 713, pg. 2).  Plaintiff contends that because section 285 has been interpreted to support an award of "all reasonable expenses incurred in prosecuting the entire action," an award under section 285 may include an award of reasonable expert witness fees, fees associated with non-attorneys such as paralegals and law clerks, and lodging expenses of counsel and witnesses.  (DE 708, pgs. 6-7) (*citations omitted*).

Although the Federal Circuit at one time held that an attorney's fee award made pursuant to section 285 may include expert fees beyond the statutory daily witness fee otherwise prescribed by 28 U.S.C. § 1821, *see Mathis v. Spears*, 857 F.2d 749, 759 (Fed. Cir. 1988), the Federal Circuit has retreated from such position.  *See Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 375-377, 379 (Fed. Cir. 1994) (holding that expert witness fees properly fall

40

under section 1920, and are subject to the section 1821(b) limitation; "[s]ection 285 does not include shifting of expert fees as part of that remedy.") (*citing West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991)).  *See also In re Electro-Mechanical Indus*, 359 Fed. App'x 160, 165-166 (Fed. Cir. 2009) (noting that the district court erred in awarding expert fees as part of the attorney's fee award made pursuant to section 285).  Therefore, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's request for all of its expert witness fees under section 285.

Nevertheless, the issue of whether Plaintiff may recover expert fees under the court's inherent authority remains, and will be discussed below.

### Lodging and Travel Expenses Under Section 285

As noted previously, Plaintiff seeks to recover lodging expenses in the amount of eleven thousand, three hundred ninety-six dollars and fifty-one cents ($11,396.51), and travel expenses in the amount of ten thousand, three hundred one dollars and seven cents ($10,301.07), for a combined total of twenty-one thousand, six hundred ninety-seven dollars and fifty-eight cents ($21,697.58).  (DE 708, pgs. 7-8).  Plaintiff contends that the lodging expenses are recoverable because they were incurred in connection with the taking of discovery depositions in remote states, including Iowa, North Carolina, and Georgia, as well as for housing counsel in West Palm Beach for the duration of the trial, because he lives more than fifty (50) miles away from the federal courthouse.  (DE 708, pg. 8).  Similarly, Plaintiff argues that the travel expenses are recoverable because counsel had to attend several depositions in remote locations, and had to travel to and from the federal courthouse for hearings, and at the beginning and end of each week of trial.  (DE 708, pgs. 8-9) (*citing Nikko Materials USA, Inc. v. R.E. Srvc. Co., Inc.*, No. C03-2549 SBA, 2006 WL 118438, *5 (N.D. Cal. Jan. 13, 2006)).

41

In response, Defendant first argues that Plaintiff has failed to show that Mr. Herman's trip to California in mid-January, 2010, for a "witness meeting" was reasonable and necessary. (DE 733, pg. 14) (*citing* DE 713, exh. B, Powell Costs numbered 0195-0199 and 0192-0196). Defendant contends that because Plaintiff never amended his complaint to include any of the information purportedly discovered as a result of Mr. Herman's meeting with the anonymous witness(es), and because Plaintiff never conducted any discovery regarding the alleged criminal activities, the expenses incurred in connection with Mr. Herman's California trip were neither necessary nor related to any claims or issues in the instant litigation. (DE 733, pg. 14). Defendant further argues that the Court should deduct other costs incurred by counsel totaling three hundred twenty-two dollars ($322.00) for "airline change/agent fees" in connection with the depositions of Allen Eden, Sam Walters, a Rule 30(b)(6) representative, and an Atlanta witness preparation meeting, because Plaintiff has failed to show that the expenses were reasonable and necessary to the litigation. (DE 733, pg. 14-15) (*citing* DE 713, exh. B, Powell Costs numbered 0152-0153, 0158-0162, 0214-0216, 0173-0174).

In Reply, Plaintiff asserts that the mid-January meeting in California was not in connection with an anonymous witness, as alleged by Defendant. (DE 760, pg. 4). Rather, Plaintiff notes that such meeting was with Jenna DiPaolo, a former Home Depot employee and potential trial witness designated on Plaintiff's witness list. (DE 760, pg. 4). Plaintiff further contends that although Plaintiff ultimately made a strategic decision that her testimony was not needed, the expenses associated with the DiPaolo meeting were nevertheless reasonably incurred because counsel's diligent investigation of the facts of the case required such a meeting. (DE 760, pg. 4). However, with regard to the "airline change/agent fees" counsel incurred in

connection with the with the depositions of Allen Eden, Sam Walters, a Rule 30(b)(6)

representative, and an Atlanta witness preparation meeting, Plaintiff stated only that he incurred a

one hundred fifty dollar flight change fee for Walters because he was unable to finish his trial

testimony on the date expected.  (DE 760, pg. 9).

      An award of attorney's fees under section 285 may "include those sums that the

prevailing party incurs in the preparation for and performance of legal services related to the

suit."  *Maxwell v. Angel-Etts of California, Inc.*, 53 Fed. App'x 561, 569 (Fed. Cir. 2003) (*citing*

*Central Soya Co.*, 723 F.2d at 1578).  Several courts have awarded travel expenses as part of an

attorney's fee award under section 285.  *See Nikko Materials USA, Inc.*, 2006 WL 118438 at *5

(noting that an award of all reasonable and necessary expenses under section 285 may include

costs not recoverable under section 1920, such as lodging expenses of counsel and witnesses);

*Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 264 F. Supp.2d 753, 781 (S.D. Ind.

2003) (awarding $20,000.00 for counsel travel expenses incurred in connection with taking

depositions, working with expert witnesses, and bringing witnesses to trial); *GT Dev. Corp. v.*

*Temco Metal Prods. Co.*, No. C04-0451Z, 2005 WL 2138546, *3 (W.D. Wash. Aug. 31, 2005)

(awarding travel expenses incurred in connection with depositions and motions).

      Application of the foregoing leads this Court to conclude that Plaintiff should be awarded

the costs incurred in connection with the California trip because such trip was related to the suit.

This Court also concludes that Defendant's objection with regard to the "airline change/agent

fees" is not persuasive in light of Plaintiff's explanation that the flight change fee was incurred

because Walters was unable to finish testifying on the date expected.  Therefore, this Court

**RECOMMENDS** that the District Court **GRANT** Plaintiff's request for the lodging and travel

expenses requested, in the amount of twenty-one thousand, six hundred ninety-seven dollars and fifty-eight cents ($21,697.58).  (DE 708).

*See Maxwell*, 53 Fed. App'x at 569 (noting that an award of attorney's fees under section 285 may "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit."); *Eli Lilly and Co.*, 264 F. Supp. 2d at 781 (S.D. Ind. 2003) (awarding $20,000.00 for counsel travel expenses incurred in connection with taking depositions, working with expert witnesses, and bringing witnesses to trial); *GT Dev. Corp.*, 2005 WL 2138546 at *3 (awarding costs for travel expenses incurred in connection with depositions and motions)

### Legal-eze Expenses Under Section 285

Plaintiff next seeks to recover seventy-eight thousand, four hundred sixty-nine dollars and thirty-five cents ($78,469.35) in costs paid to an entity known as Legal-eze for in-trial technical assistance with graphics and video from an individual named Mr. Keith Brett ("Brett").  (DE 708, pg. 9-10; DE 713, exh. B, Powell Costs numbered 0148-0208).  Plaintiff maintains that such expenses were necessary in light of the "document intensive nature of the case" and the fact that Plaintiff was required to present a majority of the witness' trial testimony via video because many witnesses either ignored Plaintiff's subpoenas, or successfully moved to quash them.  (DE 708, pg. 9).  Plaintiff also notes that because each video contained an average of three (3) to six (6) hours of deposition testimony, and in light of contemporaneous objections lodged during the video playback, technical assistance was required to edit and operate video playback during trial. (DE 708, pg. 9).  According to Plaintiff, he could not have quickly edited video playback to conform to the court's rulings without the assistance of Legal-eze.  (DE 708, pg. 9).  In short,

Plaintiff argues that because the costs were reasonably necessary to Plaintiff's prosecution of the case, such expenses may be awarded under section 285. (DE 708, pg. 9) (*citing Nikko Materials*, 2006 WL 118438 at *5).

However, Defendant contends that Plaintiff's request for Legal-eze expenses should be denied because (1) section 285 does not permit such an award; (2) Plaintiff has failed to show that the expenses incurred were reasonable; and, (3) the costs were incurred merely for the convenience of counsel. (DE 733, pg. 15). According to Defendant, Plaintiff could have chosen less expensive alternatives at trial, such as reading depositions into the record, rather than using Brett's services to enlarge trial exhibits on the screen in the courtroom, to edit and operate video playback of videotaped depositions, and to edit sustained colloquies from video when an objection was sustained. (DE 733, pg. 16). In the alternative, Defendant argues that should the Court be inclined to award the requested costs, the Court should (1) reduce Brett's hourly rate of two hundred twenty-five dollars ($225.00) to one hundred forty dollars ($140.00); (2) award costs for only four days of trial, February 4, 8, 8, and 18, 2010; and, (3) deny Plaintiff's request for costs for video clips[7] which were prepared by Brett but were not played at trial. (DE 733, pg. 16).

In Reply, Plaintiff maintains that such expenses may be awarded as part of an attorney's fee award under section 285, and that the fees paid were "reasonable monetary outlays in the prosecution and presentation of a complex patent infringement claim." (DE 760, pg. 5) (*citing Maxwell*, 53 Fed. App'x at 569).

---

[7] Defendant specifically points to the video depositions of Christopher Canoles, Conor Perry, Hernan Mujica, Robert Whetstine, Rodney Johnson, and William Barnette. (DE 733, pg. 16 n. 8).

As noted previously, "[t]he purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Central Soya Co.*, 723 F.2d at 1578. An award of attorney's fees under section 285 has been interpreted to "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Maxwell*, 53 Fed. App'x at 569 (*citing Central Soya Co.*, 723 F.2d at 1578). Fees compensable under section 285 include "all expenses that are not covered by the attorney's hourly rates, routinely paid by counsel and billed to the client, and that are not expenses incurred for the convenience of counsel." *Nikko Materials USA, Inc.*, 2006 WL 118438 at *5 (*citing Bennett v. Dept. of Navy*, 699 F.2d 1140, 1145 (Fed. Cir. 1983). Such fees may include expenses which are not compensable under section 1920, including fees associated with paralegals, law clerks, and secretaries. *See Nikko Materials USA, Inc.*, 2006 WL 118438 at *5 (*citing Mathis*, 857 F.2d at 757-759).

This Court concludes that the trial assistance of Legal-eze was necessary to the prosecution of the suit. As noted by Plaintiff, because many witnesses refused to honor their subpoenas or successfully moved to quash them, Plaintiff had no choice but to present witness testimony via video. And, because Plaintiff's trial team consisted of only one partner and one associate, and one other attorney who was retained only to consult on issues of patent law, (DE 760, pg. 9), it appears reasonable to conclude that Plaintiff's counsel would have needed the assistance of someone at trial to assist with video set up and playback to comply with various legal rulings made during the course of the trial. As such, under the circumstances of the instant case, it appears that the assistance of Legal-eze was not obtained for the mere convenience of counsel.

46

This Court was unable to find any case which discusses an award of expenses under section 285 for any kind of technical assistance at trial.  Likewise, neither Plaintiff nor Defendant provided the court with a case factually on point.  Nevertheless, if courts are permitted to award the expenses for paralegals, law clerks, and secretaries under section 285, *see Mathis*, 857 F.2d at 757-759, any one of whom could have been used to assist with video playback during trial, it seems logical to conclude that the trial assistance expenses paid to Legal-eze may be compensable under section 285 as well.

Having determined that Plaintiff should be awarded costs for the assistance of Legal-eze, this Court must next consider the amount of such costs to award.  Although Plaintiff claims an hourly rate of two hundred twenty-five dollars ($225.00) for Brett, Defendant claims that the rate of one hundred forty dollars ($140.00) would be more reasonable.  (DE 733, pg. 16).

This Court concludes that Legal-eze expenses should be compensated at the rate of one hundred forty dollars ($140.00).  Not only has Plaintiff failed to explain why the rate of two hundred twenty-five dollars ($225.00) is reasonable, but the rate of one hundred forty dollars ($140.00) per hour would appear to be more consistent with high paralegal rates for a small firm in this district.  *See Hansen v. Deercreek Plaza*,  420 F. Supp. 2d 1346, 1351, 1353 (S.D. Fla. 2006) (awarding paralegal fees at a rate of $90.00 per hour because such rate was within the range of prevailing paralegal rates within this District); *Eugene v. 3Don & Partner Estate Group, LLC*, No, 07-80439-Civ; 2009 WL 9960616, *6 (S.D. Fla. April 14, 2009) (rejecting request for "high paralegal rate of one hundred fifty dollars;" concluding that rate of ninety dollars was more reasonable in light of former attorney's disciplinary history).

A review of the record shows that Brett billed for a total number of two hundred seventy

47

two point five (272.5) hours.  (DE 713, exh, B, Powell Cost number 0150).  Therefore, based on this Court's calculation, which is reached by multiplying such total number of hours by the hourly rate of one hundred forty dollars ($140.00), this Court **RECOMMENDS** that the District Court award Plaintiff thirty eight thousand, one hundred fifty dollars ($38,150.00) in costs for Legal-eze expenses pursuant to section 285.

Although Defendant contends that Plaintiff should only be awarded costs for the trial days of February 4, 8, 9, and 18, 2010, Defendant does not provide any argument in support of such contention.  (DE 733, pg. 16).  As such, Defendant's objection is not well taken.

Defendant's contention that no expenses should be awarded for video clips which were not presented at trial is likewise not persuasive.  At pages 14-15 of the instant Report and Recommendation, this Court recommended that Plaintiff be awarded costs for video depositions which were not played at trial because Defendant failed to show that the depositions were not related to an issue in the case at the time they were taken.  Similarly, the mere fact that a video clip was not presented at trial does not lead to a conclusion that the expenses for preparing such video clips were not related to the litigation.  *See Central Soya Co., Inc.*, 723 F.2d at 1578 (interpreting attorney's fees under section 285 to include "those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit.") (*citations omitted*).

### Whether Costs Denied Under Section 1920 May be Awarded Under Section 1985

Plaintiff argues that if the Court finds that any costs he has requested are not recoverable under either sections 1920 or 285, then the Court should "exercise its inherent authority to invoke the full reach of Section 285 to tax the otherwise unrecoverable costs, as *all* costs being

requested herein were reasonable and necessary" to the litigation.  (DE 708, pg. 2).  This Court agrees in part.

At pages 22-23 of the instant Report and Recommendation, this Court concluded that Plaintiff should not be awarded the costs of video synchronization pursuant to section 1920 because the Eleventh Circuit would likely find that such costs are not permitted by the section. *See EEOC*, 213 F.3d at 620 (noting that courts may only tax costs as authorized by statute) (*citing Crawford Fitting Co.*, 482 U.S. at 445); *Arcadian Fertilizer*, *L.P.*, 249 F.3d at 1296-1297 (*same*).  Such recommendation is, at first blush, inconsistent with this Court's recommended award of Legal-eze expenses.

However, as previously discussed, an award under section 285 may include expenses which are not compensable under section 1920.  *See Nikko Materials USA, Inc.*, 2006 WL 118438 at *5 (*citing Mathis*, 857 F.2d at 757-759).  As discussed at pages 22-23 herein, it appears that video synchronization costs were not incurred for the mere convenience of counsel. Rather, because several witnesses had their subpoenas quashed, and in light of the fact that Plaintiff's trial team consisted of only a few individuals, thereby rendering the assistance of Legal-eze a necessity, this Court concludes that video synchronization was likewise necessary to the prosecution of the suit, and should therefore be compensable under section 285.  This Court therefore **RECOMMENDS** that the District Court **GRANT** Plaintiff's request for the costs for video synchronization under section 285, in an amount of two thousand, one hundred seventy-five dollars ($2,175.00).  (DE 760, pg. 9).

*See Central Soya Co., Inc.*, 723 F.2d at 1578 (interpreting attorney's fees under section 285 to include "those sums that the prevailing party incurs in the preparation for and performance

49

of legal services related to the suit.") (*citations omitted*).

However, this Court does not agree that all costs which have been recommended to be denied under section 1920 should be compensable under section 285. Specifically, with regard to Plaintiff's requests for the costs associated with (1) deposition-related services, including scanning, disk copies, mini-scripts, and "CD Deposition Litigation Packages;" (2) Norman Brown's mileage; (3) Bates labeling, notebooks, bindings, and tabs; (4) obtaining a copy of Gilliland's deposition; (5) duplicate and/or color copies; (6) electronic copying; and, (7) obtaining replicas of the Safe Hands unit, exhibits mounted on foam, and a "multimedia/PowerPoint presentation," this Court has previously determined that Plaintiff's requests for such costs should be denied because Plaintiff failed to demonstrate they were necessarily obtained for the case, and not for the mere convenience of counsel.[8] Because Plaintiff has made no further showing regarding the necessity of such costs, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's request for such costs under section 285.

*See Nikko Materials USA, Inc.*, 2006 WL 118438 at *5 (noting that fees compensable under section 285 include "all expenses that are not covered by the attorney's hourly rates, routinely paid by counsel and billed to the client, and that are not expenses incurred for the convenience of counsel.") (*citing Bennett v. Dept. of Navy*, 699 F.2d at 1145).

### III.  Plaintiff's Request for Costs pursuant to the Court's Inherent Authority

Plaintiff seeks an award of one hundred eight thousand, two hundred forty-three dollars and sixty-nine cents ($108,243.69) for services and testimony provided by Plaintiff's experts,

---

[8] *See* pages 17-18, 24-25, 28-29, 31-38, *infra*.

Pershes and David.  (DE 708, pgs. 1, 2; DE 713, pg. 1).  Plaintiff maintains that all expert fees

should be awarded because section 285 has been interpreted to permit the recovery of all

reasonable expenses incurred in prosecuting the entire action, and because Plaintiff's expert fees

were incurred to defend against Defendant's own litigation misconduct.  (DE 708, pgs. 6-8)

(*citing Nikko Materials*, 2006 WL 118438 at *5; *Central Soya*, 723 F.2d at 1578; *Marctec , LLC*

*v. Johnson & Johnson*, No. 07-cv-825-DRH, 2010 WL 680490, *11 (S.D. Ill. Feb 23, 2010)).  In

support of its request for expert fees, Plaintiff points to the following litigation misconduct by

Defendant: (1) Defendant asserted the defenses of inventorship, anticipation, and obviousness,

with no evidentiary support; (2) even after Defendant was forced to voluntarily withdraw the

inventorship claim, Defendant attempted to reassert such claim under a state law cause of action

for unfair trade practices and unjust enrichment; and, (3) even after the Court dismissed the state

law claims at summary judgment, Defendant again attempted to reassert such claims under an

"SBA" defense[9] at trial.  (DE 708, pg. 8; DE 701, pg. 7).  Plaintiff further states that both experts

were required herein; one to defend against Defendant's invalidity and non-infringement claims,

and the other to support Plaintiff's claim for damages.  (DE 708, pg. 8).  In short, Plaintiff claims

that although many of Defendant's defenses and counterclaims were either withdrawn or

disposed of at summary judgment, Plaintiff was forced to incur substantial expenses in

connection with his experts as a result of Defendant's litigation misconduct.  (DE 708, pg. 8).

      In response, Defendant first contends that "there is no evidence of bad faith" and no

---

[9] In Plaintiff's Motion to Treble the Damages, Plaintiff states that Defendant attempted to suggest that a Supplier Buying Agreement ("SBA") that it maintained with Plaintiff's company provided it with a good faith belief that it had ownership rights in Plaintiff's invention and patent.  (DE 701, pg. 7).  Plaintiff maintains that such defense was unsupported by any evidence in the record.  (DE 701, pgs. 7-12).

suggestion that Defendant has "engaged in fraudulent conduct or abused the judicial process to

such extent that the 'very temple of justice has been defiled.'" (DE 733, pg. 18).  Second,

Defendant contends that its assertions of the defenses of inventorship, anticipation, obviousness,

and the Supplier Buying Agreement were not frivolous and did not constitute litigation

misconduct.  (DE 733, pg. 18).  Third, Defendant contends that because the Federal Circuit held,

in *Amsted*, that the District Court erred in exercising its inherent authority, where the facts were

more egregious than herein, the Court should not exercise its inherent authority in the instant

case.  Fourth, Defendant contends that because the court previously concluded that Defendant

should not be sanctioned under Rule 11, and because the standard under section 285 is higher

than for Rule 11, expert fees cannot be awarded herein.  (DE 733, pgs. 18-19).  Finally,

Defendant disputes Plaintiff's assertion that Plaintiff was forced to retain his experts as a result

of Defendant's litigation misconduct.  (DE 733, pgs. 19-20).  According to Defendant, Plaintiff's

experts never addressed Defendant's claims of anticipation, inventorship, the SBA defense, or

the state law claims.  (DE 733, pg. 21).  Rather, Defendant notes that the only defense addressed

by Plaintiff's expert was the obviousness defense, which the court found did not violate Rule 11.

(DE 733, pg. 20).

Notwithstanding the fact that expert fee awards made under section 285 are limited by

sections 1920 and 1821, a court is nevertheless permitted to make an award of expert witness

fees based on the court's inherent authority, so long as the court finds more than mere

exceptionality under section 285.  *See Amsted Indus. Inc.*, 23 F.3d at 378-379.  Not every case

which qualifies as "exceptional" under section 285 will qualify for sanctions under the court's

inherent authority.  *See Amsted Indus. Inc.*, 23 F.3d at 378-379.  Rather, a court must consider

52

whether the circumstances extend "sufficiently beyond exceptional within the meaning of section 285 to justify an award of expert fees as a sanction under the court's inherent power." *Id*. To support an award of expert fees as part of a costs award under the court's inherent authority, the court must find either fraud or abuse of the judicial process. *See Id*. at 378 (*citing Chambers v. NASCO*, 501 U.S. 32 (1991); *Mathis*, 857 F. 2d at 759). *See also Takeda Chem. Indus., Ltd.*, 549 F.3d at 1391 (noting that inherent power may be invoked to impose sanctions in the form or reasonable expert fees in excess of what is provided for by statute, where the court finds fraud or abuse of the judicial process); *In re Electro-Mechanical Indus.*, 359 Fed. App'x at 167 ("[u]nless explicitly authorized by statute, however, to award fees in excess of those allowed under § 1821, a court must make a finding of fraud or abuse of the judicial process and invoke its inherent power to sanction.") (*citing Amsted*, 23 F.3d at 378) (*other citations omitted*). "Full expert witness fees have been awarded, without specific statutory authorization, upon a finding of bad faith." *Mathis*, 857 F.2d at 759 (*as quoted in Takeda Chem. Indus., Ltd.*, 549 F.3d at 1391).

This Court concludes that Plaintiff should be awarded its requested expert fees based on abuse of the judicial process. In the District Court's Omnibus Order and Memorandum Opinion dated May 28, 2010, the District Court concluded that the record contains numerous instances of Defendant's "litigation misconduct that unnecessarily prolonged this litigation and wasted judicial resources." (DE 768, pg. 17). As mentioned previously, the District Court recalled that in response to one of Plaintiff's discovery requests wherein Plaintiff sought information regarding injuries suffered by Home Depot employees when using radial arm saws, Defendant responded by producing three (3) bankers boxes containing more than six thousand (6,000) pages of irrelevant information relating to forklift accidents, none of which related to any issues in the

case.  (DE 768, pg. 17).[10]  In addition, the District Court noted that Defendant vigorously advanced its defense that Richard Marshall, a former employee of Defendant, co-invented the device with Plaintiff.  (DE 768, pg. 17).  However, when Plaintiff deposed Mr. Marshall, he stated that he was not even familiar with the device and was not asserting a claim of co-inventorship.  (DE 768, pg. 17).  Moreover, notwithstanding the fact that Defendant was unable to adduce any evidence in support of the defense, Defendant failed to withdraw it until after Plaintiff spent substantial time and resources investigating and defending against Defendant's claim in his Motion for Summary Judgment.  (DE 768, pg. 18).[11]

This Court agrees with the District Court's description of Defendant's discovery tactics. Having presided over the numerous discovery disputes which arose between the parties, and having entered a total of thirty-four (34) discovery-related orders herein,[12] this Court concludes that Defendant engaged in abuse of the judicial process.  Three more examples of Defendant's abusive discovery tactics support this Court's conclusion.

In an Order dated April 4, 2008, this Court concluded that Defendant's reference to previously produced documents in response to a discovery request failed to comply with the requirements of Rule 33(d).  (DE 116, pgs. 5-7).  In order to reach such conclusion, this Court

[10] The Court noted that a random sampling of some of the documents produced in response showed that one of the documents related to an incident where an employee fell off a forklift and coincidentally hit his head on the edge of the saw.  (DE 768, pg. 17).

[11] Even though Defendant withdrew the defense of co-inventorship on July 28, 2008, two weeks later, Defendant sought leave to amend its pleadings to reassert the same factual allegations under the guise of a claim for unjust enrichment and a claim under Florida's Deceptive and Unfair Trade Practices Act.  (DE 460, pgs. 18-20, ¶¶ 30-34, 42-43).  After Plaintiff filed a second Motion for Summary Judgment defending against Defendant's reasserted claims, the District Court, in an Order dated January 26, 2010, agreed that the claims were primarily based on the recycled inventorship claim, and were preempted by federal law.  (DE 627, pgs. 3-9).

[12] (DEs 80, 88, 109, 114, 115, 116, 138, 141, 152, 167, 200, 236, 246, 248, 249, 252, 253, 256, 262, 273, 274, 278, 286, 287, 290, 292, 301, 349, 364, 384, 442, 496, 587, 596).

reviewed the documents relied on by Defendant, (DE 95, exhs. A, B) (*filed under seal*), and observed that many of the documents contained numerous columns with only numbers, alphanumeric codes, or other unidentified terms, as opposed to any information which would show, directly, the information sought by Plaintiff.[13]  (DE 116, pgs. 5-7).  Based on Defendant's manner of production, this Court was forced to directly Order Defendant to "either (1) respond to the Interrogatory with a list of all Home Depot stores where the allegedly infringing unit was installed, or intended to be installed, as well as the approximate date of installation, the purchase price, and supplier of the unit; or (2) clearly identify which records previously produced, by specific record number, contain the information sought."  (DE 116, pg. 7).

In another Order entered by this Court on June 5, 2008, this Court concluded that Home Depot's mass production of 14, 589 pages in response to a discovery request propounded by Plaintiff did not comply with either the Local Rules or the Federal Rules of Civil Procedure because Defendant failed to  produce the documents in such a manner so as to allow Plaintiff to locate responsive documents with a reasonable effort.  (DE 236, pgs. 9-11).  In so concluding, this Court specifically noted that Defendant's act of producing "thousands of pages of documents, mixed with numerous other seemingly non-responsive documents, and accompanied by an incomplete index does not comply with the requirements of the Rules."  (DE 236, pg. 11).  As a result, this Court was required to Order Home Depot to "identify and categorize which documents are responsive to each and every Request for Production . . ."  (DE 236, pg. 11).  This Court further concluded that an index prepared and produced by Defendant failed to comport

---

[13]  Plaintiff sought to discover the specific store locations where Defendant installed, or intended to install, the infringing units, the date of installation, the purchase price, and the installer.  (DE 116, pg. 5).

with the Federal Rules because it failed to organize the 14,000 pages of documents in such a manner so as to allow Plaintiff to locate responsive documents with a reasonable effort.  (DE 236, pgs. 15-17).

Finally, in the same Order, this Court also concluded that Defendant's production of numerous electronic spreadsheets violated the Federal Rules because the spreadsheets were not produced in a reasonably usable format.  (DE 236, pgs. 11-14).  After reviewing a very large sample of the spreadsheets in chambers, (DE 94, exh. A; DE 236, pg. 12), this Court observed that consecutive pages of the spreadsheets were not related to one another.  (DE 236, pg. 14). Because of Defendant's manner of production, Plaintiff was forced to physically match up corresponding pages and lines of information, which would have undoubtedly been a tedious, inefficient, and time-consuming task considering the fact that the corresponding pages and lines were separated by 700 pages of completely unrelated information.  (DE 236, pg. 14).

Defendant's reliance on *Amsted* for the position that expert fees should not be awarded herein is misplaced.   In *Amsted*, 23 F.3d at 379, the Federal Circuit concluded that the court's inherent authority would not have supported an award of expert fees notwithstanding the fact that the defendant copied the patent at issue, lacked a good faith belief that the patent was invalid, denied infringement in the face of contradictory evidence, and burdened the court with numerous motions.  Such factors would seem to make the instant case analogous to *Amsted*.

However, in *Amsted*, the Federal Circuit further reasoned that no expert fees could have been awarded pursuant to the court's inherent authority because unlike *Chambers*, the defendant "engaged in no fraudulent conduct, filed no false pleadings, and used *no tactics of oppression and harassment*," and, unlike *Mathis*, the defendant "*committed no discovery abuse*, presented no

56

misleading evidence at trial, and engaged in *no conduct* amounting to abuse of the judicial process." *Id.* (*emphasis added*).  Based on this Court's and the District Court's recollections of Defendant's discovery practices, which have been detailed above, this Court concludes that Defendant repeatedly tried to "hide the ball" throughout the discovery phase of this case.  Such efforts amount to an abuse of the discovery process, and were undertaken in an attempt to oppress and harass Plaintiff.  Accordingly, *Amsted* would not appear to compel a denial of Plaintiff's request for expert fees under the court's inherent authority.

Defendant's contention that it cannot be ordered to pay Plaintiff's expert fees because the Court previously declined to impose Rule 11 sanctions on Defendant is likewise not persuasive. In a Report and Recommendation, this Court recommended that Plaintiff's motion be denied for two (2) reasons: (1) Plaintiff's motion failed to comply with the safe harbor provision, and Defendant withdrew the defense of co-inventorship three (3) days before Plaintiff filed his motion; and, (2) Plaintiff's assertions with regard to Defendant's defense of obviousness were a mere repeat of his motion for summary judgment.  (DE 478).  The District Court agreed, and denied Plaintiff's motion.  (DE 491).  However, the fact that Plaintiff's Rule 11 motion was denied is not dispositive of the issue at hand: namely, whether Defendant engaged in abuse of the judicial process such that expert fees should be awarded to Plaintiff under the inherent authority of the court.

In light of the foregoing, this Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's request for expert costs in the amount requested, one hundred eight thousand, two hundred forty-three dollars and sixty-nine cents ($108,243.69). (DE 708; DE 713, pg. 2).

*See Amsted Indus. Inc.*, 23 F.3d at 378-379; *Takeda Chem. Indus., Ltd.*, 549 F.3d at 1391;

*In re Electro-Mechanical Indus.*, 359 Fed. App'x at 167.

## SUMMARY OF RECOMMENDATION OF COSTS

I. Costs Under § 1920

    1.) Initial Filing Fee: $350.00

    2.)  Summons and Service: $5,222.00

    3.) Deposition, Hearing, and Trial Transcripts: $51,117.89

    4.) Witness Fees: $2,140.32

    5.)  Fees for Exemplification and Cost of Making Copies: $6,433.74

    Total Recommended Costs Under § 1920: $65,263.95

II.  Costs Under § 285:

    1.) Expert Fees: $0.00

    2.) Travel and Lodging: $21,697.58

    3.) Legal-eze: $38,150.00

    4. )Video Synchronization: $2,175.00

    Total Recommended Costs Under § 285: $62,022.58

III.  Costs Under the Court's Inherent Authority:

    1.) Expert Fees: $108,243.69

**TOTAL RECOMMENDED AWARD OF COSTS**: $235,530.22

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation

with the Honorable Daniel T. K. Hurley, United States District Court Judge for the Southern

District of Florida, within fourteen (14) days of being served with a copy of this Report and

Recommendation.  *See* 28 U.S.C. § 636(b)(1) (2009) (providing that "within fourteen days  after

being served with a copy, any party may serve and file written objections to such proposed

findings and recommendations as provided by rules of court.").  *See also* Fed. R. Civ. P. 72(b)

(2009) ("Within 14 days after being served with a copy of the recommended disposition, a party

may serve and file specific written objections to the proposed findings and recommendations.  A

party may respond to another party's objections within 14 days after being served with a copy.")

Failure to timely file objections shall bar the parties from attacking on appeal the factual findings

contained herein.  *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S.

958 (1988); *RTC v. Hallmark Builders, Inc*, 996 F.2d 1144, 1149 (11th Cir. 1993).

      **DONE AND SUBMITTED** in Chambers this 14 day of September, 2010, at West Palm

Beach in the Southern District of Florida.

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE


Copies to:
The Hon. Daniel T. K. Hurley, Senior United States District Court Judge for the Southern
District of Florida
Counsel of Record