```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2
                   Case No. 07-80435-CR-HURLEY/HOPKINS
3
   MICHAEL S. POWELL, et al.,      )
4                                  )
        PLAINTIFFS,                )
5                                  )
        -v-                        )
6                                  )
   THE HOME DEPOT, INC., et al.,)
7                                  )
        DEFENDANTS.                )    West Palm Beach, Florida
8                                  )    March 7, 2012
   _____)
9


10           TRANSCRIPT OF MOTION TO DISQUALIFY PROCEEDINGS

11             BEFORE THE HONORABLE JAMES M. HOPKINS

12               UNITED STATES MAGISTRATE JUDGE

13

14   Appearances:

15   FOR THE INTERVENORS         Jacob J. Givner, ESQ., and
                                 Randon E. Loeb, ESQ.
16                               Higer, Lichter & Givner, LLP
                                 18305 Biscayne Boulevard, Suite 402
17                               Aventura, FL 33160

18   FOR PLAINTIFF POWELL        Peter G. Herman, ESQ., and
                                 Alexander D. Brown, ESQ.
19                               Tripp Scott
                                 110 Southeast 6th Street
20                               15th Floor, P.O. Box 14245
                                 Fort Lauderdale, FL 33302
21
     Reporter                    Stephen W. Franklin, RMR, CRR, CPE
22   (561)514-3768               Official Court Reporter
                                 701 Clematis Street
23                               West Palm Beach, Florida  33401
                                 E-mail:  SFranklinUSDC@aol.com
24

25
```

```
 1          (Call to the order of the Court.)

 2               THE COURT:  Please be seated.

 3               Good afternoon.

 4               Calling Michael Powell versus Home Depot.  Counsel

 5     please announce your appearances.

 6               MR. GIVNER:  Certainly.  Jacob Givner and Randon

 7     Loeb, on behalf of the Intervenors Gregory Mayback and

 8     Catherine Hoffman, and Mayback & Hoffman.

 9               THE COURT:  Thank you.

10               MR. HERMAN:  Your Honor, Peter Herman and Alex Brown,

11     appearing on behalf of Michael Powell.

12               THE COURT:  Good afternoon.

13               MR. BROWN:  Hello, Your Honor.

14               THE COURT:  And we're here, of course, on the motion

15     to disqualify Tripp Scott.  And I've read the motion and the

16     response and the reply, so I don't think it's really necessary

17     to reargue what's in there, but somebody had called and wanted

18     to know if this was an evidentiary hearing and was advised

19     that you could present evidence if you so -- were so inclined.

20     So does anybody want to present any evidence?

21               MR. GIVNER:  Your Honor, it's -- this is Jacob

22     Givner.

23               May I?

24               THE COURT:  Certainly.  Either way.

25               MR. GIVNER:  It's our preliminary position, Your
```

1    Honor, that we have established a prima facie case that there

2    is a joint venture between Tripp Scott and the Mayback &

3    Hoffman case.  The undisputed evidence in the record that

4    already exists establishes that.  Namely, there is a fee

5    sharing agreement that has been made a part of the record.  I

6    believe it's even attached to the papers that were filed by

7    Tripp Scott.  In addition to that, there is the undisputed

8    fact that Mayback & Hoffman made an appearance in the case.

9    They were formally of counsel for the Plaintiff in the case,

10   making them responsible ultimately for how the case proceeded,

11   as well as co-counsel.  So those two factors, in our opinion,

12   by itself and in conjunction and under the case law of the

13   State Contracting case, which we cited in our papers,

14   establishes that that created a joint venture between

15   Mayback & Hoffman and Tripp Scott on the other hand to jointly

16   recommend Mr. Powell, as the Plaintiff in this action.

17          So that's our position, Your Honor.  We think that

18   that as a matter of law, the Court could take notice of that

19   and make that decision right now without there being any

20   evidence that needs to be presented.  We are prepared to put

21   on a prima facie case today to further establish the fact that

22   they were, in fact, joint ventures, and that they reached an

23   agreement to establish a joint venture agreement and to

24   proceed with the representation of the Plaintiff in this case.

25          So I guess it depends upon how Your Honor would like

```
 1   to proceed.  Like I said, I think we've made that case, but

 2   we're happy to put on evidence if you feel it's necessary.

 3            THE COURT:  Well, why don't I advise both parties

 4   what my thinking is on the conflict of interest issue and get

 5   your reaction to it and see how you want to proceed based upon

 6   my thoughts on it.  I find conflict of interest to be quite

 7   interesting.  I've lectured on it to the Florida Bar and

 8   written quite a few opinions on conflicts of interest.  So I'm

 9   fairly familiar with a lot of the conflict of interest

10   decisions.

11            The issue that I have in my mind in relation to it,

12   as I see it, it's undisputed that there was a fee sharing

13   agreement between M&H and Tripp Scott, and that does appear to

14   create a fiduciary relationship.  However, my analysis of the

15   fiduciary relationship situation -- I shouldn't say however.

16   My analysis of the fiduciary relationship situation -- and I

17   think that the Third DCA spoke considerably about the

18   fiduciary relationship that's recreated between clients and

19   attorneys in the Adorno case, where they found that Adorno had

20   breached his fiduciary duties to his clients in that case.

21   And it seems to me that the fiduciary relationship that you're

22   talking about in this case puts M&H in a similar situation to

23   being a client of Tripp Scott, so that Tripp Scott probably

24   owes fiduciary loyalties to M&H and to the Plaintiff at the

25   same time.
```

```
 1              Now, that having been said, it seems to me that in
 2    the instant dispute, that the Plaintiff does not have any
 3    conflicts with M&H, since, by M&H's own pleadings and the case
 4    cited -- one of the cases cited by M&H in State Contracting in
 5    its reply, it points to a quote from State Contracting about
 6    the client, that is the Plaintiff, in a fee dispute between
 7    lawyers, that the client doesn't really have an interest in
 8    it, and consequently, since -- and I think that's the
 9    situation here.  And so consequently, since the Plaintiff
10    doesn't have an interest in it, it doesn't -- similarly, it
11    doesn't have a conflict of interest.
12              And so I know that M&H in its papers pointed to
13    prejudice that it would suffer if Tripp Scott were allowed to
14    be continuing as counsel for the Plaintiff, but I don't think
15    that M&H pointed to any specific prejudice other than merely
16    making the allegation.  And I just don't see what the
17    prejudice would be to M&H, and I don't see what the prejudice
18    would be to the Plaintiff either, by the same token.
19              So maybe you can address my thoughts.  I guess M&H
20    might as well go first, because my thoughts are mostly, in
21    conclusion anyway, contrary to what M&H's position is.
22              MR. GIVNER:  Well, thank you, Judge.  I appreciate --
23    it's always good to know what the Court's thinking so that we
24    can focus the argument.  So I appreciate that.
25              I'd like to address the first point with respect to
```

1    whether or not the Plaintiff has an interest in this case.
2    There is this anomaly in this case that I have been struggling
3    with from the very start, which is that the Plaintiff,
4    Mr. Powell, is required to pay a 40 percent contingency fee.
5    And of that 40 percent, the joint venture agreement between
6    M&H and Tripp Scott was that it was going to be split on a
7    30/70 basis.  Okay.  So from a financial perspective, it
8    appears to us that the Plaintiff, Mr. Powell, doesn't have a
9    fight -- doesn't have a dog in this fight.  He doesn't have a
10   pecuniary interest one way or another in the sense that it
11   doesn't make a difference to him how the money gets split.  He
12   doesn't see any of that.  That 40 percent goes to the lawyers.
13   And whether 30 percent goes to Tripp Scott or 70 percent, it
14   doesn't matter to him.  So I understand that.

15        The problem with that, Your Honor, is that the
16   procedural posture of the case is that we have filed a
17   petition to adjudicate a charging lien, and the only party
18   that is opposing that charging lien is the Plaintiff.  So
19   notwithstanding the fact that in reality the Plaintiff
20   shouldn't care who wins or who doesn't win, Tripp Scott, on
21   behalf of the Plaintiff, is advancing the position that M&H is
22   not entitled to the fee, the 30 percent under the fee
23   agreement.  And they have raised claims such as a claim that
24   M&H was discharged for cause, that M&H engaged in some sort of
25   unclean hands and misrepresentation, and that M&H somehow

```
 1   violated certain Bar rules.

 2           Now, having said on the one hand that they don't seem

 3   to have a pecuniary interest, the Plaintiff, the Plaintiff,

 4   has asserted these defenses.  So if Tripp Scott is doing what

 5   it's supposed to do as counsel, they are advancing those

 6   causes on behalf of the Plaintiff.  So as long as the

 7   Plaintiff maintains those positions, the Plaintiff has an

 8   interest in this case.  Although it doesn't -- they shouldn't,

 9   in our opinion they shouldn't have an interest, they

10   apparently do, and the Plaintiff is resisting.

11           Now, with respect to the issue of prejudice, the

12   State Contract --

13           THE COURT:  Let's take that for a second.

14           MR. GIVNER:  Sure.

15           THE COURT:  I think what I have to assess, the

16   standard in most conflict of interest cases is whether or not

17   there's a realistic possibility of a conflict.

18           MR. GIVNER:  Right.

19           THE COURT:  And I'm wondering whether,

20   notwithstanding what you've said, and notwithstanding whatever

21   defenses that the Plaintiff is asserting, is there a realistic

22   possibility that the Plaintiff is going to be liable for more

23   than the 40 percent contingent fee?

24           MR. GIVNER:  The answer is yes, Your Honor.

25           THE COURT:  And how would that happen?
```

1           MR. GIVNER:  Because at this point our position, Your

2     Honor, is that there's been a breach of fiduciary duties, and

3     that the Plaintiff at this point is essentially becoming an

4     aider and abettor and/or a coconspirator in those actions.

5     And all this is being orchestrated by Tripp Scott.  Because at

6     the end of the day, Your Honor, we will -- M&H has a number of

7     potential claims.

8           THE COURT:  Well, how is that going to lead to --

9     even assuming that that theory holds true, how is that going

10    to resulted in them paying more than 40 percent?

11          MR. GIVNER:  Because if they are liable under a

12    coconspirator theory, or something of that nature, there is

13    the possibility of punitive damages.  And so that could lead

14    to them paying more than the 40 percent.  They could have real

15    damages.  Plus, Your Honor, if they are the loser in this

16    case, they are assessed costs in connection with this case.

17    And if this is a case that involves experts --

18          THE COURT:  So let me pursue that a little more.

19          MR. GIVNER:  Yes, yes.

20          THE COURT:  So your theory is is that they're an

21    aider and abettor in the breach of fiduciary duty, but they

22    don't owe the fiduciary duty, it's Tripp Scott that owes the

23    fiduciary duty.  So how are they going to be liable for

24    punitive damages?  You're saying that Tripp Scott is

25    orchestrating this breach of the fiduciary duty, and that the

1    Plaintiff is going along with this, and that the Plaintiff --

2    that there's a realistic possibility that the Plaintiff will

3    be held liable as an aider and abettor in a breach of a

4    fiduciary duty that's being orchestrated by Tripp Scott, and

5    that therefore there's a realistic possibility that the

6    Plaintiff could also be held liable for the punitive damages.

7              Is that it?

8         MR. GIVNER:  Well, that's on the punitive damages

9    side, but certainly the costs side is even more direct, Your

10   Honor.

11        THE COURT:  Well, the cost side, they're not going to

12   be liable for more than 40 percent, 40 percent plus costs.

13        MR. GIVNER:  No, I'm saying the costs -- right, the

14   costs of this litigation.  There's ongoing litigation.  So at

15   the end of this litigation, the prevailing party is entitled

16   to costs, and if we have to hire experts as part of this

17   litigation, that could be a substantial amount of money.  I

18   mean, tens of thousands of dollars, maybe even more.  And it's

19   the Plaintiff that is at risk for that.  So they end up paying

20   more than the 40 percent, they end up paying these costs.  So

21   that's the direct.  That's the direct one.

22             Let me talk to the issue of the punitive damages.

23   Your Honor, I think you said it at the very beginning when you

24   said, well, the Plaintiff doesn't really have an interest

25   because the 40 percent doesn't make a difference.

```
 1    Notwithstanding that, the Plaintiff is resisting and is
 2    participating in the process.
 3         THE COURT:  But that's from your own papers, you
 4    know.  That quote from State Contracting, that the Plaintiff
 5    doesn't have an interest, that's from your own papers.
 6         MR. GIVNER:  I understand, and we stand by that, and
 7    we stand by that in this particular sense, and the reason that
 8    quote was there was for this reason.  And that is that the
 9    Plaintiff shouldn't care whether we get 30 percent or
10    20 percent -- we, meaning M&H -- whether M&H gets 30 percent
11    or 40 percent or 20 percent of the attorneys' share, because
12    the attorneys' share is what it is.  It is that 40 percent,
13    30 percent slash 20 percent contingency fee that Tripp Scott
14    had initially negotiated.  So they don't have a reason to be
15    resisting.  The only reason that they're resisting is because
16    apparently Tripp Scott, which is, in our opinion, the real
17    party in interest and really should appear in its own right,
18    as opposed to in a representative capacity, Tripp Scott, in
19    representing the Plaintiff, is raising defenses that now
20    Mayback & Hoffman has to defend against.
21         So the Plaintiff has no reason to oppose Mayback &
22    Hoffman.  The Plaintiff should be carrying Mayback & Hoffman
23    on its shoulders after $25 million verdict that was procured
24    through their efforts, and in spite of all that, the Plaintiff
25    is trying to prevent Mayback & Hoffman from being paid the
```

 1    money that they want to.

 2          I would say in front of a jury that might be a pretty

 3    persuasive argument that this was malicious action on behalf

 4    of the Plaintiff in concert together with Tripp Scott, and it

 5    could potentially lead to punitive damages.  But we don't even

 6    have to get there, because just the issue of prevailing party

 7    costs I think is enough for the Court to be concerned here,

 8    because that by itself leads to payment of more than

 9    40 percent.

10          THE COURT:  Okay.  You want to get on to your other

11    points?

12          MR. GIVNER:  Yes, yes.

13          Okay.  Now, with respect to the second point I

14    believe, Your Honor, was the prejudice to Mayback & Hoffman.

15    The prejudice to Mayback & Hoffman, Your Honor, is -- arises

16    from the fact that this -- Tripp Scott, their joint venture

17    partner, which was required to have the highest and finest

18    duty of loyalty to them, not only is not advancing its

19    fiduciary duties but is now representing the Plaintiff in an

20    effort to completely defeat those rights and those

21    entitlements and those fiduciary duties.

22          So the situation is not very much different from the

23    Green case which was cited in our papers.  If you recall, Your

24    Honor, the Green case is a court of appeals case from New

25    York.  And in the Green case, it involved the old Finley

```
 1    Kumble firm.  Two partners from the old Finley Kumble firm

 2    left the firm and went to work for a firm that I believe the

 3    name of the firm was Eaton, E-a-t-o-n.  The Eaton firm then

 4    picked up a couple of former Finley Kumble clients to sue

 5    Finley Kumble on the basis of a malpractice claim, and the

 6    Court in that case found that the Eaton firm was disqualified

 7    from being able to represent those plaintiffs against Finley

 8    Kumble because of the fact that two partners at Eaton were

 9    former partners at Finley Kumble and owed them fiduciary

10    duties.

11          THE COURT:  Well, you know, I understand the case,

12    and I understand your point, and I suppose there's an argument

13    that it's analogous to this situation.  But my concern is is

14    that it's not the same type of situation, and I didn't see a

15    single case in your pleadings that point to this kind of a

16    situation.  So where's the support in the case law?  I mean,

17    you could make your arguments.  Were you able to find a single

18    case that's similar to this situation?

19          MR. GIVNER:  Your Honor, we have not.  And I'm not

20    sure why.  I would suspect that it doesn't really happen very

21    often, and that's probably why you don't have a reported

22    decision on this.  If there is a decision, it might be done at

23    the trial court level, and so you'll never see a decision

24    unless it gets to the appellate level.  I don't know.  I'm

25    speculating.
```

```
 1              THE COURT:  Well, there's a lot of trial court
 2    decisions that are published these days.  Or not published,
 3    you know, that are reported.
 4              MR. GIVNER:  Right.  That's true, but maybe this one
 5    wasn't.
 6              THE COURT:  You cited a number of them.  The other
 7    side has cited a number of them.
 8              MR. GIVNER:  Sure, sure.
 9              The answer is I don't know why.
10              THE COURT:  I'm not opposed to novel theories, but,
11    you know, obviously I'm a little more skeptical of novel
12    theories than I am of theories that have been vetted.
13              MR. GIVNER:  Well, Your Honor, there's a couple of
14    things, though, in terms of authorities that I think you need
15    to consider, because I think they speak directly to the point.
16    They're right on point, and they address the issue.  And the
17    first one is Rule 4-1.7 of the ethics rules.  And 4-1.7 -- let
18    me just pull it for a second.  It was of course the last thing
19    in the box.
20              Okay.  4-1.7 provides:  "A lawyer shall not represent
21    a client if," and then under subpart 2, "there is a
22    substantial risk," a substantial risk "that the representation
23    of one or more clients will be materially limited by the
24    lawyer's responsibilities to another client, a former client,
25    a third person, or by a personal interest by the lawyer."
```

```
 1              THE COURT:  I agree with you, and I obviously -- I

 2    mean, I agree with your theory and your point of 4-1.7.  The

 3    part that I'm having trouble with is the materially limited.

 4    That's the prejudice part.  And as I see it, the case hinges

 5    on that, on whether or not either the Plaintiff or M&H will

 6    suffer prejudice as a result of Tripp Scott continuing to

 7    represent the Plaintiff.

 8              MR. GIVNER:  Well, let's look at it from both

 9    perspectives.  Let me first look at it from the perspective of

10    the Plaintiff.  Okay?

11              From the perspective of the Plaintiff, the Plaintiff

12    is being advised by Tripp Scott in this case.  Okay?

13    Plaintiff has no interest one way or another.  Tripp Scott is

14    advising the Plaintiff to oppose the effort by Mayback &

15    Hoffman to get paid.  Okay?  And if that -- and at the same

16    time, Tripp Scott faces potential claims for breaches of

17    fiduciary duty by Mayback & Hoffman.

18              Now, isn't that advice that's being given to the

19    Plaintiff tainted by virtue of the fact that Tripp Scott has a

20    potential breach of fiduciary duty claim looming against it?

21    I would suspect that the answer to that is yes.  Remember, the

22    standard here is that there be a substantial risk of that.  So

23    I think it's, respectfully, from the Plaintiff's perspective,

24    I think there is a very substantial risk.

25              So now let's take a look at the Mayback & Hoffman
```

```
 1    side.  Okay?  From the Mayback & Hoffman side, Tripp Scott is
 2    representing the Plaintiff.  All right?  And Mayback & Hoffman
 3    is now engaged in a dispute which economically doesn't make
 4    any sense from the Plaintiff's perspective.  If the Plaintiff
 5    was acting without Tripp Scott being involved here, in all
 6    likelihood independent counsel would be telling the Plaintiff,
 7    you don't have a dispute, why oppose the charging lien?  And
 8    the Plaintiff wouldn't be doing that, and Mayback & Hoffman
 9    would be paid, and this case would be over.  And then if Tripp
10    Scott really, really wanted to oppose it, they could make --
11    they could intervene in this case as a party, which is how
12    they really should appear here.
13          So the fundamental reality is the prejudice to
14    Mayback & Hoffman is they're not getting paid, and they're not
15    getting paid because Tripp Scott has orchestrated this
16    opposition.  And if Tripp Scott was not counsel for the
17    Plaintiff, there's a high likelihood that in our opinion that
18    there wouldn't be opposition, because Mr. Powell was well
19    represented from the very get-go by Mayback & Hoffman and
20    achieved a phenomenal outstanding result.
21          THE COURT:  It seems to me that most of the prejudice
22    that you're arguing, if not all of the prejudice that you're
23    arguing, is prejudice to the Plaintiff.  You've argued that
24    they stand a chance of being held liable for punitive damages
25    as aiders and abettors.  That's obviously prejudice to the
```

 1    Plaintiff.  It strikes me that if that's true, for the moment,

 2    that that's something that's waivable by the Plaintiff.

 3           Do we have a representative of the Plaintiff here?

 4           MR. GIVNER:  Your Honor, may I address that legally?

 5           THE COURT:  Just a minute.

 6           MR. BROWN:  Yes.  I mean, both Mr. Herman and myself

 7    represent the Plaintiff here, and we --

 8           THE COURT:  Yeah, I know.

 9           MR. BROWN:  And we do have an informed consent.

10           THE COURT:  You also have a separate interest in

11    this, and --

12           MR. BROWN:  We do, and we're prepared to --

13           THE COURT:  You're not the client.

14           MR. BROWN:  We're prepared to address that.  If we

15    understood that this was a potential evidentiary hearing,

16    we've been communicating with Mr. Powell on a daily basis.  He

17    would have been more than happy to be here at this hearing,

18    but there's no qualms about us representing.  He's prepared an

19    informed consent waiver for us to be here if that was even an

20    issue under 4-1.7.  So that really shouldn't be an issue.

21           THE COURT:  When you say he's prepared, what has he

22    prepared?

23           MR. BROWN:  An informed consent for our continued

24    representation of him in this matter.  As 4-1.7(b) indicates,

25    that if the client can consent confirmed in writing clearly

1   stating that he doesn't object to our continued representation

2   once the alleged conflict is fully disclosed to him and he's

3   able to obtain --

4         THE COURT:  Well, that's the key, you know.  That's

5   the key.  And I appreciate you having the written informed

6   consent.  That's a substantial step along the way, but it's

7   not all of it.  The full disclosure is the question, and --

8         MR. BROWN:  And he's probably available by telephone

9   if we'd like to get him on the phone.

10         THE COURT:  Well, we might get to that.

11         Have you put what's been disclosed to him in that

12   written --

13         MR. BROWN:  Yeah, he's reviewed all the pleadings.

14         THE COURT:  You want to show it to me, or . . .

15         MR. BROWN:  Sure, absolutely.

16         May I approach?

17         THE COURT:  Well, reviewing the pleadings doesn't

18   have anything to do with knowing what the risks are.  The

19   risks have just been articulated by M&H.  Have those risks

20   been disclosed to the --

21         MR. BROWN:  They've taken every pleading to suggest

22   that we're coconspirators to some degree.  So, I mean, all

23   those -- they've all been discussed with Mr. Powell about the

24   claims that are being lodged against Tripp Scott.

25         THE COURT:  You have to speak into the microphone,

```
 1    I'm sorry.
 2            MR. BROWN:  I apologize.
 3            The claims have been addressed with Mr. Powell.
 4    Mr. Powell has reviewed the pleadings, and we've discussed
 5    with him the allegations that are being made by Mayback &
 6    Hoffman accusing Tripp Scott, Mr. Smiley and Mr. Powell
 7    himself to be these coconspirators, if you will, and aiders
 8    and abettors in this massive organized fraud being perpetrated
 9    on Mayback & Hoffman.  We've informed him of those allegations
10    because they've been made in pleadings to much of our
11    surprise.  But, yes, we have informed him of those.
12       (The Court peruses documents.)
13            THE COURT:  Have you seen this waiver?
14            MR. GIVNER:  I was just handed the waiver.
15            THE COURT:  Okay.
16            MR. GIVNER:  But I do have a few thoughts on this if
17    Your Honor --
18            THE COURT:  Okay.  Go ahead.
19            Is this a copy for me?
20            MR. BROWN:  Yes, Your Honor.
21            THE COURT:  All right.  I'll -- unless there's an
22    objection, I'll enter it into the record.
23            MR. BROWN:  No, Your Honor.
24            MR. GIVNER:  There's no objection, Your Honor.
25            THE COURT:  Should we call it Plaintiffs' 1?
```

```
 1                MR. GIVNER:  Sure.

 2                MR. BROWN:  Certainly.

 3                THE COURT:  Plaintiffs' 1 admitted.

 4           (Plaintiffs' Exhibit No. 1 entered into evidence.)

 5                THE COURT:  Okay.  Go ahead.

 6                MR. GIVNER:  Your Honor, the first thing that I

 7      notice from the informed consent, Mr. Powell was not

 8      independently advised by counsel.  Mr. Powell's --

 9                THE COURT:  Well, he apparently wasn't, or at least

10      there's no evidence that he was, but paragraph 5 obviously

11      says that he's been encouraged by his attorneys to seek the

12      advice of alternate counsel.

13                MR. GIVNER:  Correct.  But he didn't actually obtain

14      alternate counsel, and he didn't get independent advice.

15                THE COURT:  Are they supposed to force him to get

16      alternate counsel?  I mean . . .

17                MR. GIVNER:  No, no, no, Your Honor.  I'm making the

18      observation.

19                THE COURT:  And I appreciate it.  And I think that

20      that is important that he didn't, but I also think it's

21      important that they did include in the written informed

22      consent that he was encouraged to obtain alternate counsel.

23      I'm well aware that advance waivers are very tenuous

24      documents, but obviously it seems to me that in that respect,

25      Tripp Scott has gone to the fullest extent that they can as
```

```
 1    far as advising their client to get alternate counsel on this

 2    issue.

 3              MR. GIVNER:  Your Honor, I can't disagree with what

 4    the document says, so I'm just noting that independent counsel

 5    was not involved and gave advice.  We also don't have the

 6    Plaintiff here to testify as to what that consent or what that

 7    information consisted of, which I think is a material issue in

 8    determining whether or not this informed consent should be

 9    given effect.

10              In addition to that, Your Honor, two more points.

11    Number one, in the Finley Kumble case the client gave consent,

12    as well.  It didn't make a difference in the Finley Kumble

13    case.  Notwithstanding the informed consent of the client, the

14    Court still ruled that the Eaton case had to be disqualified.

15    And that's consistent, Your Honor, with the law in Florida,

16    because 4-1.7(a) says -- requires that the law -- that the

17    lawyer reasonably believe that the lawyer will be able to

18    provide competent and diligent representation to each affected

19    client.  That's assuming part B applies, Your Honor, right?

20    Part B is the part of 4-1.7(a) that allows for the waiver.

21    Okay?

22              I would submit, however, Your Honor, that 4-1.7(a)

23    requires that there be two consents.  Not only does this side

24    have to consent, but M&H has to consent, as well.

25              THE COURT:  Well, I would agree with you if there's
```

```
 1    prejudice to M&H.

 2           MR. GIVNER:  But there is, Your Honor.  There is

 3    prejudice to M&H, because let's start with the proposition

 4    that they were owed fiduciary duties, and those duties

 5    continue to this day.  That's what the State Contracting case

 6    says.  Until the final funds are disposed of under this joint

 7    venture, until --

 8           THE COURT:  But that's what creates the question of a

 9    conflict could exist, but you still have to show the

10    prejudice.  The relationship by itself does not show

11    prejudice.

12           MR. GIVNER:  The prejudice, Your Honor, is that my

13    client hasn't been paid.  My client --

14           THE COURT:  I think you've got to show some extra

15    prejudice beyond that.  That's the subject of the dispute, and

16    that doesn't mean that there is extra prejudice by virtue of

17    Tripp Scott representing the Plaintiff.  That prejudice is

18    still going to exist, regardless of whether or not Tripp Scott

19    continues to represent the Plaintiff.

20           MR. GIVNER:  Well, respectfully, I have to disagree

21    with that, Your Honor.  The prejudice that the Plaintiff will

22    oppose Mayback & Hoffman if Tripp Scott is not its counsel, we

23    don't know what the answer to that is, Your Honor.  We don't.

24    And given the fact that the Plaintiff has absolutely no

25    financial interest in opposing Mayback & Hoffman, and, in
```

1   fact, should be grateful for the very good legal services that

2   were provided, Mayback & Hoffman hasn't been paid.  They

3   haven't been paid.  Everybody else at this point in the case

4   has been paid.  The case is settled at this point.  Home Depot

5   has paid its judgment, the Plaintiff has received its monies,

6   and so has Tripp Scott.  And it's -- the only reason, the only

7   thing that stands between Mayback & Hoffman and payment is

8   Tripp Scott acting in breach of its fiduciary duties.

9           THE COURT:  But isn't -- isn't the Plaintiff more in

10   the position of a third-party witness to all of this, and

11   whatever defenses are being asserted by the Plaintiff in this

12   case, aren't they really defenses being asserted by Tripp

13   Scott?

14           MR. GIVNER:  And that's exactly our point.

15           THE COURT:  But my point is aren't those defenses

16   going to continue to be asserted by Tripp Scott in the

17   Intervenors' action, regardless of whether or not they

18   continue to represent the Plaintiff?

19           MR. GIVNER:  If they choose to intervene.  If they

20   choose to intervene, Your Honor.  That -- I can't -- I would

21   suspect that they would, but I don't know for a fact that they

22   would.  If Mr. --

23           THE COURT:  Well, what I'm trying to find out, you

24   know, the intellectual exercise I'm trying to go through is

25   whether or not there's a reasonable risk of extra prejudice by

```
 1   virtue of Tripp Scott continuing to represent the Plaintiff.

 2   And if all the defenses that the Plaintiff is asserting,

 3   regardless of whether or not Tripp Scott is representing them,

 4   if those defenses are still going to be asserted one way or

 5   another either by the Plaintiff or by Tripp Scott in the

 6   action, then it seems to me that there's not a substantial

 7   risk of prejudice to M&H.

 8           MR. GIVNER:  Well, Your Honor, the first issue, the

 9   threshold issue is whether the Plaintiff should be represented

10   by M&H.  That's all we're here about.  I can't -- by Tripp

11   Scott.  I can't tell you that Tripp Scott won't intervene.  I

12   would suspect that they would, but I can't tell you for sure

13   that they would intervene.  They may not intervene if the

14   Plaintiff, after being represented by independent counsel,

15   reaches the position that the Plaintiff doesn't want to oppose

16   the charging lien.  The Plaintiff is the only party that's

17   opposing the charging lien.  So right now we're --

18   unfortunately, we're sort of speculating whether Tripp Scott

19   would oppose -- would intervene and come in and --

20           THE COURT:  That's what we always do in conflict of

21   interest hearings.  I think the Eleventh Circuit put it that

22   you're looking through a glass darkly.

23           MR. GIVNER:  Right, right.

24           THE COURT:  So it's always speculation.  What I have

25   to figure out is whether or not there's a substantial risk of
```

 1    prejudice.

 2         MR. GIVNER:  Your Honor, I think that we certainly

 3    meet the threshold of a substantial risk of prejudice, because

 4    in the current procedural posture of this case, it is, in our

 5    opinion, highly unlikely that this plaintiff would have been

 6    opposing Mayback & Hoffman's efforts to simply get paid for

 7    three years of work.  This plaintiff was well represented and

 8    got a wonderful result.  So I -- I think it's highly unlikely

 9    that this plaintiff would be opposing it.  So if Tripp Scott

10    were not involved in the case and they had independent

11    counsel, it might~-- the case might very well end.  I've said

12    that before, and I apologize for repeating myself, but I

13    really -- I honestly believe that it's critical.

14         The Court uses the term "extra prejudice."  Mayback &

15    Hoffman entered into this joint venture in the first place in

16    order to get paid.  I mean, they do legal services, like every

17    other lawyer, in order to get paid, and they took a

18    substantial risk with their time and their own money in order

19    to get paid.  And now their joint venture partner is the one

20    that is standing in between -- is representing the Plaintiff

21    in trying to defeat their claims, asserting positions which we

22    don't even know if the Plaintiff fully supports, because

23    unfortunately there's a conflict of interest here, and we

24    believe that these are positions that the Plaintiff wouldn't

25    be taking but for Tripp Scott's position.  So we're now being

```
 1    forced to defend against allegations that the Plaintiff might

 2    otherwise not be making.

 3            THE COURT:  Shall I hear from Tripp Scott now?

 4            MR. GIVNER:  Sure.

 5            I'm sorry, there's one last thing I did want to say

 6    on this issue.  And, again, it relates to the Green case.

 7            In the Green case, one of the things the Court was

 8    concerned about was the fact that the two partners that had

 9    left the Finley Kumble case had, you know, acquired

10    information about the law firm, about Finley Kumble, because

11    of the fact that they were partners in Finley Kumble,

12    information that they otherwise wouldn't have acquired but for

13    the fact that they were partners.  Okay?  And because of --

14    that was one of the reasons, one of the motivations that

15    prevented the court of appeals from allowing that Eaton firm

16    to continue representing the Plaintiff in that case.

17            This situation has the same type of situation.

18            THE COURT:  Well, it's not the same type of

19    situation, because, you know, you're in opposition to Tripp

20    Scott regardless.  So they're going to be using whatever

21    information they've gathered regardless.

22            MR. GIVNER:  But not on behalf of the Plaintiff.

23            THE COURT:  Yeah, well, that's my question, you know,

24    is there extra prejudice there.  And so far I haven't seen and

25    extra prejudice.  I mean, you're still going to be in
```

```
 1    opposition to Tripp Scott.  Tripp Scott's not going away.

 2    Wouldn't you agree?

 3              MR. GIVNER:  I would -- if I had to guess, I'd say

 4    yes.

 5              THE COURT:  Right.

 6              So there's no substantial risk that Tripp Scott's not

 7    going to be using any extra inside information by representing

 8    the Plaintiff that they wouldn't be using in opposition to you

 9    anyway.

10              MR. GIVNER:  But none of this would be asserted by

11    the Plaintiff.

12              THE COURT:  I understand that.

13              MR. GIVNER:  It would be asserted by Tripp Scott.

14              THE COURT:  I understand what you're saying there.

15    I'm just pointing out that I don't see any extra prejudice

16    here.

17              MR. GIVNER:  Understood, Your Honor.  But frankly, I

18    think the record gives substantial -- sufficient prejudice

19    certainly to merit the disqualification simply on the basis

20    that we articulated.

21              I don't know if I'm missing anything.  Oh, hold on.

22    There's one additional comment.

23              Okay.  Your Honor, just a couple of thoughts.  And

24    it's a team effort over here.

25              THE COURT:  That's quite all right.
```

```
 1              MR. GIVNER:  With respect to the issue of who's going

 2    to be asserting it, I think there is -- and the defenses and

 3    the claims that would be asserted in the case, I think that in

 4    a legal profession there certainly is a stigma that is

 5    attached to allegations that are made by a former client, as

 6    opposed to a co-counsel in the case that could be viewed from

 7    the perspective of, you know, just trying to grab a bigger

 8    piece of the pie.  So the additional prejudice to Mayback &

 9    Hoffman is the stigma that's attached to now having to

10    litigate claims by its own former client that somehow it

11    doesn't perform competently in a case where it clearly

12    performed competently.  So I would say that.

13              Number two, I don't know right now that all of the

14    defenses that are being raised as on behalf of the client are

15    defenses that would be available to Tripp Scott were it to

16    intervene.  I think that in order for them to avoid the

17    prejudice, they have to prove to you that there are no

18    defenses that -- that they would have to prove --

19              THE COURT:  Well, I don't think that your assumption

20    of the standard is correct.  You're advocating that they have

21    to prove that none of those defenses would be available.

22    Rather, I think it's probably your burden to show that there's

23    a substantial risk of additional prejudice.

24              MR. GIVNER:  Well, Your Honor, let's start -- I mean,

25    if you feel that way, Your Honor, I think we could already
```

```
 1    address the defenses that they have.  I mean, they've raised

 2    three defenses.  Okay?  One of the defenses is that there's a

 3    violation of a Florida ethics opinion having to do with

 4    advertisements.  Okay?  What standing would Tripp Scott have

 5    with respect to that potential defense?  That's their second

 6    affirmative defense.  I don't understand what standing they

 7    would have.

 8            So just taking that defense, they may -- the client

 9    may have standing arguably to bring a claim that there's been

10    a violation of the advertising rules having to do with the

11    Florida Bar --

12            THE COURT:  Well, when you're talking about standing

13    of Tripp Scott, I mean, if they're fighting your fee request,

14    and it seems to me that they probably do stand in the shoes of

15    the Plaintiff vis-a-vis arguments that you were terminated for

16    cause for violations of various ethical obligations or other

17    obligations, and so I don't see why -- I don't see how Tripp

18    Scott would be precluded from making those arguments where I

19    guess it's undisputed that M&H was terminated, and why can't

20    Tripp Scott make the arguments that M&H was terminated for

21    cause?

22            MR. GIVNER:  What Tripp Scott would have to do is

23    argue that there was a breach of the joint venture agreement.

24            THE COURT:  And isn't that the same thing as what

25    they've -- what the Plaintiff's been arguing?
```

```
 1              MR. GIVNER:  No.  What the Plaintiff is arguing is

 2    that there was improper representation gives rise to an

 3    attorney being discharged by a client.  I know it's nuanced,

 4    Your Honor, but I think that those are very different

 5    situations.

 6              THE COURT:  Okay.

 7              MR. GIVNER:  Thank you, Your Honor.

 8              THE COURT:  Thank you.

 9              MR. BROWN:  Good afternoon, Your Honor.

10              THE COURT:  Good afternoon.

11              MR. BROWN:  Apologize for the coughing.  One thing my

12    kids like to share are their germs.  That's all they ever

13    share with me.

14              But anyhow, we continue to hear allegations against

15    not only myself, my partner, Peter Herman, Scott Smiley, our

16    law firm, Tripp Scott, and my client, Michael Powell, that

17    we're coconspirators, aiders and abettors, committing

18    fraudulent conduct.  I've written down these words in today's

19    hearing.  We've engaged in malicious and willful conduct

20    towards Mayback & Hoffman.  Frankly, I'm at a loss for words

21    how to respond to that.  One thing I can say is that

22    Mr. Givner and his co-counsel have never met Mr. Powell, and

23    they obviously have never come to meet, in a true sense, me or

24    my partner.

25              But be that as it may, I think this inquiry -- let me
```

1   step back for a moment.  I think Mayback & Hoffman, I think

2   the Court was attuned to it and really hitting on it is

3   Mayback & Hoffman wants to turn this issue into whether Tripp

4   Scott should be allowed in this case to represent one party or

5   another party, and therefore they should be disqualified from

6   representing one party, i.e. Mr. Powell himself, but they

7   should be able and they should actually, their words, Tripp

8   Scott should intervene in this case, presumably representing

9   itself.  So it's okay for Tripp Scott to represent itself

10   against Mayback & Hoffman, but according to Mayback & Hoffman

11   it's not okay for Tripp Scott to represent somebody else in

12   the same arguments, same litigation, same dispute against

13   Mayback & Hoffman.

14        That's not the inquiry that this court is called upon

15   to answer at this juncture.  What this court is called upon to

16   answer, and any court faced with a disqualification motion, is

17   should the opposing party, should the challenge attorney, in

18   this case my law firm, Tripp Scott, be allowed to represent

19   opposing interest of Mayback & Hoffman in any capacity,

20   whether it be for one defendant or one plaintiff or the other.

21   And the inquiry we believe starts and stops with the repeated

22   assertion that Tripp Scott is the real party in interest in

23   this case.  Let's just accept that as true for a moment.  If

24   they're the real party in interest in this case and we should

25   intervene on our own behalf and we should represent ourselves,

1    then there's no grounds for disqualification.

2    Disqualification, as this court repeatedly asked counsel to

3    answer, is where's the prejudice?  Where's prejudice that's

4    being suffered by Mayback & Hoffman?

5          And in every single case that is cited by either side

6    in the motions, in the response in opposition and the reply

7    dealing with a disqualification position where the attorney or

8    law firm was ultimately disqualified, dealt with the

9    disqualified attorney having received confidences that could

10   be used as a tactical, in a tactical manner, in a prejudicial

11   manner against the opposing side.  There's not one confidence

12   that has been alleged to date that Tripp Scott has received

13   that they could ostensibly use as a tactical advantage.  And I

14   submit to you that's because they were none.  I can't think of

15   one.  I can't fathom one.  We've actually been talking about

16   that.  Where is the confidence?  There are none.  And that's

17   what each and every case hinges on.

18         The case that counsel continues to cite and rely

19   quite heavily on, Green versus Green.  That case couldn't be

20   further from the facts of this case.  That case is where you

21   had two law partners, managing partners, at a firm where, as a

22   partner in the firm, there were partner meetings discussing

23   the potential liability of the firm to a potential malpractice

24   action that could be brought against the firm for acts that

25   were committed at the firm while those two partners were

 1   managing members at the firm.  Those members ultimately left

 2   the firm, joined another firm which was hired by the Plaintiff

 3   to sue the former firm.

 4          Now, clearly the confidences that were acquired in

 5   that instance were the confidences that the two former

 6   partners learned of and acquired while in those partnership

 7   meetings about, hey, we have a problem here, and we think that

 8   we might get sued for malpractice because of what we did, and

 9   here's what we did.  Well, obviously that would cause grave

10   prejudice to the law firm defending itself in any malpractice

11   action.  And not only that, but the case also turned on, in

12   the disqualification issue, was the fact that the two former

13   partners, who were now representing the Plaintiff in a

14   malpractice action against the law firm, might be held jointly

15   and severally liable.  So now they had competing interests.

16          THE COURT:  Well, I think that it's not that

17   productive to examine, you know, whether or not there were any

18   confidences that were shared, because I think the Eleventh

19   Circuit, in Freund versus Butterworth, assumes that

20   confidences are shared, and it seems to me that there is the

21   substantial risk that confidences were shared in this.

22          And, however, as I indicated to M&H and as you've

23   pointed out already, those confidences, if there were any, are

24   going to be obtained and available for use by Tripp Scott

25   regardless of whether or not they're representing the

 1   Plaintiff.  So, I mean, that's the key part in this.  I mean,

 2   I don't think it's really productive to analyze whether or not

 3   there were any confidences that could be used.  I mean, I

 4   suppose the other side could say that, yeah, just by the fact

 5   that, you know, these defenses are being asserted by the

 6   Plaintiff, there undoubtedly were confidences that were

 7   attendant to the events that led to those defenses.

 8          But in any event, I think that the more salient point

 9   is that those confidences are available regardless of whether

10   or not the -- Tripp Scott is representing the Plaintiff or

11   representing itself.

12          I mean, is Tripp Scott going away in this matter?

13          MR. BROWN:  No, no.

14          And, Your Honor, hit on the next argument I was just

15   about to tackle.  And it's a real brief one, in fact.  If

16   we're likening our relationship with Mayback & Hoffman to an

17   attorney/client-type relationship, well, when a client, i.e.

18   Mayback & Hoffman in this instance, sues the attorney, i.e.

19   Tripp Scott in this instance, there are no more confidences.

20   I mean, those confidences all come out in a malpractice action

21   where a client is suing an attorney.  So there's no more

22   confidences.

23          So that hits Your Honor's point on its head.  It's

24   exactly right.  There are no confidences, no prejudices.

25   Tripp Scott's not going away.  The arguments are going to

```
 1    continue to be the arguments.  Mr. Powell is not going away.

 2         We were not aware that opposing side had called to

 3    request information regarding whether this was going to be an

 4    evidentiary hearing.  If this was indeed set to be that or

 5    they wanted Mr. Powell here, they could have asked.  He would

 6    have been here in a second.

 7         THE COURT:  Well, I think in a conflict of interest

 8    hearing, you know, it's always advisable to have the client

 9    there to hear what the risks are associated with the

10    continuing representation, and, if necessary, to make any

11    waivers on the record.  That having been said, you know, I'll

12    allow you to adjourn the hearing and bring the client here for

13    another day to advise the client of the risks.

14         But why don't you continue on.

15         MR. BROWN:  Well, I don't want to belabor the point,

16    Your Honor, and I can easily go through all the arguments that

17    we had in our response papers, but --

18         THE COURT:  No, that's not necessary.

19         MR. BROWN:  I don't think the Court wants that,

20    and --

21         THE COURT:  No, I've read them.  I mean, I appreciate

22    it.

23         MR. BROWN:  Sure.

24         And I'm here to answer any questions the Court might

25    have.  But, I mean, we stand on the argument that the Court
```

 1    has quite frankly hit on, that there's no prejudice that has

 2    been demonstrated, and they carry the burden.  And what

 3    they're asking for, in all cases, the Eleventh Circuit and

 4    throughout the Eleventh Circuit, states is a very hard burden

 5    for them to meet, to the threshold to be able to disqualify

 6    counsel of one's choice.  And Mr. Powell has clearly chosen us

 7    and continues to choose us, and they have demonstrated no

 8    prejudice, and they have not come even close to satisfy the

 9    burden set forth by, you know, a plethora of Eleventh Circuit

10    case law.

11         So unless this court has any other questions directed

12    to our position, I'll stand on our papers and the argument.

13         THE COURT:  Yeah, I don't have any other questions.

14         MR. BROWN :  Thank you, Your Honor.

15         MR. GIVNER:  May I, Your Honor?

16         THE COURT:  You may.

17         MR. GIVNER:  May I approach the bench, Your Honor?

18         THE COURT:  You may.

19         MR. GIVNER:  Your Honor, I have a couple of points,

20    and I'll be brief, and it's going to go to your question about

21    the extra prejudice, because, Your Honor, I believe we can

22    satisfy it.  It will take me a couple steps to get there.

23         First step, though, Your Honor, is I handed to you

24    Defendants' Exhibits 1 and 2.  The first exhibit, Your Honor,

25    is the termination letter that came from Tripp Scott to

```
 1    Mayback & Hoffman on December 15th, 2010.

 2            THE COURT:  Are you offering these into evidence, 1

 3    and 2?

 4            MR. GIVNER:  I would like to, yes, Your Honor.

 5            THE COURT:  Any objection?

 6            MR. BROWN:  No objection.

 7            THE COURT:  Defense 1 and 2 admitted.

 8        (Defense Exhibit No. 1 and 2 entered into evidence.)

 9            MR. GIVNER:  Now, if you read Defendants' exhibit

10    number 1, Your Honor, you will see that the decision to

11    terminate Mayback & Hoffman was made by Peter Herman.  It was

12    not made by the clients, it was made by Tripp Scott.  As a

13    matter of fact, if you look at this e-mail, the client is not

14    even copied on the e-mail.  And to quote Mr. Herman's e-mail,

15    he writes:  "Unfortunately, you leave me with no choice but to

16    terminate Mayback & Hoffman's relationship with this firm and

17    Michael Powell."

18            Okay.  Now, exhibit number 2 which is now in

19    evidence, Defendants' exhibit number 2, this is the first

20    communication post-termination from the client, Mr. Michael

21    Powell, to Mayback & Hoffman.  And the first sentence says:

22    "Judy and I were very sorry to hear about your conflicts with

23    Peter Herman and Tripp Scott.  We are grieved to see such an

24    unfortunate deterioration in your relationships."

25            The Plaintiff is not writing, I'm firing you.  The
```

```
 1    Plaintiff is not saying you've committed all of these

 2    horrible, terrible things, and I'm firing you for cause.  I'm

 3    sorry -- instead, it's saying, I'm sorry your relationship

 4    with Peter Herman and Tripp Scott has deteriorated.

 5          Then it goes on to say, Your Honor, and I think this

 6    is also critical:  "When I hired Peter and Alex to represent

 7    my, I gave them full authority to hire any counsel and/or

 8    experts they felt were necessary and qualified to be on our

 9    team."  So if you read the rest of the letter, basically what

10    it says is they made the decision to let you go, and I accept

11    that decision by Peter Herman.

12          So that goes to the first point of whether or not

13    this plaintiff, who has no economic interest in the case, is

14    really going to assert any claims against my client.

15          Now, the Court has said, well, so what?  All right.

16    And that's a fair question.  So what?  If Tripp Scott comes

17    into the case, they assert the same claims, and we're all in

18    the same position, and it doesn't make any difference.  Well,

19    there is a so what, Your Honor, and here's where it comes

20    from.

21          Tripp Scott is taking the position that my client is

22    now limited to quantum meruit as its only form of recovery for

23    its three years of services, and it relies on the Rosenberg

24    case, which I don't have in my materials because I didn't

25    anticipate having this argument, but I'll be happy to fully
```

```
 1    brief this as soon as we leave.

 2           In the Rosenberg case, the Court made a decision

 3    based on Florida public policy that when an attorney is

 4    discharged under certain circumstances, he's limited to his

 5    quantum meruit recovery.  But that's because of public policy

 6    reasons having to do with the need for individuals to be able

 7    to represent the counsel of their choice.  So now what's

 8    happening is that Tripp Scott is trying to piggyback onto the

 9    Rosenberg holding.

10           Now, what if they couldn't do that?  What if they had

11    to intervene in this case and they had to assert the position

12    that my client breached their contractual duties?  In that

13    case, Your Honor, then the damages caused by that breach would

14    be the measure of what Tripp Scott would be able to recover as

15    opposed to taking the position we're only limited to quantum

16    meruit.  Remember, quantum meruit is unique to the

17    attorney/client relationship.  Quantum meruit is not a concept

18    that's available under general contract law.

19           And so what's happening here is that they want to be

20    able to take advantage of quantum meruit limitation that

21    doesn't exist under normal contract law.  And so, hence, Your

22    Honor, there is real prejudice, because we're being forced,

23    we're being forced to fight a battle that we wouldn't have to

24    fight and face a defense that we wouldn't have to fight.

25           THE COURT:  I still don't see that, though, because I
```

```
 1    don't think that it'd be any different if you were having this

 2    dispute directly with Tripp Scott, Tripp Scott, it seems to

 3    me, can still assert that you were properly discharged by the

 4    Plaintiff and Tripp Scott, and your damages are limited in

 5    that scenario.

 6              MR. GIVNER:  Your Honor, I'll be happy to brief this.

 7              THE COURT:  Okay.  That's fine.  We're going to

 8    continue this anyway.

 9              MR. GIVNER:  Very good.

10              THE COURT:  And I'm happy to see additional briefing

11    on it.

12              MR. GIVNER:  Okay.

13              THE COURT:  When would you want to continue this

14    'til?

15              MR. GIVNER:  I would ask for a week to do the

16    briefing, Your Honor.  And in terms of having the hearing,

17    we're~-- the only --

18              THE COURT:  Well, we might as well have the hearing

19    after the briefing.

20              MR. GIVNER:  I have a trip from March 14th to the

21    20th.  So anytime after the 20th I'd be happy to schedule a

22    hearing with the Court.

23              MR. HERMAN:  Judge, we -- we're interested obviously

24    to get this done in an expeditious matter and not make a,

25    quote, federal case out of it.  And we think that can be done.
```

```
 1          Mr. Powell -- you said you wanted to adjourn to have

 2     Mr. Powell back.  I don't have any problem with that at all.

 3     But in the interests of time, he's seen all the allegations.

 4     They've made these allegations in the pleadings.  The client

 5     is well aware of the ramifications of those, and we've

 6     counseled him on that.  So as far as that's concerned, I would

 7     like to just maybe forget about that hearing and just have him

 8     submit an affidavit to the Court expressing his understanding

 9     of what the ramifications are.

10          THE COURT:  Well, I don't think the Eleventh Circuit

11     encourages that kind of procedure for handling it.  The

12     Eleventh Circuit, in its decisions on conflicts of interest,

13     encourages the trial judge to engage in a colloquy with the

14     client to make sure that the waiver is knowing, intelligent

15     and voluntary.  And it's, I mean, for your own interests,

16     because you've got Bar interests here.  You know, for your own

17     interests I think that it's appropriate that he be here to

18     make sure the waiver is knowing and intelligent.

19          MR. HERMAN:  This hearing was to go to 3:30?  He

20     lives up this way, and I can have him drive over here.

21          THE COURT:  I'm willing to adjourn, but, I mean,

22     what's the difference in adjourning it and having it in half

23     an hour versus allowing the other side to brief it?

24          MR. HERMAN:  Maybe this will help, and I apologize

25     for interrupting.
```

```
 1              As part of the tactical approach of disqualifying

 2    Tripp Scott, the Mayback & Hoffman team has subpoenaed our

 3    firm, has subpoenaed Mr. Smiley's firm, has subpoenaed

 4    Mr. Powell, asking for voluminous, voluminous material, and

 5    they are pushing that with a motion to compel.  They want to

 6    set my deposition, my deposition, for a full day.  They want

 7    to set Mr. Brown's deposition for a full day.  They want to

 8    set Mr. Smiley's deposition for a full day.  They want to set

 9    one of my partner's depositions for a full day.  And if we

10    could hold that in abeyance until this hearing is heard, I'd

11    appreciate it, but I'd like to do that in an expedited manner,

12    because they keep pushing, pushing, pushing as part of the

13    tactical --

14              THE COURT:  Well, I hadn't planned on engaging in any

15    resolution of discovery disputes until this issue is settled,

16    because obviously it's important for us to resolve the

17    question of who's going to be representing the Plaintiff in

18    this until this is finished.

19              MR. HERMAN:  Okay.  Well, that's fair enough.

20              Again, I just -- we did file a -- recently filed

21    somewhat of a request, I guess, for a case management

22    conference, and I think this case begs for a case management

23    conference.  This is not a --

24              THE COURT:  Well, I don't see how I can hold any case

25    management conference or any --
```

```
 1              MR. HERMAN:  Until after this.  I get it.

 2              THE COURT:  Right.

 3              MR. HERMAN:  That's fine.

 4         But I just wanted to address that concern of ours of

 5    what's going on out there, and ultimately I guess we'll have

 6    that case management conference, if you desire, and maybe get

 7    a handle on what's really going on.

 8              THE COURT:  I mean, I'm happy to have it, but I just

 9    don't think it's productive to schedule it before we get

10    through this issue.

11              MR. HERMAN:  Thank you very much.

12              THE COURT:  So the -- so M&H wants a week to -- for

13    further briefing, and so they want to have the continuation of

14    this hearing after March 20th.

15              MR. BROWN:  Could I just ask Your Honor what the

16    briefing is?  I mean, is it narrow, or is it open to any issue

17    that's involved with the briefing going on so far?

18              THE COURT:  Well, as far as I'm concerned it's open

19    to whatever they want to brief on.

20              MR. BROWN:  All right.

21              THE COURT:  I mean, if they want to respond to my

22    thoughts today, you know, which they obviously do, you know, I

23    think I'm happy to give them time to respond and brief, you

24    know, what they've had to come up with on the fly here today.

25    So, you know, I'm happy to entertain that, and I'm happy to
```

 1   entertain a response from you all.  But it sounds like they're

 2   building in time for that all to happen anyway.  If they're

 3   going to respond in a week, and we won't have a hearing until

 4   after the 20th, there's time for you to respond to that, as

 5   well, and we could have another hearing and finish up any

 6   unresolved issues at that point, including making sure that

 7   Mr. Powell is giving a knowing and voluntary waiver and

 8   intelligent waiver.

 9          And along those lines, I'll tell you that the first

10   thing I do when we have the next hearing date is to engage in

11   a colloquy with Mr. Powell to make sure he understands that he

12   is entitled to get separate representation on this issue, this

13   issue alone.  Of course, he's entitled to get separate

14   representation throughout, but in particular on this issue.

15   And then I want to make sure at this hearing that he's made

16   aware of all the risks that we can think of in relationship to

17   his continuing to employ Tripp Scott as his attorney.  So, you

18   know, that's that part of the hearing.

19          And then any other unresolved issues attendant to

20   whatever M&H wants to pursue.  Obviously I'll entertain that,

21   as well.

22          MR. HERMAN:  Judge, if M&H decides to turn this into

23   a evidentiary hearing, with the exception of Mr. Powell's

24   testimony, could we be given some sort of notice of what

25   that's going to entail?  Because this time we were not.

```
 1            THE COURT:  Well --

 2            MR. HERMAN:  I'm not asking -- I just want to know if

 3    they're going to call witnesses.

 4            THE COURT:  I think that both sides have to work to

 5    foresee if there are any factual issues that are in dispute,

 6    and if there are no factual issues in dispute, then there will

 7    be no hearing.  I mean, it's both sides' jobs to be able to

 8    foresee any factual disputes and be ready to litigate at a

 9    hearing, at an evidentiary hearing, any factual disputes.

10            And factual disputes can take various forms.  I mean,

11    it can be whether or not there's a knowing, intelligent and

12    voluntary waiver.  That's a factual issue that calls for an

13    evidentiary hearing.  And so, you know, I don't know what your

14    side's position is going to be.  I certainly would encourage

15    you all to advise each other, and I'll actually require each

16    side to advise each other if they plan on introducing any

17    witnesses or exhibits at the hearing in advance so that the

18    other side's not going to be surprised.  But, you know, you're

19    still going to have to engage in the --

20            MR. HERMAN:  Understood.  I just wanted notice who

21    was going to be here and what we're kind of dealing with.  I'm

22    assuming we're going to gather some of that in whatever brief

23    they're going to file and whatever response we have.  But I

24    gotcha.  That's fine.

25            THE COURT:  So obviously I'll leave it to you all to
```

```
 1    let each other know if you're planning on introducing any

 2    testimony or exhibits beyond what we've discussed here

 3    already, which is, of course, Mr. Powell testifying.

 4              MR. HERMAN:  I was just trying to get timing right,

 5    because I'm also leaving the country on April 4th.  So I was

 6    hoping that we get the briefing done and maybe have a hearing

 7    between March 20th and April 4th.

 8              THE COURT:  Okay.

 9              MR. BROWN:  Only thing I would have to do is check

10    with the client.  He travels frequently.  His wife is a flight

11    attendant, and he travels with her a bunch.  But I just need

12    to confirm with him that he'll be in town.  So whatever days

13    that the Court might be available, I will check with him now.

14    I can just walk outside and just check with him.

15              THE COURT:  Okay.  Let's see if we can come up with a

16    date.

17              Do you have your schedule available also?

18              MR. GIVNER:  I do.  I have to turn to my phone.

19              THE COURT:  That's quite all right.

20              I'm in trial the week of March 20th.  I'm free the

21    26th of March.

22              MR. GIVNER:  That works for us, Your Honor.

23              MR. HERMAN:  The 26th does not work for me.

24              THE COURT:  How about the 29th?

25              MR. GIVNER:  It depends on what time you want to
```

```
 1    start, Your Honor.  If you want to do it first thing in the

 2    morning, that works, or if you want to do it after 2:00

 3    o'clock, that works for us, too.

 4              THE COURT:  How long are you free 'til?  When are you

 5    not free on the 29th?

 6              MR. GIVNER:  Well, I have a lunch -- a luncheon

 7    that's been planned for about -- I got to be at a lunch in

 8    Miami.  So it takes about an hour, hour and a half to get to

 9    Miami.

10              THE COURT:  At least an hour and a half.

11              MR. GIVNER:  Honestly, the 30th would be better if

12    that's available.

13              THE COURT:  The 30th isn't good for me.

14              MR. HERMAN:  I might be able to do the 26th in the

15    afternoon.  I'm just trying to figure out my phone here and

16    how to work it.

17              MR. GIVNER:  Twenty-sixth is perfect for us.

18              MR. SMILEY:  Your Honor, before you pick a date could

19    I say something?

20              MR. BROWN:  The 26th you want me to check?

21              MR. HERMAN:  Twenty-sixth in the afternoon.

22              THE COURT:  What's this?

23              MR. SMILEY:  My name's Scott smiley.  I'm a former

24    partner of Mayback & Hoffman.  We're currently not on speaking

25    terms, or at least they're not speaking to me, but I've been
```

 1   in close communications with Tripp Scott.

 2           And my interest is directly tied to Mayback &

 3   Hoffman, because I have a separate written agreement with them

 4   for the award that they receive.  So I'm in a very unique

 5   position in having my interests tied in one way and

 6   understanding what's going on at Tripp Scott, and I've been

 7   watching this whole matter unfold.

 8           And the parties, as you know, have written agreements

 9   in place.  I think the entire conflict here started because of

10   the wording of Mayback & Hoffman's motion to intervene and

11   some inflammatory statements about the client which could have

12   had damaging effects had we needed to go back had the

13   appellate level not been as successful as it was, and it

14   started both sides getting up in arms with the motion practice

15   back and forth.  In my sincere opinion, this is a case that

16   could easily, easily settle itself at mediation.  The parties

17   just will not speak to each other in a civil way.

18           THE COURT:  Well, we can't get to that point until we

19   finish this anyway.

20           MR. SMILEY:  All right.  I was just going to ask if

21   the Court would like to engage in some sort of mediation

22   today.

23           THE COURT:  If there is a serious conflicts issue, it

24   would be foolhardy for both sides to engage in mediation and

25   come up with a resolution that is subject to an Adorno motion

 1  occurring.  I mean, who wants to be -- I can't imagine that

 2  anybody here would want to be in that position.

 3       MR. SMILEY:  No, certainly not.

 4       Again, the client is available by phone.  So it's

 5  possible, if you're willing to engage that today with the few

 6  minutes we have remaining, I can't imagine anything that a

 7  taxpayer would rather not pay for than a courtroom taken up by

 8  attorneys arguing over millions of dollars.  I just think this

 9  could settle very, very quickly.

10       THE COURT:  Well, you know, there's always a tension

11  between speedy disposition of things and thoughtful,

12  well-considered disposition of things.  And, you know, where

13  both sides are agreeing to postpone this, and it needs to be

14  postponed anyway to get Mr. Powell here, it seems to me that

15  we can relatively easily accommodate the extra time to give it

16  all the thought that it's due.  So I'm not opposed to us, that

17  is, the Court's segment of this, coming back another day and

18  reading your pleadings and continuing it.  It's not going to

19  be a big deal.  We're just talking about a matter of a couple

20  weeks, and it's got to be postponed anyway.  So might as well

21  have everybody be well advised, have Mr. Powell be well

22  advised, and come up with the best decision we can come up.

23       You know, these are serious matters.  Anytime there's

24  a conflict of interest and bar rules being implicated, I mean,

25  everybody, especially Tripp Scott, would want to make sure

```
 1   that it is well considered before we proceed.  So, you know,

 2   I'd like to think I treat most matters seriously, but conflict

 3   of interest matters in particular I treat very seriously.

 4           MR. SMILEY:  Okay.  Thank you, Your Honor.

 5           THE COURT:  Thank you.

 6           MR. HERMAN:  All set?

 7           THE COURT:  Okay.  The 26th.

 8           MR. BROWN:  I'm just going to step outside real

 9   quick.

10           THE COURT:  You don't have to step outside.  You can

11   turn your phone on as far as I'm concerned.

12           What time on the 26th were you talking about?

13           MR. HERMAN:  Afternoon, I'm sorry.

14           THE COURT:  Okay.

15       (Brief pause in proceedings.)

16           MR. BROWN:  He can be available the 26th.

17           THE COURT:  What time do you want to do it the 26th?

18           MR. HERMAN:  1:30?

19           MR. GIVNER:  1:30's fine, Your Honor.

20           THE COURT:  Okay.  1:30 on the 26th.

21           MR. GIVNER:  My only concern, Your Honor, is I want

22   to have -- in case it does become an evidentiary hearing, and

23   that obviously will be depending in part upon what we can

24   agree to, I want to make sure we have as much of the afternoon

25   as possible.
```

```
 1              THE COURT:  Okay.  That's fine.  1:30.  Do you want
 2   to do it at 1:00?
 3              MR. GIVNER:  I was going to suggest 1:00 o'clock so
 4   that way we could --
 5              THE COURT:  1:00 o'clock?
 6              MR. BROWN:  That's fine.
 7              THE COURT:  Okay.  1:00 o'clock.
 8              MR. GIVNER:  Perfect.  Thank you.
 9              THE COURT:  Okay.
10       (Proceedings concluded.)
11                         *  *  *  *  *
12                         CERTIFICATE
13       I, Stephen W. Franklin, Registered Merit Reporter, and
14   Certified Realtime Reporter, certify that the foregoing is a
15   correct transcript from the record of proceedings in the
16   above-entitled matter.
17       Dated this 22nd day of MARCH, 2012.
18
19       /s/Stephen W. Franklin
         _____
20       Stephen W. Franklin, RMR, CRR
21
22
23
24
25
```

**$**

$25 [1]  10/23
$25 million [1]  10/23

**'**

'til [2]  39/14 46/4

**-**

-v [1]  1/5

**/**

/s/Stephen [1]  50/19

**0**

07-80435-CR-HURLEY/HOPKINS [1]  1/2

**1**

1.7 [9]  13/17 13/17 13/20 14/2 16/20 16/24
 20/16 20/20 20/22
110 [1]  1/19
14245 [1]  1/20
14th [1]  39/20
15th [2]  1/20 36/1
18305 [1]  1/16
1:00 [1]  50/2
1:00 o'clock [3]  50/3 50/5 50/7
1:30 [3]  49/18 49/20 50/1
1:30's [1]  49/19

**2**

20 percent [3]  10/10 10/11 10/13
2010 [1]  36/1
2012 [2]  1/8 50/17
20th [6]  39/21 39/21 42/14 43/4 45/7 45/20
22nd [1]  50/17
26th [9]  45/21 45/23 46/14 46/20 49/7 49/12
 49/16 49/17 49/20
29th [2]  45/24 46/5
2:00 [1]  46/2

**3**

30 percent [5]  6/13 6/22 10/9 10/10 10/13
30/70 [1]  6/7
30th [2]  46/11 46/13
33160 [1]  1/17
33302 [1]  1/20
33401 [1]  1/23
3768 [1]  1/22
3:30 [1]  40/19

**4**

4-1.7 [9]  13/17 13/17 13/20 14/2 16/20 16/24
 20/16 20/20 20/22
40 percent [13]  6/4 6/5 6/12 7/23 8/10 8/14
 9/12 9/12 9/20 9/25 10/11 10/12 11/9
402 [1]  1/16
4th [2]  45/5 45/7

**5**

514-3768 [1]  1/22
561 [1]  1/22

**6**

6th [1]  1/19

**7**

70 [1]  6/7
70 percent [1]  6/13
701 [1]  1/22

**A**

abettor [3]  8/4 8/21 9/3
abettors [3]  15/25 18/8 29/17
abeyance [1]  41/10
able [11]  12/7 12/17 17/3 20/17 30/7 35/5
 38/6 38/14 38/20 44/7 46/14
above [1]  50/16
above-entitled [1]  50/16
absolutely [2]  17/15 21/24
accept [2]  30/23 37/10
accommodate [1]  48/15
according [1]  30/10
accusing [1]  18/6
achieved [1]  15/20
acquired [4]  25/9 25/12 32/4 32/6
acting [2]  15/5 22/8
action [8]  3/16 11/3 22/17 23/6 31/24 32/11
 32/14 33/20
actions [1]  8/4
acts [1]  31/19
actually [4]  19/13 30/7 31/15 44/15
addition [2]  3/7 20/10
additional [4]  26/22 27/8 27/23 39/10
address [7]  5/19 5/25 13/16 16/4 16/14 28/1
 42/4
addressed [1]  18/3
adjourn [3]  34/12 40/1 40/21
adjourning [1]  40/22
adjudicate [1]  6/17
admitted [2]  19/3 36/7
Adorno [3]  4/19 4/19 47/25
advance [2]  19/23 44/17
advancing [3]  6/21 7/5 11/18
advantage [2]  31/13 38/20
advertisements [1]  28/4
advertising [1]  28/10
advice [4]  14/18 19/12 19/14 20/5
advisable [1]  34/8
advise [4]  4/3 34/13 44/15 44/16
advised [5]  2/18 14/12 19/8 48/21 48/22
advising [2]  14/14 20/1
advocating [1]  27/20
affected [1]  20/18
affidavit [1]  40/8
affirmative [1]  28/6
after [8]  10/23 23/14 39/19 39/21 42/1 42/14
 43/4 46/2
afternoon [8]  2/3 2/12 29/9 29/10 46/15
 46/21 49/13 49/24
again [3]  25/6 41/20 48/4
against [12]  10/20 12/7 14/20 17/24 25/1
 29/14 30/10 30/12 31/11 31/24 32/14 37/14
agree [5]  14/1 14/2 20/25 26/2 49/24
agreeing [1]  48/13
agreement [8]  3/5 3/23 3/23 4/13 6/5 6/23
 28/23 47/3
agreements [1]  47/8
ahead [2]  18/18 19/5
aider [3]  8/4 8/21 9/3
aiders [3]  15/25 18/7 29/17
al [2]  1/3 1/6
Alex [2]  2/10 37/6
Alexander [1]  1/18
allegation [1]  5/16
allegations [7]  18/5 18/9 25/1 27/5 29/14
 40/3 40/4
alleged [2]  17/2 31/12
allow [1]  34/12
allowed [3]  5/13 30/4 30/18

allowing [2]  25/15 40/23
allows [1]  20/20
alone [1]  43/13
along [3]  9/1 17/6 43/9
already [4]  3/4 27/25 32/23 45/3
also [8]  9/6 16/10 19/20 20/5 32/11 37/6 45/5
 45/17
alternate [5]  19/12 19/14 19/16 19/22 20/1
Although [1]  7/8
always [5]  5/23 23/20 23/24 34/8 48/10
am [1]  13/12
amount [1]  9/17
analogous [1]  12/13
analysis [2]  4/14 4/16
analyze [1]  33/2
and/or [2]  8/4 37/7
announce [1]  2/5
anomaly [1]  6/2
another [9]  6/10 13/24 14/13 23/5 30/5 32/2
 34/13 43/5 48/17
answer [8]  7/24 13/9 14/21 21/23 30/15
 30/16 31/3 34/24
anticipate [1]  37/25
any [36]
anybody [2]  2/20 48/2
anyhow [1]  29/14
anything [3]  17/18 26/21 48/6
anytime [2]  39/21 48/23
anyway [7]  5/21 26/9 39/8 43/2 47/19 48/14
 48/20
aol.com [1]  1/23
apologize [4]  18/2 24/12 29/11 40/24
apparently [3]  7/10 10/16 19/9
appeals [2]  11/24 25/15
appear [3]  4/13 10/17 15/12
appearance [1]  3/8
appearances [2]  1/14 2/5
appearing [1]  2/11
appears [1]  6/8
appellate [2]  12/24 47/13
applies [1]  20/19
appreciate [6]  5/22 5/24 17/5 19/19 34/21
 41/11
approach [3]  17/16 35/17 41/1
appropriate [1]  40/17
April [2]  45/5 45/7
April 4th [2]  45/5 45/7
aren't [2]  22/12 22/15
arguably [1]  28/9
argue [1]  28/23
argued [1]  15/23
arguing [5]  15/22 15/23 28/25 29/1 48/8
argument [7]  5/24 11/3 12/12 33/14 34/25
 35/12 37/25
arguments [8]  12/17 28/15 28/18 28/20
 30/12 33/25 34/1 34/16
arises [1]  11/15
arms [1]  47/14
articulated [2]  17/19 26/20
ask [3]  39/15 42/15 47/20
asked [2]  31/2 34/5
asking [3]  35/3 41/4 44/2
assert [4]  37/14 37/17 38/11 39/3
asserted [9]  7/4 22/11 22/12 22/16 23/4
 26/10 26/13 27/3 33/5
asserting [4]  7/21 23/2 24/21 27/2
assertion [1]  30/22
assess [1]  7/15
assessed [1]  8/16
associated [1]  34/9

## A

assumes [1] 32/19
assuming [3] 8/9 20/19 44/22
assumption [1] 27/19
attached [3] 3/6 27/5 27/9
attendant [3] 33/7 43/19 45/11
attorney [10] 29/3 30/17 31/7 31/9 33/17
  33/18 33/21 38/3 38/17 43/17
attorney/client [1] 38/17
attorney/client-type [1] 33/17
attorneys [3] 4/19 19/11 48/8
attorneys' [2] 10/11 10/12
attuned [1] 30/2
authorities [1] 13/14
authority [1] 37/7
available [11] 17/8 27/15 27/21 32/24 33/9
  38/18 45/13 45/17 46/12 48/4 49/16
Aventura [1] 1/17
avoid [1] 27/16
award [1] 47/4
aware [4] 19/23 34/2 40/5 43/16
away [4] 26/1 33/12 33/25 34/1

## B

back [5] 30/1 40/2 47/12 47/15 48/17
bar [5] 4/7 7/1 28/11 40/16 48/24
based [2] 4/5 38/3
basically [1] 37/9
basis [4] 6/7 12/5 16/16 26/19
battle [1] 38/23
be -- I [1] 48/1
Beach [2] 1/7 1/23
because [36]
become [1] 49/22
becoming [1] 8/3
before [5] 1/11 24/12 42/9 46/18 49/1
beginning [1] 9/23
begs [1] 41/22
behalf [8] 2/7 2/11 6/21 7/6 11/3 25/22 27/14
  30/25
being [24]
belabor [1] 34/15
believe [8] 3/6 11/14 12/2 20/17 24/13 24/24
  30/21 35/21
bench [1] 35/17
best [1] 48/22
better [1] 46/11
between [10] 3/2 3/14 4/13 4/18 5/6 6/5 22/7
  24/20 45/7 48/11
beyond [2] 21/15 45/2
big [1] 48/19
bigger [1] 27/7
Biscayne [1] 1/16
both [8] 4/3 14/8 16/6 44/4 44/7 47/14 47/24
  48/13
Boulevard [1] 1/16
box [2] 1/20 13/19
breach [8] 8/2 8/21 8/25 9/3 14/20 22/8
  28/23 38/13
breached [2] 4/20 38/12
breaches [1] 14/16
brief [9] 33/15 35/20 38/1 39/6 40/23 42/19
  42/23 44/22 49/15
briefing [7] 39/10 39/16 39/19 42/13 42/16
  42/17 45/6
bring [2] 28/9 34/12
brought [1] 31/24
Brown [2] 1/18 2/10
Brown's [1] 41/7

building [1] 43/2
bunch [1] 45/11
burden [4] 27/22 35/2 35/4 35/9
Butterworth [1] 32/19

## C

called [2] 2/17 30/14 30/15 34/2
Calling [1] 2/4
calls [1] 44/12
came [1] 35/25
can't [11] 20/3 22/20 23/10 23/11 23/12
  28/19 31/14 31/15 47/18 48/1 48/6
capacity [2] 10/18 30/19
care [2] 6/20 10/9
carry [1] 35/2
carrying [1] 10/22
case [79]
cases [3] 5/4 7/16 35/3
Catherine [1] 2/8
cause [5] 6/24 28/16 28/21 32/9 37/2
caused [1] 38/13
causes [1] 7/6
certain [2] 7/1 38/4
certainly [9] 2/6 2/24 9/9 19/2 24/2 26/19
  27/4 44/14 48/3
CERTIFICATE [1] 50/12
Certified [1] 50/14
certify [1] 50/14
challenge [1] 30/17
chance [1] 15/24
charging [5] 6/17 6/18 15/7 23/16 23/17
check [4] 45/9 45/13 45/14 46/20
choice [3] 35/6 36/15 38/7
choose [3] 22/19 22/20 35/7
chosen [1] 35/6
Circuit [7] 23/21 32/19 35/3 35/4 35/9 40/10
  40/12
circumstances [1] 38/4
cite [1] 31/18
cited [7] 3/13 5/4 5/4 11/23 13/6 13/7 31/5
civil [1] 47/17
claim [4] 6/23 12/5 14/20 28/9
claims [10] 6/23 8/7 14/16 17/24 18/3 24/21
  27/3 27/10 37/14 37/17
clearly [4] 16/25 27/11 32/4 35/6
Clematis [1] 1/22
client [37]
clients [5] 4/18 4/20 12/4 13/23 36/12
close [2] 35/8 47/1
co [3] 3/11 27/6 29/22
co-counsel [3] 3/11 27/6 29/22
coconspirator [2] 8/4 8/12
coconspirators [3] 17/22 18/7 29/17
colloquy [2] 40/13 43/11
comes [2] 37/16 37/19
coming [1] 48/17
comment [1] 26/22
committed [2] 31/25 37/1
committing [1] 29/17
communicating [1] 16/16
communication [1] 36/20
communications [1] 47/1
compel [1] 41/5
competent [1] 20/18
competently [2] 27/11 27/12
competing [1] 32/15
completely [1] 11/20
concept [1] 38/17
concern [3] 12/13 42/4 49/21
concerned [5] 11/7 25/8 40/6 42/18 49/11

concert [1] 11/4
concluded [1] 50/10
conclusion [1] 5/21
conduct [2] 29/18 29/19
conference [4] 41/22 41/23 41/25 42/6
confidence [2] 31/11 31/16
confidences [14] 31/9 32/4 32/5 32/18 32/20
  32/21 32/23 33/3 33/6 33/9 33/19 33/20
  33/22 33/24
confirm [1] 45/12
confirmed [1] 16/25
conflict [14] 4/4 4/6 4/9 5/11 7/16 7/17 17/2
  21/9 23/20 24/23 34/7 47/9 48/24 49/2
conflicts [5] 4/8 5/3 36/22 40/12 47/23
conjunction [1] 3/12
connection [1] 8/16
consent [13] 16/9 16/19 16/23 16/25 17/6
  19/7 19/22 20/6 20/8 20/11 20/13 20/24
  20/24
consents [1] 20/23
consequently [2] 5/8 5/9
consider [1] 13/15
considerably [1] 4/17
considered [2] 48/12 49/1
consisted [1] 20/7
consistent [1] 20/15
contingency [2] 6/4 10/13
contingent [1] 7/23
continuation [1] 42/13
continue [9] 21/5 22/16 22/18 25/16 29/14
  34/1 34/14 39/8 39/13
continued [2] 16/23 17/1
continues [3] 21/19 31/18 35/7
continuing [6] 5/14 14/6 23/1 34/10 43/17
  48/18
contract [3] 7/12 38/18 38/21
Contracting [5] 3/13 5/4 5/5 10/4 21/5
contractual [1] 38/12
contrary [1] 5/21
copied [1] 36/14
copy [1] 18/19
correct [3] 19/13 27/20 50/15
cost [1] 9/11
costs [8] 8/16 9/9 9/12 9/13 9/14 9/16 9/20
  11/7
coughing [1] 29/11
couldn't [2] 31/19 38/10
counsel [24]
counseled [1] 40/6
country [1] 45/5
couple [6] 12/4 13/13 26/23 35/19 35/22
  48/19
course [4] 2/14 13/18 43/13 45/3
court [29]
Court's [2] 5/23 48/17
courtroom [1] 48/7
CPE [1] 1/21
CR [1] 1/2
create [1] 4/14
created [1] 3/14
creates [1] 21/8
critical [2] 24/13 37/6
CRR [2] 1/21 50/20
current [1] 24/4
currently [1] 46/24

## D

daily [1] 16/16
damages [10] 8/13 8/15 8/24 9/6 9/8 9/22
  11/5 15/24 38/13 39/4

**D**

damaging [1]  47/12
darkly [1]  23/22
date [4]  31/12 43/10 45/16 46/18
Dated [1]  50/17
days [2]  13/2 45/12
DCA [1]  4/17
deal [1]  48/19
dealing [2]  31/7 44/21
dealt [1]  31/8
December [1]  36/1
December 15th [1]  36/1
decides [1]  43/22
decision [9]  3/19 12/22 12/22 12/23 36/10
 37/10 37/11 38/2 48/22
decisions [3]  4/10 13/2 40/12
defeat [2]  11/20 24/21
defend [2]  10/20 25/1
defendant [1]  30/20
DEFENDANTS [1]  1/7
Defendants' [3]  35/24 36/9 36/19
defending [1]  32/10
defense [6]  28/5 28/6 28/8 36/7 36/8 38/24
defenses [18]
degree [1]  17/22
demonstrated [2]  35/2 35/7
depending [1]  49/23
depends [2]  3/25 45/25
deposition [4]  41/6 41/6 41/7 41/8
depositions [1]  41/9
DEPOT [3]  1/6 2/4 22/4
desire [1]  42/6
deteriorated [1]  37/4
deterioration [1]  36/24
determining [1]  20/8
didn't [6]  12/14 19/13 19/14 19/20 20/12
 37/24
difference [5]  6/11 9/25 20/12 37/18 40/22
different [3]  11/22 29/4 39/1
diligent [1]  20/18
direct [3]  9/9 9/21 9/21
directed [1]  35/11
directly [3]  13/15 39/2 47/2
disagree [2]  20/3 21/20
discharged [4]  6/24 29/3 38/4 39/3
disclosed [3]  17/2 17/11 17/20
disclosure [1]  17/7
discovery [1]  41/15
discussed [3]  17/23 18/4 45/2
discussing [1]  31/22
disposed [1]  21/6
disposition [2]  48/11 48/12
dispute [9]  5/2 5/6 15/3 15/7 21/15 30/12
 39/2 44/5 44/6
disputes [4]  41/15 44/8 44/9 44/10
disqualification [6]  26/19 30/16 31/1 31/2
 31/7 32/12
disqualified [5]  12/6 20/14 30/5 31/8 31/9
disqualify [3]  1/10 2/15 35/5
disqualifying [1]  41/1
DISTRICT [2]  1/1 1/1
document [1]  20/4
documents [2]  18/12 19/24
does [7]  2/20 4/13 5/2 20/23 21/10 45/23
 49/22
doesn't [24]
dog [1]  6/9
doing [2]  7/4 15/8
dollars [2]  9/18 48/8

don't [39]
done [4]  12/22 39/24 39/25 45/6
down [1]  29/18
drive [1]  40/20
due [1]  48/16
duties [9]  4/20 8/2 11/19 11/21 12/10 21/4
 21/4 22/8 38/12
duty [8]  8/21 8/22 8/23 8/25 9/4 11/18 14/17
 14/20

**E**

E-a-t-o-n [1]  12/3
e-mail [4]  1/23 36/13 36/14 36/14
each [7]  20/18 31/17 44/15 44/15 44/16 45/1
 47/17
easily [4]  34/16 47/16 47/16 48/15
Eaton [6]  12/3 12/3 12/6 12/8 20/14 25/15
economic [1]  37/13
economically [1]  15/3
effect [1]  20/9
effects [1]  47/12
effort [3]  11/20 14/14 26/24
efforts [2]  10/24 24/6
either [5]  2/24 5/18 14/5 23/5 31/5
Eleventh [7]  23/21 32/18 35/3 35/4 35/9
 40/10 40/12
else [2]  22/3 30/11
employ [1]  43/17
encourage [1]  44/14
encouraged [2]  19/11 19/22
encourages [2]  40/11 40/13
end [5]  8/6 9/15 9/19 9/20 24/11
engage [6]  40/13 43/10 44/19 47/21 47/24
 48/5
engaged [3]  6/24 15/3 29/19
engaging [1]  41/14
enough [2]  11/4 41/19
entail [1]  43/25
enter [1]  18/22
entered [3]  19/4 24/15 36/8
entertain [3]  42/25 43/1 43/20
entire [1]  47/9
entitled [5]  6/22 9/15 43/12 43/13 50/16
entitlements [1]  11/21
especially [1]  48/25
ESQ [4]  1/15 1/15 1/18 1/18
essentially [1]  8/3
establish [2]  3/21 3/23
established [1]  3/1
establishes [2]  3/4 3/14
et [2]  1/3 1/6
ethical [1]  28/16
ethics [2]  13/17 28/3
even [9]  3/6 8/9 9/9 9/18 11/5 16/19 24/22
 35/8 36/14
event [1]  33/8
events [1]  33/7
ever [1]  29/12
every [4]  17/21 24/16 31/5 31/17
everybody [3]  22/3 48/21 48/25
evidence [10]  2/19 2/20 3/3 3/20 4/2 19/4
 19/10 36/2 36/8 36/19
evidentiary [7]  2/18 16/15 34/4 43/23 44/9
 44/13 49/22
exactly [2]  22/14 33/24
examine [2]  32/17
exception [1]  43/23
exercise [1]  22/24
exhibit [6]  19/4 35/24 36/8 36/9 36/18 36/19
exhibits [3]  35/24 44/17 45/2

Exhibits 1 [1]  35/24
exist [3]  21/9 21/18 38/21
exists [1]  3/4
expedited [1]  41/11
expeditious [1]  39/24
experts [3]  8/17 9/16 37/8
expressing [1]  40/8
extent [1]  19/25
extra [10]  21/14 21/16 22/25 24/14 25/24
 25/25 26/7 26/15 35/21 48/15

**F**

face [1]  38/24
faced [1]  30/16
faces [1]  14/16
facie [2]  3/1 3/21
fact [17]
factors [1]  3/11
facts [1]  31/20
factual [6]  44/5 44/6 44/8 44/9 44/10 44/12
fair [2]  37/16 41/19
fairly [1]  4/9
familiar [1]  4/9
far [6]  20/1 25/24 40/6 42/17 42/18 49/11
fathom [1]  31/15
federal [1]  39/25
fee [9]  3/4 4/12 5/6 6/4 6/22 6/22 7/23 10/13
 28/13
feel [2]  4/2 27/25
felt [1]  37/8
few [3]  4/8 18/16 48/5
fiduciary [20]
fight [5]  6/9 6/9 38/23 38/24 38/24
fighting [1]  28/13
figure [2]  23/25 46/15
file [2]  41/20 44/23
filed [3]  3/6 6/16 41/20
final [1]  21/6
financial [2]  6/7 21/25
fine [6]  39/7 42/3 44/24 49/19 50/1 50/6
finest [1]  11/17
finish [2]  43/5 47/19
finished [1]  41/18
Finley [11]  11/25 12/1 12/4 12/5 12/7 12/9
 20/11 20/12 25/9 25/10 25/11
firing [2]  36/25 37/2
firm [26]
first [14]  5/20 5/25 13/17 14/9 19/6 23/8
 24/15 35/23 35/24 36/19 36/21 37/12 43/9
 46/1
FL [2]  1/17 1/20
flight [1]  45/10
Floor [1]  1/20
FLORIDA [8]  1/1 1/7 1/23 4/7 20/15 28/3
 28/11 38/3
fly [1]  42/24
focus [1]  5/24
foolhardy [1]  47/24
force [1]  19/15
forced [3]  25/1 38/22 38/23
foregoing [1]  50/14
foresee [2]  44/5 44/8
forget [1]  40/7
form [1]  37/22
formally [1]  3/9
former [9]  12/4 12/9 13/24 27/5 27/10 32/3
 32/5 32/12 46/23
forms [1]  44/10
Fort [1]  1/20
forth [2]  35/9 47/15

## F

found [2]  4/19 12/6
Franklin [4]  1/21 50/13 50/19 50/20
frankly [3]  26/17 29/20 35/1
fraud [1]  18/8
fraudulent [1]  29/18
free [3]  45/20 46/4 46/5
frequently [1]  45/10
Freund [1]  32/19
front [1]  11/2
full [6]  17/7 37/7 41/6 41/7 41/8 41/9
fullest [1]  19/25
fully [3]  17/2 24/22 37/25
fundamental [1]  15/13
funds [1]  21/6
further [3]  3/21 31/20 42/13

## G

gather [1]  44/22
gathered [1]  25/21
gave [3]  20/5 20/11 37/7
general [1]  38/18
germs [1]  29/12
get-go [1]  15/19
gets [3]  6/11 10/10 12/24
getting [3]  15/14 15/15 47/14
give [2]  42/23 48/15
given [4]  14/18 20/9 21/24 43/24
gives [2]  26/18 29/2
giving [1]  43/7
Givner [5]  1/15 1/16 2/6 2/22 29/22
glass [1]  23/22
goes [4]  6/12 6/13 37/5 37/12
going [42]
gone [1]  19/25
good [8]  2/3 2/12 5/23 22/1 29/9 29/10 39/9
46/13
got [5]  21/14 24/8 40/16 46/7 48/20
gotcha [1]  44/24
grab [1]  27/7
grateful [1]  22/1
grave [1]  32/9
Green [7]  11/23 11/24 11/25 25/6 25/7 31/19
31/19
Gregory [1]  2/7
grieved [1]  36/23
grounds [1]  31/1
guess [6]  3/25 5/19 26/3 28/19 41/21 42/5

## H

H's [2]  5/3 5/21
hadn't [1]  41/14
half [3]  40/22 46/8 46/10
hand [2]  3/15 7/2
handed [2]  18/14 35/23
handle [1]  42/7
handling [1]  40/11
hands [1]  6/25
happen [3]  7/25 12/20 43/2
happening [2]  38/8 38/19
happy [10]  4/2 16/17 37/25 39/6 39/10 39/21
42/8 42/23 42/25 42/25
hard [1]  35/4
hasn't [2]  21/13 22/2
haven't [2]  22/3 25/24
having [15]  5/1 7/2 14/3 17/5 27/9 28/3
28/10 31/9 34/11 37/25 38/6 39/1 39/16
40/22 47/5
he'll [1]  45/12

he's [10]  16/18 16/21 17/2 17/8 17/13 19/11
38/4 40/3 43/13 43/15
head [1]  33/23
hear [4]  25/3 29/14 34/9 36/22
heard [1]  41/10
hearing [27]
hearings [1]  23/21
heavily [1]  31/19
held [4]  9/3 9/6 15/24 32/14
Hello [1]  2/13
help [1]  40/24
hence [1]  38/21
here [31]
here's [2]  32/9 37/19
Herman [8]  1/18 2/10 16/6 29/15 36/11
36/23 37/4 37/11
Herman's [1]  36/14
hey [1]  32/7
Higer [1]  1/16
high [1]  15/17
highest [1]  11/17
highly [2]  24/5 24/8
himself [2]  18/7 30/6
hinges [2]  14/4 31/17
hire [2]  9/16 37/7
hired [2]  32/2 37/6
hit [2]  33/14 35/1
hits [1]  33/23
hitting [1]  30/2
Hoffman [43]
Hoffman's [3]  24/6 36/16 47/10
hold [3]  26/21 41/10 41/24
holding [1]  38/9
holds [1]  8/9
HOME [3]  1/6 2/4 22/4
honestly [2]  24/13 46/11
Honor [68]
Honor's [1]  33/23
HONORABLE [1]  1/11
hoping [1]  45/6
HOPKINS [2]  1/2 1/11
horrible [1]  37/2
hour [4]  40/23 46/8 46/8 46/10
however [4]  4/14 4/15 20/22 32/22
HURLEY [1]  1/2

## I

I'd [6]  5/25 26/3 39/21 41/10 41/11 49/2
I'll [11]  18/21 18/22 34/11 35/12 35/20 37/25
39/6 43/9 43/20 44/15 44/25
I'm [42]
I've [7]  2/15 4/7 24/11 29/18 34/21 46/25
47/6
i.e [3]  30/6 33/17 33/18
imagine [2]  48/1 48/6
implicated [1]  48/24
important [3]  19/20 19/21 41/16
improper [1]  29/2
INC [1]  1/6
inclined [1]  2/19
include [1]  19/21
including [1]  43/6
indeed [1]  34/4
independent [5]  15/6 19/14 20/4 23/14 24/10
independently [1]  19/8
indicated [1]  22/22
indicates [1]  16/24
individuals [1]  38/6
inflammatory [1]  47/11
information [6]  20/7 25/10 25/12 25/21 26/7

34/3
informed [10]  16/9 16/19 16/23 17/5 18/9
18/11 19/7 19/21 20/8 20/13
initially [1]  10/14
inquiry [3]  29/25 30/14 30/21
inside [1]  26/7
instance [3]  32/5 33/18 33/19
instant [1]  5/2
instead [1]  37/3
intellectual [1]  22/24
intelligent [4]  40/14 40/18 43/8 44/11
interest [31]
interested [1]  39/23
interesting [1]  4/7
interests [6]  32/15 40/3 40/15 40/16 40/17
47/5
interrupting [1]  40/25
intervene [12]  15/11 22/19 22/20 23/11
23/13 23/13 23/19 27/16 30/8 30/25 38/11
47/10
INTERVENORS [2]  1/15 2/7
Intervenors' [1]  22/17
introducing [2]  44/16 45/1
involved [5]  11/25 15/5 20/5 24/10 42/17
involves [1]  8/17
isn't [5]  14/18 22/9 22/9 28/24 46/13
issue [24]
issues [4]  43/6 43/19 44/5 44/6
it'd [1]  39/1
it's [43]
itself [8]  3/12 11/8 21/10 30/9 30/9 32/10
33/11 47/16

## J

Jacob [3]  1/15 2/6 2/21
JAMES [1]  1/11
jobs [1]  44/7
joined [1]  32/2
joint [10]  3/2 3/14 3/22 3/23 6/5 11/16 21/6
24/15 24/19 28/23
jointly [2]  3/15 32/14
judge [5]  1/12 5/22 39/23 40/13 43/22
judgment [1]  22/5
Judy [1]  36/22
juncture [1]  30/15
jury [1]  11/2
just [32]

## K

keep [1]  41/12
key [3]  17/4 17/5 33/1
kids [1]  29/12
kind [3]  12/15 40/11 44/21
know [43]
knowing [5]  17/18 40/14 40/18 43/7 44/11
Kumble [11]  12/1 12/1 12/4 12/5 12/8 12/9
20/11 20/12 25/9 25/10 25/11

## L

last [2]  13/18 25/5
Lauderdale [1]  1/20
law [15]  3/12 3/18 12/16 20/15 20/16 25/10
29/16 30/18 31/8 31/21 32/10 32/14 35/10
38/18 38/21
lawyer [5]  13/20 13/25 20/17 20/17 24/17
lawyer's [1]  13/24
lawyers [2]  5/7 6/12
lead [3]  8/8 8/13 11/5
leads [1]  11/8
learned [1]  32/6

## L

least [3]  19/9 46/10 46/25
leave [3]  36/15 38/1 44/25
leaving [1]  45/5
lectured [1]  4/7
led [1]  33/7
left [3]  12/2 25/9 32/1
legal [3]  22/1 24/16 27/4
legally [1]  16/4
let [7]  8/18 9/22 13/17 14/9 29/25 37/10 45/1
let's [7]  7/13 14/8 14/25 21/3 27/24 30/23
45/15
letter [2]  35/25 37/9
level [3]  12/23 12/24 47/13
liability [1]  31/23
liable [8]  7/22 8/11 8/23 9/3 9/6 9/12 15/24
32/15
Lichter [1]  1/16
lien [5]  6/17 6/18 15/7 23/16 23/17
likelihood [2]  15/6 15/17
likening [1]  33/16
limitation [1]  38/20
limited [6]  13/23 14/3 37/22 38/4 38/15 39/4
lines [1]  43/9
litigate [2]  27/10 44/8
litigation [5]  9/14 9/14 9/15 9/17 30/12
little [2]  8/18 13/11
lives [1]  40/20
LLP [1]  1/16
lodged [1]  17/24
Loeb [2]  1/15 2/7
long [2]  7/6 46/4
looking [1]  23/22
looming [1]  14/20
loser [1]  8/15
loss [1]  29/20
lot [2]  4/9 13/1
loyalties [1]  4/24
loyalty [1]  11/18
lunch [2]  46/6 46/7
luncheon [1]  46/6

## M

MAGISTRATE [1]  1/12
mail [4]  1/23 36/13 36/14 36/14
maintains [1]  7/7
making [6]  3/10 5/16 19/17 25/2 28/18 43/6
malicious [2]  11/3 29/19
malpractice [6]  12/5 31/23 32/8 32/10 32/14
33/20
management [4]  41/21 41/22 41/25 42/6
managing [2]  31/21 32/1
manner [3]  31/10 31/11 41/11
March [7]  1/8 39/20 42/14 45/7 45/20 45/21
50/17
March 14th [1]  39/20
March 20th [3]  42/14 45/7 45/20
massive [1]  18/8
material [2]  20/7 41/4
materially [2]  13/23 14/3
materials [1]  37/24
matter [9]  3/18 6/14 16/24 33/12 36/13 39/24
47/7 48/19 50/16
matters [3]  48/23 49/2 49/3
Mayback [46]
maybe [7]  5/19 9/18 13/4 40/7 40/24 42/6
45/6
me [25]
mean [28]

meaning [1]  10/10
measure [1]  38/14
mediation [3]  47/16 47/21 47/24
meet [3]  24/3 29/23 35/5
meetings [2]  31/22 32/7
members [2]  32/1 32/1
merely [1]  5/15
merit [2]  26/19 50/13
meruit [6]  37/22 38/5 38/16 38/16 38/17
38/20
met [1]  29/22
Miami [2]  46/8 46/9
MICHAEL [6]  1/3 2/4 2/11 29/16 36/17
36/20
microphone [1]  17/25
might [14]  5/20 11/2 12/22 17/10 24/11
24/11 25/1 32/8 32/14 34/24 39/18 45/13
46/14 48/20
million [1]  10/23
millions [1]  48/8
mind [1]  4/11
minute [1]  16/5
minutes [1]  48/6
misrepresentation [1]  6/25
missing [1]  26/21
moment [3]  16/1 30/1 30/23
money [4]  6/11 9/17 11/1 24/18
monies [1]  22/5
morning [1]  46/2
most [3]  7/16 15/21 49/2
mostly [1]  5/20
motion [8]  1/10 2/14 2/15 30/16 41/5 47/10
47/14 47/25
motions [1]  31/6
motivations [1]  25/14
Mr [1]  22/22
Mr. [33]
Mr. Brown's [1]  41/7
Mr. Givner [1]  29/22
Mr. Herman [1]  16/6
Mr. Herman's [1]  36/14
Mr. Michael [1]  36/20
Mr. Powell [23]
Mr. Powell's [2]  19/8 43/23
Mr. Smiley [1]  18/6
Mr. Smiley's [2]  41/3 41/8
much [4]  11/22 18/10 42/11 49/24
myself [3]  16/6 24/12 29/15

## N

name [1]  12/3
name's [1]  46/23
Namely [1]  3/4
narrow [1]  42/16
nature [1]  8/12
necessary [5]  2/16 4/2 34/10 34/18 37/8
need [3]  13/14 38/6 45/11
needed [1]  47/12
needs [2]  3/20 48/13
negotiated [1]  10/14
never [3]  12/23 29/22 29/23
New [1]  11/24
next [2]  33/14 43/10
no [34]
none [4]  26/10 27/21 31/14 31/16
normal [1]  38/21
notice [4]  3/18 19/7 43/24 44/20
noting [1]  20/4
notwithstanding [5]  6/19 7/20 7/20 10/1
20/13

novel [2]  13/10 13/11
nuanced [1]  29/3
number [8]  8/6 13/6 13/7 20/11 27/13 36/10
36/18 36/19
number 1 [1]  36/10
number 2 [2]  36/18 36/19

## O

o'clock [4]  46/3 50/3 50/5 50/7
object [1]  17/1
objection [4]  18/22 18/24 36/5 36/6
obligations [2]  28/16 28/17
observation [1]  19/18
obtain [3]  17/3 19/13 19/22
obtained [1]  32/24
obviously [13]  13/11 14/1 15/25 19/10 19/24
29/23 32/9 39/23 41/16 42/22 43/20 44/25
49/23
obviously -- I [1]  14/1
occurring [1]  48/1
offering [1]  36/2
Official [1]  1/22
often [1]  12/21
Oh [1]  26/21
okay [32]
old [2]  11/25 12/1
once [1]  17/2
one [29]
one's [1]  35/6
ongoing [1]  9/14
only [14]  6/17 10/15 11/18 20/23 22/6 22/6
23/16 29/15 32/11 37/22 38/15 39/17 45/9
49/21
open [2]  42/16 42/18
opinion [7]  3/11 7/9 10/16 15/17 24/5 28/3
47/15
opinions [1]  4/8
oppose [7]  10/21 14/14 15/7 15/10 21/22
23/15 23/19
opposed [5]  10/18 13/10 27/6 38/15 48/16
opposing [9]  6/18 21/25 23/17 24/6 24/9
30/17 30/19 31/11 34/2
opposition [6]  15/16 15/18 25/19 26/1 26/8
31/6
orchestrated [3]  8/5 9/4 15/15
orchestrating [1]  8/25
order [5]  2/1 24/16 24/17 24/18 27/16
organized [1]  18/8
ostensibly [1]  31/13
otherwise [2]  25/2 25/12
our [22]
ours [1]  42/24
ourselves [1]  30/25
outside [3]  45/14 49/8 49/10
outstanding [1]  15/20
over [4]  15/9 26/24 40/20 48/8
owe [1]  8/22
owed [2]  12/9 21/4
owes [2]  4/24 8/22
own [9]  5/3 10/3 10/5 10/17 24/18 27/10
30/25 40/15 40/16

## P

P.O [1]  1/20
paid [14]  10/25 14/15 15/9 15/14 15/15
21/13 22/2 22/3 22/4 22/5 24/6 24/16 24/17
24/19
Palm [2]  1/7 1/23
papers [8]  3/6 3/13 5/12 10/3 10/5 11/23
34/17 35/12

**P**

paragraph [1] 19/10
paragraph 5 [1] 19/10
participating [1] 10/2
particular [3] 10/7 43/14 49/3
parties [3] 4/3 47/8 47/16
partner [7] 11/17 24/19 29/15 29/24 31/22
   31/22 46/24
partner's [1] 41/9
partners [11] 12/1 12/8 12/9 25/8 25/11
   25/13 31/21 31/21 31/21 32/5 32/6 32/13
partnership [1] 32/6
party [13] 6/17 9/15 10/17 11/6 15/11 22/10
   23/16 30/4 30/5 30/6 30/17 30/22 30/24
pause [1] 49/15
pay [2] 6/4 48/7
paying [4] 8/10 8/14 9/19 9/20
payment [2] 11/8 22/7
pecuniary [2] 6/10 7/3
percent [22]
perform [1] 27/11
performed [1] 27/12
perpetrated [1] 18/8
person [1] 13/25
personal [1] 13/25
perspective [6] 6/7 14/9 14/11 14/23 15/4
   27/7
perspectives [1] 14/9
persuasive [1] 11/3
peruses [1] 18/12
Peter [8] 1/18 2/10 29/15 36/11 36/23 37/4
   37/6 37/11
petition [1] 6/17
phenomenal [1] 15/20
phone [5] 17/9 45/18 46/15 48/4 49/11
pick [1] 46/18
picked [1] 12/4
pie [1] 27/8
piece [1] 27/8
piggyback [1] 38/8
place [2] 24/15 47/9
plaintiff [98]
Plaintiff's [3] 14/23 15/4 28/25
plaintiffs [2] 1/4 12/7
Plaintiffs' [3] 18/25 19/3 19/4
Plaintiffs' 1 [2] 18/25 19/3
plan [1] 44/16
planned [2] 41/14 46/7
planning [1] 45/1
pleading [1] 17/21
pleadings [8] 5/3 12/15 17/13 17/17 18/4
   18/10 40/4 48/18
please [2] 2/2 2/5
plethora [1] 35/9
plus [2] 8/15 9/12
point [19]
pointed [3] 5/12 5/15 32/23
pointing [1] 26/15
points [4] 5/5 11/11 20/10 35/19
policy [2] 38/3 38/5
position [17]
positions [3] 7/7 24/21 24/24
possibility [5] 7/17 7/22 8/13 9/2 9/5
possible [2] 48/5 49/25
post [1] 36/20
post-termination [1] 36/20
postpone [1] 48/13
postponed [2] 48/14 48/20

posture [2] 6/16 24/4
potential [7] 8/7 14/16 14/20 16/15 28/5
   31/23 31/23
potentially [1] 11/5
POWELL [30]
Powell's [2] 19/8 43/23
practice [1] 47/14
precluded [1] 28/18
prejudice [42]
prejudices [1] 33/24
prejudicial [1] 31/10
preliminary [1] 2/25
prepared [6] 3/20 16/12 16/14 16/18 16/21
   16/22
present [2] 2/19 2/20
presented [1] 3/20
presumably [1] 30/8
pretty [1] 11/2
prevailing [2] 9/15 11/6
prevent [1] 10/25
prevented [1] 25/15
prima [2] 3/1 3/21
probably [5] 4/23 12/21 17/8 27/22 28/14
problem [3] 6/15 32/7 40/2
procedural [2] 6/16 24/4
procedure [1] 40/11
proceed [4] 3/24 4/1 4/5 49/1
proceeded [1] 3/24
proceedings [4] 1/10 49/15 50/10 50/15
process [1] 10/2
procured [1] 10/23
productive [3] 32/17 33/2 42/9
profession [1] 27/4
properly [1] 39/3
proposition [1] 21/3
prove [3] 27/17 27/18 27/21
provide [1] 20/18
provided [1] 22/2
provides [1] 13/20
public [2] 38/3 38/5
published [2] 13/2 13/2
pull [1] 13/18
punitive [7] 8/13 8/24 9/6 9/8 9/22 11/5
   15/24
pursue [2] 8/18 43/20
pushing [4] 41/5 41/12 41/12 41/12
put [4] 3/20 4/2 17/11 23/21
puts [1] 4/22

**Q**

qualified [1] 37/8
qualms [1] 16/18
quantum [6] 37/22 38/5 38/15 38/16 38/17
   38/20
question [6] 17/7 21/8 25/23 35/20 37/16
   41/17
questions [3] 34/24 35/11 35/13
quick [1] 49/9
quickly [1] 49/9
quite [6] 4/6 4/8 26/25 31/19 35/1 45/19
quote [5] 5/5 10/4 10/8 36/14 39/25

**R**

raised [3] 6/23 27/14 28/1
raising [1] 10/19
ramifications [2] 40/5 40/9
Randon [2] 1/15 2/6
rather [2] 27/22 48/7
reached [1] 3/22
reaches [1] 23/15

reaction [1] 4/5
read [4] 2/15 34/21 36/9 37/9
reading [1] 48/18
ready [1] 44/8
real [7] 8/14 10/16 30/22 30/24 33/15 38/22
   49/8
realistic [4] 7/17 7/21 9/2 9/5
reality [2] 6/19 15/13
really [15] 2/16 5/7 9/24 10/17 12/20 15/10
   15/10 15/12 16/20 22/12 24/13 30/2 33/2
   37/14 42/7
really -- I [1] 24/13
Realtime [1] 50/14
reargue [1] 2/17
reason [6] 10/7 10/8 10/14 10/15 10/21 22/6
reasonable [1] 22/25
reasonably [1] 20/17
reasons [2] 25/14 38/6
recall [1] 11/23
receive [1] 47/4
received [3] 22/5 31/9 31/12
recently [1] 41/20
recommend [1] 3/16
record [6] 3/3 3/5 18/22 26/18 34/11 50/15
recover [1] 38/14
recovery [2] 37/22 38/5
recreated [1] 4/18
regarding [1] 34/3
regardless [7] 21/18 22/17 23/3 25/20 25/21
   32/25 33/9
Registered [1] 50/13
relates [1] 25/6
relation [1] 4/11
relationship [12] 4/14 4/15 4/16 4/18 4/21
   21/10 33/16 33/17 36/16 37/3 38/17 43/16
relationships [1] 36/24
relatively [1] 48/15
relies [1] 37/23
rely [1] 31/18
remaining [1] 48/6
Remember [2] 14/21 38/16
repeated [1] 30/21
repeatedly [1] 17/2
repeating [1] 24/12
reply [3] 2/16 5/5 31/6
reported [2] 12/21 13/3
Reporter [4] 1/21 1/22 50/13 50/14
represent [12] 12/7 13/20 14/7 16/7 21/19
   22/18 23/1 30/4 30/9 30/11 30/18 30/25 37/6
   38/7
representation [9] 3/24 13/22 16/24 17/1
   20/18 29/2 34/10 43/12 43/14
representative [2] 10/18 16/3
represented [4] 15/19 23/9 23/14 24/7
representing [16] 10/19 11/19 15/2 16/18
   21/17 23/3 24/20 25/16 26/7 30/6 30/8 32/13
   32/25 33/10 33/11 41/17
request [3] 28/13 34/3 41/21
require [1] 44/15
required [2] 6/4 11/17
requires [2] 20/16 20/23
resisting [7] 7/10 10/1 10/15 10/15
resolution [2] 41/15 47/25
resolve [1] 41/16
respect [6] 5/25 7/11 11/13 19/24 27/1 28/5
respectfully [2] 14/23 21/20
respond [5] 29/21 42/21 42/23 43/3 43/4
response [5] 2/16 31/6 34/17 43/1 44/23
responsibilities [1] 13/24
responsible [1] 3/10

**R**

rest [1] 37/9
result [3] 14/6 15/20 24/8
resulted [1] 8/10
reviewed [2] 17/13 18/4
reviewing [1] 17/17
right [22]
rights [1] 11/20
rise [1] 29/2
risk [13] 9/19 13/22 13/22 14/22 14/24 22/25
  23/7 23/25 24/3 24/18 26/6 27/23 32/21
risks [6] 17/18 17/19 17/19 34/9 34/13 43/16
RMR [1] 1/21 50/20
Rosenberg [3] 37/23 38/2 38/9
Rule [1] 13/17
ruled [1] 20/14
rules [4] 7/1 13/17 28/10 48/24

**S**

salient [1] 33/8
same [12] 4/25 5/18 12/14 14/15 25/17 25/18
  28/24 30/12 30/12 30/12 37/17 37/18
satisfy [2] 35/8 35/22
say [10] 4/15 11/2 16/21 25/5 26/3 27/12
  29/21 33/4 37/5 46/19
saying [5] 8/24 9/13 26/14 37/1 37/3
says [6] 19/11 20/4 20/16 21/6 36/21 37/10
scenario [1] 39/5
schedule [3] 39/21 42/9 45/17
Scott [89]
Scott's [4] 24/25 26/1 26/6 33/25
seated [1] 2/2
second [5] 7/13 11/13 13/18 28/5 34/6
seek [1] 19/11
seem [1] 7/2
seems [9] 4/21 5/1 15/21 19/24 23/6 28/14
  32/20 39/2 48/14
seen [3] 18/13 25/24 40/3
segment [1] 48/17
sense [4] 6/10 10/7 15/4 29/23
sentence [1] 36/21
separate [4] 16/10 43/12 43/13 47/3
serious [2] 47/23 48/23
seriously [2] 49/2 49/3
services [3] 22/1 24/16 37/23
set [7] 34/4 35/9 41/6 41/7 41/8 41/8 49/6
settle [2] 47/16 48/9
settled [2] 22/4 41/15
severally [1] 21/5
SFranklinUSDC [1] 1/23
shall [2] 13/20 25/3
share [4] 10/11 10/12 29/12 29/13
shared [3] 32/18 32/20 32/21
sharing [2] 3/5 4/12
shoes [1] 28/14
should [16] 10/17 10/22 15/12 18/25 20/8
  22/1 23/9 30/4 30/5 30/7 30/7 30/8 30/17
  30/17 30/24 30/25
shoulders [1] 10/23
shouldn't [6] 4/15 6/20 7/8 7/9 10/9 16/20
show [5] 17/14 21/9 21/10 21/14 27/22
side [13] 9/9 9/9 9/11 13/7 15/1 15/1 20/23
  31/5 31/11 33/4 34/2 40/23 44/16
side's [2] 44/14 44/18
sides [4] 44/4 47/14 47/24 48/13
sides' [1] 44/7
similar [2] 4/22 12/18
similarly [1] 5/10
simply [2] 24/6 26/19

since [3] 5/3 5/8 5/9
sincere [1] 47/15
single [3] 12/15 12/17 31/5
situation [12] 4/15 4/16 4/22 5/9 11/22 12/13
  12/14 12/16 12/18 25/17 25/17 25/19
situations [1] 29/5
sixth [2] 46/17 46/21
skeptical [1] 13/11
slash [1] 10/13
smiley [3] 18/6 29/15 46/23
Smiley's [2] 41/3 41/8
somebody [2] 2/17 30/11
somehow [2] 6/25 27/10
something [3] 8/12 16/2 46/19
somewhat [1] 41/21
soon [1] 38/1
sorry [6] 18/1 25/5 36/22 37/3 37/3 49/13
sort [4] 6/24 23/18 43/24 47/21
sounds [1] 43/1
Southeast [1] 1/19
SOUTHERN [1] 1/1
speak [3] 13/15 17/25 47/17
speaking [2] 46/24 46/25
specific [1] 5/15
speculating [2] 12/25 23/18
speculation [1] 23/24
speedy [1] 48/11
spite [1] 10/24
split [2] 6/6 6/11
spoke [1] 4/17
stand [6] 10/6 10/7 15/24 28/14 34/25 35/12
standard [3] 7/16 14/22 27/20
standing [5] 24/20 28/4 28/6 28/9 28/12
stands [1] 22/7
start [4] 6/3 21/3 27/24 46/1
started [2] 47/9 47/14
starts [1] 30/21
State [6] 3/13 5/4 5/5 7/12 10/4 21/5
statements [1] 47/11
states [3] 1/1 1/12 35/4
stating [1] 17/1
step [5] 17/6 30/1 35/23 49/8 49/10
Stephen [4] 1/21 50/13 50/19 50/20
steps [1] 35/22
stigma [2] 27/4 27/9
still [8] 20/14 21/9 21/18 23/4 25/25 38/25
  39/3 44/19
stops [1] 30/21
Street [2] 1/19 1/22
strikes [1] 16/1
struggling [1] 6/2
subject [2] 21/15 47/25
submit [3] 20/22 31/14 40/8
subpart [1] 13/21
subpoenaed [2] 41/2 41/3 41/3
substantial [14] 9/17 13/22 13/22 14/22
  14/24 17/6 23/6 23/25 24/3 24/18 26/6 26/18
  27/23 32/21
successful [1] 47/13
such [2] 6/23 36/23
sue [2] 12/4 32/3
sued [1] 32/8
sues [1] 33/18
suffer [2] 5/13 14/6
suffered [1] 31/4
sufficient [1] 36/23
suggest [2] 17/21 50/3
suing [1] 33/21
Suite [1] 1/16
support [1] 12/16

supports [1] 24/22
suppose [2] 12/12 33/4
supposed [2] 7/5 19/15
sure [16] 7/14 12/20 13/8 13/8 17/15 19/1
  23/12 25/4 34/23 40/14 40/18 43/6 43/11
  43/15 48/25 49/24
surprise [1] 18/11
surprised [1] 44/18
suspect [4] 12/20 14/21 22/21 23/12

**T**

tackle [1] 33/15
tactical [5] 31/10 31/10 31/13 41/1 41/13
tainted [1] 14/19
take [6] 3/18 7/13 14/25 35/22 38/20 44/10
taken [2] 17/21 48/7
takes [1] 46/8
taking [4] 24/25 28/8 37/21 38/15
talk [1] 9/22
talking [5] 4/22 28/12 31/15 48/19 49/21
taxpayer [1] 48/7
team [3] 26/24 37/9 41/2
telephone [1] 17/8
tell [3] 23/11 23/12 43/9
telling [1] 15/6
tens [1] 9/18
tension [1] 48/10
tenuous [1] 19/23
term [1] 24/14
terminate [2] 36/11 36/16
terminated [3] 28/15 28/19 28/20
termination [2] 35/25 36/20
terms [3] 13/14 39/16 46/25
terrible [1] 37/2
testify [1] 20/6
testifying [1] 45/3
testimony [2] 43/24 45/2
thank [9] 2/9 5/22 29/7 29/8 35/14 42/11
  49/4 49/5 50/8
that's [58]
theories [3] 13/10 13/12 13/12
theory [4] 8/9 8/12 8/20 14/2
there's [32]
therefore [2] 9/5 30/5
they're [16] 8/20 9/11 10/15 13/16 15/14
  15/14 25/20 28/13 30/24 32/25 35/3 43/1
  43/2 44/3 44/23 46/25
they've [8] 17/21 17/23 18/10 25/21 28/1
  28/25 40/4 42/24
thing [10] 13/18 19/6 22/7 25/5 28/24 29/11
  29/21 43/10 45/9 46/1
things [5] 13/14 25/7 37/2 48/11 48/12
think [52]
thinking [2] 4/4 5/23
third [3] 4/17 13/25 22/10
third-party [1] 22/10
those [27]
though [3] 13/14 35/23 38/25
thought [1] 48/16
thoughtful [1] 48/11
thoughts [6] 4/6 5/19 5/20 18/16 26/23 42/22
thousands [1] 9/18
three [3] 24/7 28/2 37/23
threshold [3] 23/9 24/3 35/5
through [5] 10/24 22/24 23/22 34/16 42/10
throughout [2] 35/4 43/14
tied [2] 47/2 47/5
timing [1] 45/4
today [5] 3/21 42/22 42/24 47/22 48/5
today's [1] 29/18

## T

together [1]  11/4
token [1]  5/18
too [1]  46/3
took [1]  24/17
towards [1]  29/20
town [1]  45/12
transcript [2]  1/10 50/15
travels [2]  45/10 45/11
treat [2]  49/2 49/3
trial [4]  12/23 13/1 40/13 45/20
trip [1]  39/20
Tripp [91]
trouble [1]  14/3
true [5]  8/9 13/4 16/1 29/23 30/23
trying [8]  10/25 22/23 22/24 24/21 27/7 38/8
45/4 46/15
turn [4]  30/3 43/22 45/18 49/11
turned [1]  32/11
Twenty [2]  46/17 46/21
Twenty-sixth [2]  46/17 46/21
two [11]  3/11 12/1 12/8 20/10 20/23 25/8
27/13 31/21 31/25 32/5 32/12
type [4]  12/14 25/17 25/18 33/17

## U

ultimately [4]  3/10 31/8 32/1 42/5
unclean [1]  6/25
under [9]  3/12 6/22 8/11 13/21 16/20 21/6
38/4 38/18 38/21
understand [7]  6/14 10/6 12/11 12/12 26/12
26/14 28/6
understanding [2]  40/8 47/6
understands [1]  43/11
understood [3]  16/15 26/17 44/20
undisputed [4]  3/3 3/7 4/12 28/19
undoubtedly [1]  33/6
unfold [1]  47/7
unfortunate [1]  36/24
unfortunately [3]  23/18 24/23 36/15
unique [2]  38/16 47/4
UNITED [2]  1/1 1/12
unless [3]  12/24 18/21 35/11
unlikely [2]  24/5 24/8
unresolved [2]  43/6 43/19
until [8]  21/6 21/7 41/10 41/15 41/18 42/1
43/3 47/18
upon [5]  3/25 4/5 30/14 30/15 49/23
us [10]  6/8 16/18 16/19 35/6 35/7 41/16
45/22 46/3 46/17 48/16
used [2]  31/10 33/3
uses [1]  24/14
using [3]  25/20 26/7 26/8

## V

various [2]  28/16 44/10
venture [9]  3/2 3/14 3/23 6/5 11/16 21/7
24/15 24/19 28/23
ventures [1]  3/22
verdict [1]  10/23
versus [4]  2/4 31/19 32/19 40/23
very [18]
vetted [1]  13/12
viewed [1]  27/6
violated [1]  7/1
violation [2]  28/3 28/10
violations [1]  28/16
virtue [3]  14/19 21/16 23/1
vis [2]  28/15 28/15

vis-a-vis [1]  28/15
voluminous [2]  41/4 41/4
voluntary [3]  40/15 43/7 44/12

## W

waivable [1]  16/2
waiver [9]  16/19 18/13 18/14 20/20 40/14
40/18 43/7 43/8 44/12
waivers [2]  19/23 34/11
walk [1]  45/14
want [29]
wanted [6]  2/17 15/10 34/5 40/1 42/4 44/20
wants [5]  30/3 34/19 42/12 43/20 48/1
wasn't [2]  13/5 19/9
watching [1]  47/7
we'd [1]  17/9
we'll [1]  42/5
we're [22]
we've [8]  4/1 16/16 18/4 18/9 29/19 31/15
40/5 45/2
week [4]  39/15 42/12 43/3 45/20
weeks [1]  48/20
well [57]
well-considered [1]  48/12
went [1]  12/2
West [2]  1/7 1/23
what's [9]  2/17 17/11 38/7 38/19 40/22 42/5
42/7 46/22 47/6
whatever [8]  7/20 22/11 25/20 42/19 43/20
44/22 44/23 45/12
where [10]  4/19 27/11 28/18 31/7 31/16
31/20 31/21 33/21 37/19 48/12
where's [3]  12/16 31/3 31/3
whether [24]
while [2]  31/25 32/6
who's [2]  27/1 41/17
whole [1]  47/7
why [8]  4/3 12/20 12/21 13/9 15/7 28/17
28/19 34/14
wife [1]  45/10
willful [1]  29/19
willing [2]  40/21 48/5
win [1]  6/20
wins [1]  6/20
without [2]  3/19 15/5
witness [1]  22/10
witnesses [2]  44/3 44/17
won't [2]  23/11 43/3
wonderful [1]  24/8
wondering [1]  7/19
wording [1]  47/10
words [3]  29/18 29/20 30/7
work [5]  12/2 24/7 44/4 45/23 46/16
works [3]  45/22 46/2 46/3
wouldn't [8]  15/8 15/18 24/24 25/12 26/2
26/8 38/23 38/24
writes [1]  36/15
writing [2]  16/25 36/25
written [7]  4/8 17/5 17/12 19/21 29/18 47/3
47/8

## Y

yeah [5]  16/8 17/13 25/23 33/4 35/13
years [2]  24/7 37/2
yes [11]  7/24 8/19 8/19 11/12 11/12 14/21
16/6 18/11 18/20 26/4 36/4
York [1]  11/25
you'll [1]  12/23
you're [14]  4/21 8/24 15/22 15/22 16/13
23/22 25/19 25/25 26/14 27/20 28/12 44/18

45/1 48/5
you've [6]  7/20 15/23 21/14 32/22 37/1 40/16